COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT,
WORCESTER DIVISION
CIVIL ACTION NO. 05-1470A

BBC EQUITIES, INC. and DOUGLAS K.
RAU
    Plaintiffs

V.

WESTMOUNT FINANCIAL LIMITED
PARTNERSHIP,
    Defendant

DEFENDANT'S NOTICE
OF FILING FOR REMOVAL

TO:

Clerk – Civil
Worcester Superior Court
2 Main Street
Worcester, MA 01608

    Pursuant to 28 U.S.C. § 1446(d), the defendant gives notice that on September 8, 2005, it

filed with the United States District Court for the District of Massachusetts a Notice of Removal

of this case from the Worcester Superior Court to the United States District Court for the District

of Massachusetts.  Pursuant to 28 U.S.C. § 1446(d), the filing of the Notice of Removal

effects the removal and this Court shall proceed no further unless and until the case is remanded.

A copy of the Notice of Removal is attached hereto.

WESTMOUNT FINANCIAL LIMITED
PARTNERSHIP

By its attorney,

Robert L. Hamer, Esq., BBO #218715
Kristin D. Thompson, Esq., BBO #656179
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax:    (508) 791-8502

Dated: September  , 2005

## CERTIFICATE OF SERVICE

I, Kristin D. Thompson, hereby certify that I have this day served a copy of the foregoing document, by mailing a copy, first class mail, postage prepaid, to Dana E. Casher, Esq., Krulewich, Casher, P.C., 50 Staniford Street, Boston, MA 02114.

Kristin D. Thompson, Esq.

Dated: September  , 2005

A true copy by photostatic process
Attest:
Asst. Clerk

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

**FILED**

ATTEST:

AUG 10 2005

CLERK

SUPERIOR COURT DEPARTMENT
C.A. NO. 05-1470 A



---

BBC EQUITIES, INC. and
DOUGLAS K. RAU,
    Plaintiffs,

v.

WESTMOUNT FINANCIAL LIMITED
PARTNERSHIP,
    Defendant,

---

)
)
)
)
)
)
)
)
)
)
)
)

**VERIFIED COMPLAINT**

 

    1.    The plaintiff BBC Equities, Inc. (hereafter "BBC") is a Massachusetts corporation, duly organized by law, having a principal place of business in Gardner, Worcester County, Massachusetts.

    2.    The plaintiff Douglas K. Rau (hereafter "Rau") is an individual residing in Gardner, Worcester County, Massachusetts.

    3.    At all times relevant hereto, Rau was the President of BBC.

    4.    The defendant Westmount Financial Limited Partnership (hereafter "Westmount") is a Nevada limited partnership organized under the laws of the State of Nevada, having a usual place of business in Scottsdale, Arizona.

    5.    BBC is in the business of buying properties in the Worcester and Franklin County areas of Massachusetts and rehabilitating them either for rental or for resale.

    6.    BBC obtains financing from a variety of financial institutions to facilitate its business enterprise.

    7.    Between 2000 and 2004 BBC obtained at least twelve mortgage loans from Westmount for the purchase and rehabilitation of the following properties:

    187 High St., Fitchburg
    120 Grant St., Gardner
    17-19 Greenwood St., Gardner
    31 Grant St., Gardner

10-12 Martel St., Fitchburg
67-77 Green St., Athol
208 E. Main St., Orange
31 Ball St., Orange
182 Pine St., Gardner
321-325 Main St., Fitchburg
322-324 Elm St., Fitchburg
14-34 Main St., Gardner (architectural loan)

8.     BBC used the proceeds of the loans from Westmount to purchase and rehabilitate each of those properties.

9.     The loans from Westmount referenced above were each secured only by interests in the specific property for which it was obtained.

10.     The terms of the loans from Westmount contained provisions for the collection of origination fees, extension fees, late fees, collection costs, and legal fees in the event of any default by BBC (see, for example, Exhibit A annexed hereto and incorporated by reference herein as though set forth in full).

11.     The terms of the loans from Westmount contained provisions whereby the total interest, as that term is defined by statute in Massachusetts, would substantially exceed twenty percent per annum.

12.     Although the loans for the following properties did go beyond the terms set forth in the loan documents, Westmount forgave any penalties, collection costs, late fees or legal fees in the resolution of those loans (refer to Exhibit B annexed hereto and incorporated herein by reference as though set forth in full):

31 Ball St., Orange
14-34 Main St., Gardner

13.     The other of the above loans with Westmount were all resolved within terms.

14.     In 2001 BBC had an opportunity to buy a large property which could be rehabilitated for both commercial and residential use. The project, located at 14-34 Main Street, Gardner, Massachusetts (hereafter "Main Street") required substantial construction work.

15.     BBC obtained financing and bought Main Street in 2001.

16.     In 2002, Westmount funded the architectural loan to obtain an architect to do drawings and prepare for BBC to get zoning approval and permits for Main Street.

17.     BBC had never worked with an architect on any of its projects prior to the Main Street.

18.    Although BBC had several multi-family properties, the code requirements which apply to a multi-use project such as Main Street are much more specific and costly; however BBC was unaware of those differences.

19.    Westmount knew that Main Street was a substantially larger and more complex project than any of BBC's previous projects.

20.    Before the full architectural plans had been completed, and knowing that BBC did not have specific information as to the actual costs or timing of Main Street would be, Westmount offered a construction loan of One Million Five Hundred Thousand Dollars at eighteen percent per annum with fourteen points due at closing to be repaid in eighteen months. (see commitment letter annexed hereto as Exhibit C).

21.    BBC knew that Westmount had funded construction loans for projects of the scale of the Main Street project and greater, prior to February, 2003.

22.    In addition to providing real estate funding, Westmount or its subsidiaries or affiliates also owns and develops large real estate projects.

23.    BBC knew that Westmount had owned projects of the scale of the Main Street project and greater, prior to February, 2003.

24.    Westmount represented to BBC that if Two Million Dollars, of which BBC contributed Five Hundred Thousand Dollars and Westmount loaned One Million Five Hundred Thousand Dollars was insufficient to complete Main Street, that Westmount would make additional funding available to complete the Main Street Project.

25.    Knowing of Westmount's experience and expertise in projects of the magnitude of Main Street, BBC relied upon Westmount's representations in entering into the One Million Five Hundred Thousand Dollar loan with Westmount for Main Street in February, 2003 (see Exhibit D annexed hereto and incorporated herein by reference as though set forth in full).

26.    In the summer of 2003, the final plans for Main Street were completed. They reflected construction costs of at least four million dollars.

27.    BBC promptly informed Westmount of the discrepancy between the original loan amount and the architect's plans and the explanations for that substantial difference.

28.    Westmount refused to provide additional funding to BBC for Main Street.

29.    In order to raise money for the Main Street project and fund ordinary operations, BBC began selling other properties.

30.    As part of the collateral for the Main Street loan, BBC had pledged several properties to Westmount; however BBC owned several other properties in which Westmount did

not hold a security interest.

31.     In July, 2004, BBC was under contract to refinance three properties on which Westmount held security interests.

32.     In response to a request from BBC for payoff figures for Westmount's security interest in those properties to facilitate the refinance, Westmount demanded that BBC grant Westmount a blanket security interest in all properties owned by BBC (see Exhibit E annexed hereto and incorporated herein by reference as though set forth in full).

33.     As BBC was committed to the refinance of the three properties to raise funds to continue in operation and had to have releases from Westmount in order to close the refinance transaction, BBC granted Westmount the blanket security interest.

34.     Westmount paid no consideration to BBC for the blanket security interest granted granted in July, 2004.

35.     In October, 2004, BBC had a closing scheduled on the sale of 15 Nashua Street, Fitchburg, Massachusetts, one of the properties which were included in the July, 2004 blanket security interest, the proceeds of which were necessary to the ongoing operations of BBC.

36.     Although Westmount had contributed no monies whatsoever to the 15 Nashua Street, Fitchburg, Massachusetts property, in October, 2004, Westmount refused to release its security interest in that property unless all sale proceeds were paid over to Westmount.

37.     In October, 2004, BBC attempted to negotiate with Westmount that some portion of the sale proceeds be paid to Westmount and some portion be released to BBC so that BBC could continue in operation.  Westmount refused.

38.     Since October, 2004 BBC has sold several properties; in each instance Westmount has kept all sale proceeds.

39.     BBC had arranged for financing for Main Street with a lender known as Northborough Capital which would pay off the principal and interest due to Westmount, and allow for completion of the Main Street project under commercially reasonable terms.

40.     To facilitate that loan, BBC asked Westmount for a payoff figure and the timeframe within which it had to be paid.

41.     Westmount told BBC that in exchange for two million dollars, Westmount would provide a discharge of its security interests in BBC properties.

42.     BBC reported the two million dollar payoff to its new lender.

43.     In response to the new lender's request for a payoff letter, Westmount demanded

two million four hundred thousand dollars, although Westmount later agreed to reduce the payoff to two million one hundred thousand.

44.    The change in Westmount's payoff constituted a substantial change in BBC's financial condition causing the new lender to withdraw its commitment.

45.    As of October, 2004, BBC had to lay off substantially all of its employees as it had no money for operations.

46.    As of October, 2004, BBC could no longer fund work on Main Street.

47.    Since October, 2004 Westmount has refused to release any portion of the sale proceeds on any of BBC's properties; furthermore, Westmount has dictated which items it would allow to be set off against sale proceeds in exchange for its release of each property.

48.    In or about November, 2004, one of BBC's properties, 31 Grant Street, Gardner, Massachusetts, was substantially damaged by fire.

49.    Since November, 2004 Westmount has refused to provide funding for the necessary work on Grant Street and refused to subordinate its security interest so BBC could obtain funding for the necessary work on Grant Street, even though Westmount has provided no funding in connection with that property.

50.    BBC was subject to an "order to make safe or remove" the structure at 31 Grant Street in Gardner by the Building Commissioner for the City of Gardner (see Exhibit F annexed hereto and incorporated herein by reference as though set forth in full).

51.    As a result of Westmount's conduct, BBC has been unable to comply with the order by the City of Gardner.

52.    The Grant Street property is subject to imminent taking by the City of Gardner as a result of BBC's inability to make that property safe.

53.    Since October, 2004, as a direct result of Westmount's seizure of all sale proceeds from BBC's sales of assets, BBC has been caused to default in its obligations to its employees, its trade vendors, other lenders, utility companies, and governmental agencies, resulting in substantial damages in interest, penalties and legal expenses.

54.    Defendant Rau had personally guaranteed many of the corporate obligations of BBC.

55.    As a direct result of Westmount's seizure of all proceeds from BBC's sales of assets since October, 2004, Defendant Rau has been caused to suffer substantial damages including primary obligations, interest, penalties and legal expenses for corporate debts of BBC which Rau had personally guaranteed.

56.    On several occasions, BBC has made written proposals for workout plans to Westmount whereby Westmount would receive payment of the monies due it by BBC, but permit some flow of money to BBC to enable it to meet its obligations.

57.    Westmount has refused to permit any sale proceeds to be released to BBC and, with one exception, has refused to subordinate its security interest in BBC's properties to enable BBC to obtain alternative financing.

58.    As a result of Westmount's usurpation of all sale proceeds, and because the communities in which BBC operates are small, people are aware that BBC is in financial difficulties causing tenants at BBC properties to withhold rental payments.

59.    Since October, 2004, Westmount has increasingly interfered in the operation of BBC's business. Its representatives have spoken to BBC's trade creditors. Its representatives have made demands and threats to the real estate brokers assisting BBC in selling its properties.

60.    Although Westmount has received over one million dollars from BBC toward the original loan of one million five hundred dollars in February, 2003, Westmount claims that it is still due two million four hundred thousand dollars (see Exhibit G annexed hereto and incorporated herein by reference as though set forth in full).

61.    Although beginning in October, 2004 Westmount usurped all sale proceeds from all sales of properties by BBC, Westmount failed to give any notice of default or enumerate the monies allegedly owed by BBC to Westmount until June 24, 2005 (see Exhibit G).

62.    Westmount is not registered to do business in the Commonwealth of Massachusetts.

63.    Westmount is not registered with the Attorney General's Office to charge in excess of twenty percent on loans.

## Count I
## Usury

64.    The Plaintiffs repeat and reaver the allegations contained in paragraphs 1 through 63 above and incorporate them herein by reference as though set forth in full.

65.    G.L. c. 271 §49 provides: "Whoever in exchangefor either a loan of money or other property knowingly contracts for, charges, takes or receives, directly or indirectly, interest and expenses the aggregate of which exceeds an amount greater than twenty per centum per annum upon the sum loaned or the equivalent rate for a longer or shorter period, shall be guilty of criminal usury. . .For the purposes of this section the amount to be paid upon any loan for intrest or expenses shall include all sums paid or to be paid by or on behalf of the borrower for interest, brokerage, recording fees, commissions, services, extension of loan, forbearance to enforce payment, and all other sums charged against or paid or to be paid by the borrower for making or securing the loan. . ."

66.     G.L. c. 271 §49 further provides: "Any loan at a rate of interest proscribed under the provisions of paragraph (a) may be declared void by the supreme judicial or superior court in equity upon petition by the person to whom the loan was made."

67.     The loans to BBC by Westmount each exceeded an aggregate interest rate of twenty per centum per annum.

68.     Westmount, as that entity is identified in the loan documents between Westmount and BBC, is not registered to do business in the Commonwealth of Massachusetts and is not registered with the Attorney General's Office of the Commonwealth of Massachusetts under G.L. c. 271 §49.

WHEREFORE, BBC Equities, Inc. hereby petitions this Honorable Court, in equity, to void all loans made to BBC Equities, Inc. by Westmount Financial Limited Partnership, a Nevada Limited Partnership having a principal place of business in Scottsdale, Arizona and to order said Westmount Financial Limited Partnership to repay BBC Equities, Inc. all sums which Westmount Financial Limited Partnership has received as a result of all such loans from said Westmount to BBC Equities, Inc.

## Count II
## Fraud

69.     The Plaintiffs repeat and reaver the allegations contained in paragraphs 1 through 63 above and incorporate them herein by reference as though set forth in full.

70.     From the commencement of BBC's dealings with Westmount up to October, 2004, although Westmount's loan documents always contained provisions for extension fees, late fees, higher rates of interest on default, etc. Westmount had not charged any of those expenses to BBC.

71.     On June 24, 2004, when BBC was imminently scheduled to close on the refinance of three properties, Westmount made release of those properties contingent upon BBC's agreeing to grant a blanket security interest on all its properties for Westmount's ease in administering BBC's loan.

72.     But for the course of conduct between BBC and Westmount and Westmount's taking advantage of BBC's time-sensitive situation, BBC would not have granted Westmount a blanket security interest.

73.     BBC was induced to grant the blanket security interest to Westmount by fraud.

74.     As a direct result of Westmount's fraud, BBC has been caused to suffer substantial damages.

## Count III
## Fraud

75.     The Plaintiffs repeat and reaver the allegations contained in paragraphs 1 through 63 above and incorporate them herein by reference as though set forth in full.

76.     Westmount knew or should have known that Main Street would require funding substantially in excess of two million dollars to be completed.

77.     Westmount knew that BBC was relying on Westmount's representations with regard to the cost of Main Street in agreeing to enter into the construction loan for Main Street with Westmount.

78.     But for Westmount's deception of BBC, BBC would not have entered into the construction loan with Westmount for Main Street.

79.     BBC was induced to enter into the construction loan for Main Street by fraud.

80.     As a direct result of Westmount's fraud, BBC has been caused to suffer substantial damages.

## Count IV
## Interference with Contractual Relations

81.     The Plaintiffs repeat and reaver the allegations contained in paragraphs 1 through 63 above and incorporate them herein by reference as though set forth in full.

82.     The arrangement between BBC and Northborough Capital to refinance the Main Street project in September, 2004 was a contract.

83.     Westmount was informed of the contract between Northborough Capital and BBC.

84.     By substantially changing the payoff figure of Westmount's loan on Main Street, Westmount intentially interfered in the contract between Northborough Capital and BBC.

85.     As a direct result of Westmount's interference in the contract between Northborough Capital and BBC, BBC has been caused to suffer substantial damages.

## Count V
## Good Faith and Fair Dealing

86.     The Plaintiffs repeat and reaver the allegations contained in paragraphs 1 through 63 above and incorporate them herein by reference as though set forth in full.

87.    In all contractual relationships, there is the implied warranty of good faith and fair dealing.

88.    Westmount and BBC had a series of contractual relationships.

89.    In its conduct as set forth above, including but not limited to its fraudulent inducement of BBC to enter into the construction loan on Main Street; its fraudulent inducement of BBC to grant a blanket security interest in all properties; its lulling BBC into the false sense of security that Westmount would not exercise its rights under the onerous extension fee, late fee and penalty clauses of its promissory notes; its interference with refinancing arrangements; its refusal to subordinate its security interests; and its usurpation of all sale proceeds of all sales, Westmount has breached the warranty of good faith and fair dealing.

90.    As a result of Westmount's breach of the covenant of good faith and fair dealing, BBC has been caused to suffer substantial damages.

### Count VI
### G.L. c. 93A §§2 and 11

91.    The Plaintiffs repeat and reaver the allegations contained in paragraphs 1 through 63 above and incorporate them herein by reference as though set forth in full.

92.    BBC and Westmount are both engaged in trade and commerce.

93.    At all times relevant hereto, Westmount knew that the loans it made to BBC were for purchase of properties in the Commonwealth of Massachusetts.

94.    In connection with the loans to BBC and other Massachusetts parties, Westmount performed inspections of the properties in Massachusetts, obtained appraisals of the properties in Massachusetts, sent and received checks and correspondence from Massachusetts, made loans in Massachusetts, recorded documents in Massachusetts and performed other actions within the Commonwealth.

95.    As more fully set forth above, Westmount's acts and practices in conjunction with the loans it made to BBC were unfair and deceptive, including but not limited to its setting loan terms in violation of the criminal usury statute, its fraudulent conduct, its bad faith, its misrepresentations to BBC regarding refinancing and subordination, etc.

96.    As a direct result of Westmount's unfair and deceptive trade practices, BBC has been caused to suffer substantial damages.

WHEREFORE, BBC Equities, Inc. and Douglas Rau demand judgment against Westmount Financial Limited Partnership as follows:

A.    That Westmount Financial Limited Partnership be enjoined and restrained from

receiving any further payment from BBC Equities, Inc., Douglas Rau or any party purchasing assets from BBC Equities, Inc. or Douglas Rau until further order of the court;

B.    That Westmount Financial Limited Partnership be enjoined and restrained from failing to provide releases of any security interest held in property other than 14-34 Main Street, Gardner, Massachusetts and, further be enjoined and restrained from failing to provide a discharge of mortgage on any property other than 14-34 Main Street, Gardner, Massachusetts upon request of BBC Equities, Inc., Douglas Rau or any person acting in concert with them until further order of the court;

C.    That Westmount Financial Limited Partnership be enjoined and restrained from failing to execute such documentation as is necessary to subordinate its security interest in 31 Grant Street, Gardner, Massachusetts to another lender;

D.    That Westmount Financial Limited Partnership provide a full accounting of all monies received from or on behalf of BBC Equities, Inc. and Douglas Rau including a statement of the application of those monies;

E.    That Westmount Financial Limited Partnership be ordered to compensate BBC Equities, Inc. for all damages BBC Equities, Inc. has suffered as a result of Westmount Financial Limited Partnership's fraud plus interest, and court costs;

F.    That Westmount Financial Limited Partnership be ordered to compensate BBC Equities, Inc. for all damages BBC Equities, Inc. has suffered as a result of Westmount Financial Limited Partnership's interference with BBC Equities, Inc.'s contractual relations with other lenders plus interest and court costs;

G.    That Westmount Financial Limited Partnership be ordered to compensate BBC Equities, Inc. for all damages BBC Equities, Inc. has suffered as a result of Westmount Financial Limited Partnership's breach of the covenant of good faith and fair dealing, plus interest and court costs;

H.    That Westmount Financial Limited Partnership be ordered to compensate Douglas Rau for all damages which he, personally, has suffered as a result of the fraud and bad faith of Westmount Financial Limited Partnership, plus interest and court costs;

I.    That Westmount Financial Limited Partnership be ordered to pay at least twice and up to three times the actual damages suffered by BBC Equities, Inc. and Douglas Rau plus reasonable attorneys fees resulting from the unfair and deceptive trade practices of Westmount Financial Limited Partnership, pursuant to G.L. c. 93A; and

J.    That this Honorable Court award BBC Equities, Inc. and/or Douglas Rau such other and further relief as it deems just and proper under the circumstances.

BBC EQUITIES, INC. and
DOUGLAS RAU,
By their Attorneys,

Dana E. Casher
Krulewich, Casher, P.C.
50 Staniford Street
Boston, MA  02114
(617) 367-1200
BBO #551037

Dated:  August 10, 2005

## VERIFICATION

I, Douglas Rau, hereby verify that I am a plaintiff and the President of the other plaintiff in the above action.  I further verify that I have read the foregoing Verified Complaint and the facts stated therein are true to the best of my knowledge, information and belief and are, except where otherwise stated, made on my own personal knowledge.

Douglas Rau

# EXHIBIT  A

## TERM PROMISSORY NOTE

$174,418.61                                          October $4$ , 2001
Twelve Months                              Manchester, New Hampshire

FOR VALUE RECEIVED, BBC Equities, Inc., a Massachusetts corporation with an address of 14 Main Street, Gardner, Massachusetts 01440 (hereinafter referred to as the "Undersigned"), promises to pay to the order of WESTMOUNT FINANCIAL LIMITED PARTNERSHIP, a Nevada limited partnership with an address of 6929 E. Greenway Parkway, Suite 190, Scottsdale, Arizona 85254 (the "Lender"), its endorsees, successors and assigns, at such address or at such other address as may be designated hereafter by any Holder hereof, the principal sum of ONE HUNDRED SEVENTY FOUR THOUSAND FOUR HUNDRED EIGHTEEN DOLLARS AND 61\100 ($174,418.61), together with interest as provided for below, in lawful money of the United States of America.

Principal and interest shall be payable as follows:

(1)   On December 1, 2001, and on the corresponding day of the next succeeding ten (10) months during the term hereof, the Undersigned shall make a payment of accrued interest only in the amount of $2,616.24; and

(2)   Notwithstanding anything herein to the contrary, on October $4$ , 2002 ("Maturity Date"), the Undersigned shall make a final payment to the Holder of the entire then outstanding principal balance hereof, together with all accrued and unpaid interest and any costs and fees payable hereunder.

The Holder shall not render to the Undersigned a statement of account with respect thereto on a monthly basis. Interest shall be calculated and charged daily on the basis of a 360 day banking year on the unpaid principal balance outstanding from time to time. Prior to maturity, unless upon demand, acceleration or other default, the interest rate applicable to this Note shall be equal to eighteen percent (18.0%) per annum (the "Interest Rate").

**Provided the Undersigned is not in default hereunder, the Undersigned shall have the right, once and only once, to extend the term of this Note for an additional period of six (6) months upon payment to the Holder of an extension fee in the sum of TWENTY EIGHT THOUSAND THREE HUNDRED NINETY THREE DOLLARS AND 20\100 ($28,393.20) ("Extension Fee") on or before the maturity date stated above, time being of the essence which amount shall not be applied to outstanding interest or principal. In the event of any such extension, the Undersigned shall make monthly payments of accrued interest only at the Interest Rate on the outstanding principal balance hereunder, with a final payment of the entire**

1

**then outstanding principal balance hereof, together with all accrued and unpaid interest and any costs and fees payable hereunder on or before the extended maturity date.**

The Undersigned may prepay this Note in full or in part at any time, without the payment of any penalty, premium or charge of any nature. In the event that any such prepayment shall be made by the Undersigned, the amount thereof shall be applied first to any accrued interest, costs and fees, and thereafter to outstanding principal. In the event of any prepayment of the Note prior to maturity at the original or any extended maturity date, no refund of the Extension Fee or any other sum collected hereunder prior to such repayment shall be refundable.

The payment and performance of the obligations contained herein are secured by a certain Mortgage and the other documents from the Undersigned to the Holder dated as of even date herewith securing property known as 10-12 Martel Street, Fitchburg, Massachusetts (such documents are hereinafter collectively referred to together with this Note as the "Loan Documents"), and the collateral granted to the Holder thereby (the "Collateral").

Upon the occurrence of any of the following events of default, this Note shall, at the option of the Holder, become immediately due and payable in full, without further demand or notice:

A.  Default by the Undersigned in payment on its due date of any principal or interest called for under the Loan Documents. TIME IS OF THE ESSENCE AS TO EACH PAYMENT.

B.  Default by the Undersigned in the performance or observance of any of the provisions, terms, conditions, warranties or covenants of the Loan Documents not cured within any applicable grace or remedy period.

C.  Default by the Undersigned, not cured within any applicable grace or remedy period, in the payment or performance of any other obligations due the Holder or under any other contract for borrowed money with any other lender, private or institutional, whether created prior to, concurrent with, or subsequent to obligations arising out of the Loan Documents.

D.  If any statement, representation or warranty made by the Undersigned in the Loan Documents or in connection therewith or any financial statement, report, schedule, or certificate furnished by the Undersigned or any of its agents or accountants to the Holder during the term of this Note shall prove to have been false or

2

misleading when made, or subsequently becomes false or misleading, in any material respect.

E.    The Undersigned or any Guarantor shall (i) apply for or consent to the appointment of a receiver, trustee or liquidator of it or any of its property, (ii) admit in writing its inability to pay debts as they mature, (iii) make a general assignment for the benefit of creditors, (iv) be adjudicated as bankrupt or insolvent, (v) die, or (vi) file a voluntary petition in bankruptcy, or a petition or an answer seeking reorganization to take advantage of any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law or statute, or an answer admitting any material allegations of a petition filed against it in any proceeding under any such law.

F.    Proceedings shall be commenced or an order, judgment or decree shall be entered, without the application, approval or consent of the Undersigned, in or by any court of competent jurisdiction, relating to the bankruptcy, dissolution, liquidation, reorganization or the appointment of a receiver, trustee or liquidator of the Undersigned, or of all or a substantial part of its assets, and such proceedings, order, judgment or decree shall continue undischarged or unstayed for a period of sixty (60) days.

G.    Non-payment when due of any municipal assessment outstanding with respect to any real property which serves as collateral for repayment of the Note.

H.    Transfer, whether involuntary or voluntary, by the Undersigned of any portion or all of the property that constitutes and serves as Collateral for the obligations herein without the express written consent of the Lender prior to any such transfer.

I.    The death of Douglas K. Rau.

The Holder may impose upon the Undersigned a delinquency charge of One Thousand Dollars ($1,000.00) per month for any payment amount that is not paid on or before day such payment is due and remains unpaid from month to month. The entire principal balance hereof, together with accrued interest, shall, after maturity or default, whether upon demand, acceleration or otherwise, bear interest at the rate of thirty-six percent (36.0%) per annum ("Default Rate"). In addition to constituting an event

3

of default, Lender may assess a penalty of $1,000.00 per month for each month in which municipal assessments, water, sewer and or taxes, are due and unpaid.

In the event that the principal is not timely paid when due, whether at the Maturity Date or any extended maturity date as provided for herein, then a late payment charge equal to fourteen percent (14%) of the outstanding balance due to the Lender shall be due and payable either: (i) upon full payment by the Borrower; or (ii) in the event any collection action must be commenced (whether or not completed) by Lender to enforce repayment of the principal owed hereunder.

No provision of this Note or any other aspect of the transaction of which this Note is a part is intended to or shall require or permit the holder, directly or indirectly, to take, receive, contract for, or reserve, in money, goods, or things in action, or in any other way, any interest (including amounts deemed by law to be interest, such amounts to then be deemed to be an addition to the rate of interest agreed upon) in excess of the maximum rate of interest permitted by applicable law in the State of New Hampshire and/or the Commonwealth of Massachusetts as of the date hereof. If any such excess shall nevertheless be provided for, or be adjudicated by a court of competent jurisdiction to be provided for, the undersigned shall not be obligated to pay such excess but, if paid, then such excess shall be applied against the unpaid principal balance of this Note or, to the extent that the principal balance has been paid in full by reason of such application or otherwise, such excess shall be remitted to the undersigned.

The Undersigned agrees to pay on demand all out-of-pocket costs of collection and enforcement hereof, including attorney's fees, whether or not any foreclosure or other action is instituted by the Holder in its discretion. The term "enforcement" as used in this Note shall include, but not be limited to, the negotiation, documentation or other consummation of any modification, extension, renewal or other such transaction, whether or not the Undersigned is then in default under this Note or the other Loan Documents, and shall also include any and all attempts by the Holder to recover payment of amounts due under this Note or to require compliance with any term, covenant or condition of the Loan Documents with or without prior notice to the Borrower.

No delay or omission on the part of the Holder in exercising any right, privilege or remedy shall impair such right, privilege or remedy or be construed as a waiver thereof or of any other right, privilege or remedy. No waiver of any right, privilege or remedy or any amendment to this Note shall be effective unless

4

made in writing and signed by the Holder.  Under no circumstances shall an effective waiver of any right, privilege or remedy on any one occasion constitute or be construed as a bar to the exercise of or a waiver of such right, privilege or remedy on any future occasion.  The acceptance by the Holder of any payment after any default hereunder shall not operate to extend the time of payment of any amount then remaining unpaid hereunder or constitute a waiver of any rights of the Holder under this Note.

All rights and remedies of the Holder, whether granted herein or otherwise, shall be cumulative and may be exercised singularly or concurrently, and the Holder shall have, in addition to all other rights and remedies, the rights and remedies of a secured party under the Uniform Commercial Code of New Hampshire.  The Holder shall have no duty as to the collection or protection of the Collateral or of any income thereon, or as to the preservation of any rights pertaining thereto beyond the safe custody thereof.

As additional Collateral, the Undersigned (i) grants to the Holder a security interest in, or pledges, assigns and delivers to the Holder, as appropriate, all deposits, credits and other property (real or personal) now or hereafter due from the Holder to the Undersigned, and (ii) grants to the Holder the right to set-off or foreclosure and apply (and a security interest in said right), from time to time hereafter and without demand or notice of any nature, all, or any portion, of such deposits, credits and other property (real or personal), against the indebtedness evidenced by this Note, whether or not the other Collateral, if any, is deemed adequate.

The Undersigned waives, to the fullest extent permitted by law, presentment, notice, protest and all other demands and notices and assents (1) to any extension of the time of payment or any other indulgence, (2) to any substitution, exchange or release of collateral, and (3) to the release of any other person primarily or secondarily liable for the obligations evidenced hereby.  The Undersigned expressly waives any defense or claim based in whole or in part upon any actual or alleged impairment of the Collateral.  The Undersigned hereby consents and agrees that the Holder may as long as the Note remains unpaid, periodically, and without notice to Borrower obtain credit reports, verify income and make inquiry of other creditors and credit reporting agencies with respect to the Borrower's financial condition.

**THE PARTIES AGREE THAT ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO ANY OF THE LOAN DOCUMENTS OR THE ACTIONS OF THE LENDER IN THE ENFORCEMENT THEREOF SHALL BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.**

5

This Note and the provisions hereof shall be binding upon the Undersigned and the Undersigned's heirs, administrators, executors, successors, legal representatives and assigns and shall inure to the benefit of the Holder and the Holder's heirs, administrators, executors, successors, legal representatives and assigns.

This Note may not be amended, changed or modified in any respect except by a written document which has been executed by each party. This Note is to be construed according to and governed by the laws of the State of New Hampshire. In the event of any dispute hereunder, the Undersigned agrees and irrevocably consents to the jurisdiction and venue of the federal or state courts sitting within the State of New Hampshire.

The term "Holder" as used herein shall mean the Lender, any assignee, endorsee, successor or other transferee of the Lender or any subsequent endorsee, successor or other transferee of this Note.

IN WITNESS WHEREOF, the Undersigned have executed this Term Promissory Note on this 4th day of October, 2001.

Witness

(the "Borrower")
BBC EQUITIES, INC.

By:
Name: Douglas Rau      president
Title: President
Duly Authorized

COMMONWEALTH OF MASSACHUSETTS
COUNTY OF WORCESTER

The foregoing instrument was acknowledged before me this 4th day of October, 2001 by Douglas K. Rau, duly authorized president of BBC Equities, Inc., a Massachusetts corporation as his free act and deed on behalf of the corporation.

Notary Public/Justice of the Peace
My Commission Expires: 1-25-07
Notary Seal:

6

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

**D. Name and Address of Borrower:**

BBC Equities, Inc., 14 Main Street, Gardner, MA 01440

**E. Name and Address of Seller:**

Sean R. Morrison, Trustee of The SJM Realty Trust, 24 Massachusetts Avenue, Lunenburg

Seller's TIN#:

**F. Name and Address of Lender:**

Westmount Financial Limited Partnership

6929 E. Greenway Parkway, Suite 190

Scottsdale, AZ, 85254

**G. Property Location:**

10-12 Martel Street
Fitchburg, MA 01420

| H. Settlement Agent: | Law Offices of John L. Allen & Associates | 02-0446049 |
|---|---|---|
| Place of Settlement: | 27 Lowell Street, Manchester, NH 03101-1641 | |
| City/Cnty of Settlement: Manchester    Hillsborough | | I. Settlement Date: October 4, 2001 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower** | | **400. Gross Amount Due To Seller** | |
| 101. Contract sales price | $50,000.00 | 401. Contract sales price | $50,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | $30,578.99 | 403. | |
| 104. Escrow Holdback | $100,000.00 | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes          to | | 407. County taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due From Borrower** | $180,578.99 | **420. Gross Amount Due To Seller** | $50,000.00 |
| **200. Amounts Paid By Or In Behalf Of Borrower** | | **500. Reductions In Amount Due To Seller** | |
| 201. Deposit or earnest money | $500.00 | 501. Excess deposit (see instructions) | $500.00 |
| 202. Principal amount of new loan(s) | $174,418.61 | 502. Settlement charges to seller (line 1400) | $343.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff 1   Emile N. Dupont, Trustee of Fairfield | $44,280.27 |
| 205. | | 505. Payoff 2 | |
| 206.                              * | | 506. Real Estate Taxes      toCity of Fitchburg | $1,780.94 |
| 207. | | 507.          to | |
| 208. | | 508.          to | |
| 209. | | 509.          to | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes    7/1/01 to    10/4/01 | $476.24 | 510. City/town taxes    7/1/01 to    10/4/01 | $476.24 |
| 211. County taxes          to | | 511. County taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | $175,394.85 | **520. Total Reduction Amount Due Seller** | $47,380.45 |
| **300. Cash At Settlement From/To Borrower** | | **600. Cash At Settlement To/From Seller** | |
| 301. Gross amount due from borrower (line 120) | $180,578.99 | 601. Gross amount due to seller (line 420) | $50,000.00 |
| 302. Less amount paid by/for borrower (line 220) | ($175,394.85) | 602. Less amount paid by/for seller (line 520) | ($47,380.45) |
| **303. CASH  ⊙ FROM ○ TO   BORROWER** | $5,184.14 | **603. CASH   (⊙) TO ○ FROM   SELLER:** | $2,619.55 |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained in Blocks E,G,H and I and on line 401 (or if line 401 is asterisked, lines 403 and 404) is important tax information and is being furnished to the Internal Revenue Service.

If you are required to file a return, a negligence penalty or other sanction will be imposed on you, if this item is required to be reported and the IRS determines that it has not been reported.

## L. Settlement Charges

| 700. Total Sales/Broker's Commission based on price | $50,000.00 @ | % = | Paid From Borrowers Funds at Settlement | Paid From Sellers Funds at Settlement |
|---|---|---|---|---|
| Division of Commission (line 700) as follows: | | | | |
| 701. | to | , | | |
| 702. | to | | | |
| 703. Commission paid at Settlement | | | | |
| 704. | | | | |
| **800. Items Payable in Connection With Loan** | | | | |
| 801. Loan Origination fee | 14 % | Westmount Financial Limited Partne POC: | $24,418.61 | |
| 802. Loan Discount | % | POC: | | |
| 803. Inspection Fee | to | Westmount Financial Limited Part POC: | $1,000.00 | |
| 804. | to | POC: | | |
| 805. | to | POC: | | |
| 806. | to | POC: | | |
| 807. | to | POC: | | |
| 808. | to | POC: | | |
| 809. | to | POC: | | |
| 810. | to | POC: | | |
| 811. | to | POC: | | |
| 812. | to | POC: | | |
| 813. | to | POC: | | |
| 814. | to | POC: | | |
| **900. Items Required By Lender To Be Paid in Advance** | | | | |
| 901. Interest from | 10/4/01 to 11/1/01 @ | 87.21 / day 28 Days | $2,441.88 | |
| 902. Mortgage insurance premium for | mo. to | | | |
| 903. Hazard insurance premium for | yrs. to | | | |
| 904. Flood insurance | yrs. to | | | |
| 905. | | | | |
| **1000. Reserves Deposited With Lender** | | | | |
| 1001. Hazard insurance | months @ | per month | | |
| 1002. Mortgage insurance | months @ | per month | | |
| 1003. City property taxes | months @ | per month | $0.00 | |
| 1007. | months @ | per month | | |
| 1008. Aggregate Accounting Adjustment | | | | |
| **1100. Title Charges** | | | | |
| 1101. Settlement or closing fee to | | | | |
| 1102. Abstract or title search to | Law Offices of John L. Allen & Associates | | $271.50 | |
| 1103. Title examination to | | | | |
| 1104. Title insurance binder to | | | | |
| 1105. Document preparation to | Law Offices of John L. Allen & Associates | | | $85.00 |
| 1106. Notary fees to | | | | |
| 1107. Attorney's fees to | Law Offices of John L. Allen & Associates | | $1,500.00 | |
| (includes above items Numbers: | | ) | | |
| 1108. Title insurance to | Commonwealth Land Title Insurance Company | | $700.00 | |
| (includes above items Numbers: . | | ) | | |
| 1109. Lender's coverage $174,418.61 | L Prem: $512.50 | Endorsements: | | |
| 1110. Owner's coverage $50,000.00 | O Prem: $187.50 | $0.00 | | |
| 1111. Tracking Mortgage Discharge(s) | to | | | |
| 1112. Update and Record | to Law Offices of John L. Allen & Associates | | $75.00 | |
| 1113. | | | | |
| **1200. Government Recording and Transfer Charges** | | | | |
| 1201. Recording fees: Deed $45.00 ; Mortgage $56.00 ; Releases | | | $101.00 | |
| 1202. City/county tax/stamps: Deed ; Mortgage | | | | |
| 1203. State tax/stamps: Deed $228.00 ; Mortgage | | | | $228.00 |
| 1204. Record Collateral Assignment of L & R | to Worcester North District Registry of Deeds | | $32.00 | |
| 1205. Record Trustee Certificate | to Worcester North District Registry of Deeds | | | $30.00 |
| **1300. Additional Settlement Charges** | | | | |
| 1301. Survey to N/A | | | | |
| 1302. Pest inspection to | | | | |
| 1303. Record MLC | to Worcester North District Registry of Deeds | | $14.00 | |
| 1304. Obtain MLC | to City of Fitchburg | | $25.00 | |
| 1305. | to | | | |
| 1306. | to | | | |
| 1307. | to | | | |
| 1400. Total Settlement Charges (enter on lines 103, Section L and 502 Section K) | | | $30,575.99 | $343.00 |

# EXHIBIT B

# Westmount Financial Limited Partnership
## 4500 P.G.A. Boulevard, Suite 303B
## Palm Beach Gardens, FL 33418
### Tel: (561) 624-8770    Fax: (561) 624-9988
This transmission consists of __2__ page(s) including the cover sheet

**Date:** June 18, 2004

**To:** Nick

**Fax #:** (978) 249-7407

**From:** Mike Hart

**ORIGINAL DOCUMENT(S) WILL _____ WILL NOT __vx__ FOLLOW BY MAIL**
Below please find the payoff for *Doug Raw/BBC Equities, Inc., 31 Ball Street, Orange, MA. as of June 23, 2004*

| | |
|---|---|
| **Principal** | **$90,000.00** |
| **Interest** | **$2,406.99** |
| **Late Fee (Mortgage)** | **$0.00** |
| **Late Fee (Taxes)** | **$0.00** |
| **Extension Fee** | **$0.00** |
| **Credit Towards Points** | **$0.00** |
| **Legal Fees** | **$0.00** |
| **Recording Fees** | **$0.00** |
| **TOTAL** | **$92,406.99** |
| **Per Diem** | **$104.65** |

**Please have the funds wired to our account (wiring instructions are attached).**

# AMENDMENT TO PROMISSORY NOTE

AMENDMENT made this 21st day of October, 2003, by and between BBC Equities, Inc. with a place of business at 14 Main Street, Gardiner, Massachusetts 01440 ("BORROWER") and Westmount Financial Limited Partnership with a place of business at 14648 N. Scottsdale Road, Suite 325, Scottsdale, AZ 85254 ("LENDER").

WHEREAS, Borrower and Lender entered into a Loan Agreement (the "AGREEMENT") with an execution date of November 12, 2002, for property located at 31 Ball Street, Orange, Massachusetts and more particularly described in the Mortgage recorded in Franklin Registry of Deeds in Book 4123, Page 0156;

WHEREAS, Borrower and Lender agree to amend the Note dated November 12, 2002, to extend the final date for full payment of all principal, interest, and fees outstanding until May 12, 2004. There is no fee for extending the maturity date to May 12, 2004. If the Note is not paid on or before May 12, 2004, the Borrower may extend the loan for six (6) months upon written approval from Holder and payment to the Holder of an extension fee in the sum of Fourteen Thousand Six Hundred Fifty-One Dollars and 16/100 *($14,651.16)*.

NOW, THEREFORE, in further consideration of their continuing obligations under the Agreement, as amended, said maturity date is hereby extended until May 12, 2004.

Except as expressly modified hereby, all other terms, defined terms and conditions of the Agreement shall continue in full force and effect.

WITNESS our hands as of the day and year first above written.

(the "Lender")
WESTMOUNT FINANCIAL LIMITED
PARTNERSHIP
By: CIF, Inc., its General Partner

_____
Witness

By: _Michael J. Hart, V.P._
Name: _Michael J. Hart_
Title: _Vice President_

(the "Mortgagor")
BBC Equities, Inc.

By:

Name:  Douglas K. Rax

Title:  President and Treasurer

Witness

# WESTMOUNT FINANCIAL LIMITED PARTNERSHIP

4400 P.G.A. Boulevard, Suite 101B
Palm Beach Gardens, Florida 33418
Tel. 561-775-9450   Fax 561-624-0033

May 13, 2004

***SENT VIA FACSIMILE AND REGULAR MAIL***
**(978) 630-5134**

Doug Rau
BBC Equities, Inc.
14-34 Main Street
Gardiner, MA 01440

**Re: 31 Ball Street, Gardiner, MA**

Dear Doug:

The Promissory Note dated November 12, 2002, matured on May 12, 2004, and in accordance with the terms and conditions set forth in the Promissory Note, you shall have the right to extend the Note for an additional six (6) months upon payment of Fourteen Thousand Six Hundred Fifty-One and 16/100 Dollars ($14,651.16). This amount is due on or before January 1, 2004.

If you elect to pay the additional points, please submit a certified check made payable to Westmount Financial Limited Partnership in the amount of Fourteen Thousand Six Hundred Fifty-One and 16/100 Dollars ($14,651.16). Otherwise the extension fee will be capitalized resulting in a new principal balance of $104,651.16. Your monthly payment will also increase to $3,139.55 effective July 1, 2004. Your mortgage payment due June 1, 2004, is $2,978.37.

If you have any questions, please call me.

Sincerely,

Michael J. Hart, Vice President
CIF, Inc., its General Partner

cc:  Donna Charron

Seller's TIN#:

| G. Property Location:<br>31 Ball Street<br>Orange, MA 01364 | H. Settlement Agent:<br>Lynnelle M. Goodnow<br><br>Place of Settlement:<br>20 Exchange St., Athol, MA 01331<br><br>City/Cnty of Settlement: Athol/Worcester | Tin #: 04-3566841<br>I. Settlement Date:<br>June 23, 2004 |
| --- | --- | --- |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
| --- | --- | --- | --- |
| 100. Gross Amount Due From Borrower | | 400. Gross Amount Due to Seller | |
| 101. Contract Sales Price | $204,500.00 | 401. Contract Sales Price | $204,500.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to borrower (line 1400) | $7,649.41 | 403. | |
| 104. Payoff 1. | | 404. | |
| 105. Payoff 2. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/Town taxes  6/23/04  to 6/30/04 | $27.55 | 406. City/Town taxes 6/23/04  to 6/30/04 | $27.55 |
| 107. County Taxes  to | | 407. County Taxes  to | |
| 108. Assessments  to | | 408. Assessments  to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross Amount Due From Borrower | $212,176.96 | 420. Gross Amount Due to Seller | $204,527.55 |
| 200. Amounts Paid By Or In Behalf Of Borrower | | 500. Reductions In Amount Due to Seller | |
| 201. Deposit or earnest money | $1,500.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | $201,340.00 | 502. Settlement Charges to seller (line 1400) | $7,782.52 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff 1. Westmount Financial Limited Partnership | $92,616.29 |
| 205. Buyers Fund Down Payment Assistance | $5,940.00 | 505. Payoff 2. | |
| 206. | | 506. to | |
| 207. Closing Cost Credit | $4,500.00 | 507. Closing Cost Credit to Buyer | $4,500.00 |
| 208. | | 508. Down Payment Assistance to Buyers Fund | $8,335.00 |
| 209. | | 509. Deposit Retained to Burbank Real Estate | $1,500.00 |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes  to | | 510. City/town taxes  to | |
| 211. County Taxes  to | | 511. County Taxes  to | |
| 212. Assessments  to | | 512. Assessments  to | |
| 213. | | 513. | |
| 214. | | 514. Outstanding Real Estate Taxes | $1,244.87 |
| 215. | | 515. Final Water/Sewer | $74.50 |
| 216. | | 516. Outstanding Water/Sewer | $44.40 |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | $213,280.00 | 520. Total Reduction Amount Due Seller | $114,097.58 |
| 300. Cash At Settlement From/To Borrower | | 600. Cash At Settlement To/From Seller | |
| 301. Gross amount due from borrower (line 120) | $212,176.96 | 601. Gross amount due to seller (line 420) | $204,527.55 |
| 302. Less Amount paid by/for borrower (line 220) | ($213,280.00) | 602. Less amount paid by/for seller (line 520) | ($114,097.58) |
| 303. CASH TO BORROWER: | $1,103.04 | 603. CASH TO SELLER: | $90,429.97 |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained in Blocks E,G,H and I and on line 401 (or if line 401 is asterisked, lines 403 and 404) is important tax information and is being furnished to the Internal Revenue Service.
If you are required to file a return, a negligence penalty or other sanction will be imposed on you, if this item is required to be reported and the IRS determines that it has not been reported.
SELLER INSTRUCTIONS: If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form 8252 And/or Schedule D (Form 1040). You are required by law to provide (see Box H) with your correct taxpayer identification number. If you do not provide [see box H] with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law, and under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

Seller's Signature

# EXHIBIT C

# WESTMOUNT FINANCIAL LIMITED PARTNERSHIP

4500 P.G.A. Boulevard, Suite 303B
Palm Beach Gardens, Florida 33418
Tel. 561-775-9450  Fax 561-624-9988

February 14, 2003

***SENT VIA FACSIMILE AND REGULAR MAIL***
**(978) 630-5134**

Doug Rau
14-34 Main Street
Gardiner, MA 01440

Dear Doug:

Westmount is pleased to extend a construction loan for your property located at 14-34 Main Street, Gardiner, MA.  The terms and conditions are as follows:

1. Loan Amount - $1,500,000.00 to be drawn down as needed and supported by contractor invoices for services.  Draws must begin no later than September 30, 2003.

2. Interest Rate – 18%; interest is calculated only on the amount of funds advanced to Borrower and pro-rated between the 1st and last day of the month in which funds were advanced.  Otherwise, interest is calculated monthly on all funds advanced. If Borrower commits to $1,500,000.00 loan at 18%, funds will be repaid as follows:

   a. 12% per annum paid monthly, i.e., 1% per month on the cash advanced with ½ of 1% (6% per annum) accruing and compounding monthly. Interest on points ($244,186.05) will accrue at 18% per annum compounded monthly.  Principal, accrued interest, and points, plus any other fees that may be due, will be due and payable 18 months from date of first draw.

3. Points – Lender will charge Borrower 14 points ($244,186.05) on the loan amount of $1,500,000.00 and interest on points to accrue monthly.  Points and accrued interest to be paid on or before maturity of loan.  Points are considered earned at the time loan documents are executed by Borrower.

    a.  If no funds are requested on or before September 30, 2003, Borrower will pay Lender $244,186.05 no late than October 15, 2003.

    b.  Additional Interest payment of 1 point for Lender's acceptance of Borrower's request to allow interest (18%) on points to accrue on a monthly basis and to accrue a portion of the interest on cash draws. (See item 8).

4.  Term of loan is for 18 months (the 18 month term begins on the date of the first draw).

5.  Monthly Mortgage Payment – Interest only on funds advanced by Lender.

6.  Borrower must submit updated Personal Financial Statement

7.  Additional collateral acceptable to Lender is required for this loan. Titles of all properties accepted as collateral will be examined and papers prepared by Westmount Financial's attorney, whose judgment of title shall be final.

8.  Closing must take place on or before Friday, February 21, 2003

9.  Westmount Financial Limited Partnership's approval to fund Borrower's project located at 14-34 Main Street, Gardiner, MA, is subject to clear title, with the exception of first mortgages, to said property, including all properties presented as additional collateral, Lender's full satisfaction of updated personal financial statement, 2001 and 2002 Tax Returns for Douglas Rau and BBC Equities, Inc., and loan documentation satisfactory to lender's counsel in form and substance.

Please sign below acknowledging acceptance of the terms and conditions of the loan and fax back to me as soon as possible.

Sincerely,

*Michael J. Hart*

Michael J. Hart, Vice President
CIF, Inc., its General Partner

Agreed To: _____
             Douglas Rau/BBC Equities, Inc.

# EXHIBIT D

**PROMISSORY NOTE**

$1,744,186.05
Eighteen Months

February 25, 2003
Manchester, New Hampshire

FOR VALUE RECEIVED, BBC Equities, Inc., a Massachusetts corporation with an address of 14 Main Street, Gardner, Massachusetts 01440 (hereinafter referred to as the "Undersigned"), promises to pay to the order of WESTMOUNT FINANCIAL LIMITED PARTNERSHIP, a Nevada limited partnership with an address of 14648 n. Scottsdale Road, Suite 325, Scottsdale, AZ 85254-2739 (the "Lender"), its endorsees, successors and assigns, at such address or at such other address as may be designated hereafter by any Holder hereof, the principal sum of ONE MILLION SEVEN HUNDRED FORTY FOUR THOUSAND ONE HUNDRED EIGHTY SIX AND 05/100 DOLLARS ($1,744,186.05), together with interest as provided for below, in lawful money of the United States of America.

Principal and interest shall be payable as follows:

(1)  On April 1, 2003, and on the corresponding day of the next succeeding sixteen (16) months during the term hereof, the Undersigned shall make a payment of accrued interest only calculated in accordance with the terms of this Note on the outstanding principal balance; and

(2)  Notwithstanding anything herein to the contrary, on August 25, 2004 ("Maturity Date"), the Undersigned shall make a final payment to the Holder of the entire then outstanding principal balance hereof, together with all accrued and unpaid interest and any costs and fees payable hereunder.

The Holder shall <u>not</u> render to the Undersigned a statement of account with respect thereto on a monthly basis. Interest shall be calculated and charged daily on the basis of a 360 day banking year on the unpaid principal balance outstanding from time to time. **Prior to maturity, unless upon demand, acceleration or other default, the interest rate applicable to this Note shall be equal to eighteen percent (18.0%) per annum (the "Interest Rate")**. The Undersigned has elected to roll the Lender's origination fee of $244,186.05 into the principal balance of the Loan and such fee is considered earned at the time of the execution of the Note. Payments of interest only shall be due monthly computed at

12% per annum on the outstanding balance of the Loan (computed from the date of each advance) with an additional 6% per annum on the outstanding balance accruing, compounding monthly and such accruals due and payable at maturity or acceleration. **Borrower agrees to pay an accrual fee of $15,000.00, payable at acceleration and/or maturity, in cosideration of Lender's deferral of a portion of the monthly interest payments.** In the event no construction funds (not including closing costs and points) are drawn prior to September 30, 2003, **TIME BEING OF THE ESSENCE,** the Undersigned agrees that the Lender's origination fee of $244,186.05 shall be due and payable on October 30, 2003 along with any other applicable charges and Lender will have no further obligation to fund the Loan.

**Provided the Undersigned is not in default hereunder, the Undersigned shall have the right, once and only once, to extend the term of this Note for an additional period of six (6) months upon payment to the Holder of an extension fee in the sum of TWO HUNDRED EIGHTY THREE THOUSAND NINE HUNDRED THIRTY SEVEN 26/100 DOLLARS ($283,937.26) ("Extension Fee") on or before the maturity date stated above, time being of the essence which amount shall not be applied to outstanding interest or principal. In the event Borrower fails to notify the Lender that he does not wish to extend and the Note is not paid in full at maturity, the extension feel will be added to the principal balance. In the event of any such extension, the Undersigned shall make monthly payments of accrued interest only at the Interest Rate on the outstanding principal balance hereunder, with a final payment of the entire then outstanding principal balance hereof, together with all accrued and unpaid interest and any costs and fees payable hereunder on or before the extended maturity date.**

The Undersigned may prepay this Note in full or in part at any time, without the payment of any penalty, premium or charge of any nature. In the event that any such prepayment shall be made by the Undersigned, the amount thereof shall be applied first to any accrued interest, costs and fees, and thereafter to outstanding principal. In the event of any prepayment of the Note prior to maturity at the original or any extended maturity date, no refund of the Extension Fee or any other sum collected hereunder prior to such repayment shall be refundable.

The payment and performance of the obligations contained



herein are secured by a certain Mortgage and the other documents from the Undersigned to the Holder dated as of even date herewith securing property known as 14-34 Main Street, Gardner, Massachusetts (such documents are hereinafter collectively referred to together with this Note as the "Loan Documents"), and the additonal collateral granted to the Holder hereby (the "Collateral").

Upon the occurrence of any of the following events of default, this Note shall, at the option of the Holder, become immediately due and payable in full, without further demand or notice:

A.  Default by the Undersigned in payment on its due date of any principal or interest called for under the Loan Documents.  **TIME IS OF THE ESSENCE AS TO EACH PAYMENT**.

B.  Default by the Undersigned in the performance or observance of any of the provisions, terms, conditions, warranties or covenants of the Loan Documents not cured within any applicable grace or remedy period.

C.  Default by the Undersigned, not cured within any applicable grace or remedy period, in the payment or performance of any other obligations due the Holder or under any other contract for borrowed money with any other lender, private or institutional, whether created prior to, concurrent with, or subsequent to obligations arising out of the Loan Documents.

D.  If any statement, representation or warranty made by the Undersigned in the Loan Documents or in connection therewith or any financial statement, report, schedule, or certificate furnished by the Undersigned or any of its agents or accountants to the Holder during the term of this Note shall prove to have been false or misleading when made, or subsequently becomes false or misleading, in any material respect.

E.  The Undersigned or any Guarantor shall (i) apply for or consent to the appointment of a receiver, trustee or liquidator of it or any of its property,



(ii) admit in writing its inability to pay debts as they mature, (iii) make a general assignment for the benefit of creditors, (iv) be adjudicated as bankrupt or insolvent, (v) die, or (vi) file a voluntary petition in bankruptcy, or a petition or an answer seeking reorganization to take advantage of any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law or statute, or an answer admitting any material allegations of a petition filed against it in any proceeding under any such law.

F.   Proceedings shall be commenced or an order, judgment or decree shall be entered, without the application, approval or consent of the Undersigned, in or by any court of competent jurisdiction, relating to the bankruptcy, dissolution, liquidation, reorganization or the appointment of a receiver, trustee or liquidator of the Undersigned, or of all or a substantial part of its assets, and such proceedings, order, judgment or decree shall continue undischarged or unstayed for a period of sixty (60) days.

G.   Non-payment when due of any municipal assessment outstanding with respect to any real property which serves as collateral for repayment of the Note.

H.   Transfer, whether involuntary or voluntary, by the Undersigned of any portion or all of the property that constitutes and serves as Collateral for the obligations herein without the express written consent of the Lender prior to any such transfer.

I.   The death of Douglas K. Rau.

The Holder may impose upon the Undersigned a delinquency charge of One Thousand Dollars ($1,000.00) per month for any payment amount that is not paid on or before day such payment is due and remains unpaid from month to month. The entire principal balance hereof, together with accrued interest, shall, after maturity or default, whether upon demand, acceleration or otherwise, bear interest at the rate of thirty six percent (36.0%) per annum ("Default Rate"). In addition to constituting an event of default, Lender may assess a penalty of $1,000.00 per month for each month in



which municipal assessments, water, sewer and or taxes, are due and unpaid.

In the event that the principal is not timely paid when due, whether at the Maturity Date or any extended maturity date as provided for herein, then a late payment charge equal to fourteen percent (14%) of the outstanding balance due to the Lender shall be due and payable either: (i) upon full payment by the Borrower; or (ii) in the event any collection action must be commenced (whether or not completed) by Lender to enforce repayment of the principal owed hereunder.

No provision of this Note or any other aspect of the transaction of which this Note is a part is intended to or shall require or permit the holder, directly or indirectly, to take, receive, contract for, or reserve, in money, goods, or things in action, or in any other way, any interest (including amounts deemed by law to be interest, such amounts to then be deemed to be an addition to the rate of interest agreed upon) in excess of the maximum rate of interest permitted by applicable law in the State of New Hampshire and/or the Commonwealth of Massachusetts as of the date hereof. If any such excess shall nevertheless be provided for, or be adjudicated by a court of competent jurisdiction to be provided for, the undersigned shall not be obligated to pay such excess but, if paid, then such excess shall be applied against the unpaid principal balance of this Note or, to the extent that the principal balance has been paid in full by reason of such application or otherwise, such excess shall be remitted to the undersigned.

The Undersigned agrees to pay on demand all out-of-pocket costs of collection and enforcement hereof, including attorney's fees, whether or not any foreclosure or other action is instituted by the Holder in its discretion. The term "enforcement" as used in this Note shall include, but not be limited to, the negotiation, documentation or other consummation of any modification, extension, renewal or other such transaction, whether or not the Undersigned is then in default under this Note or the other Loan Documents, and shall also include any and all attempts by the Holder to recover payment of amounts due under this Note or to require compliance with any term, covenant or condition of the Loan Documents with or without prior notice to the Borrower.

No delay or omission on the part of the Holder in exercising any right, privilege or remedy shall impair such



right, privilege or remedy or be construed as a waiver thereof or of any other right, privilege or remedy. No waiver of any right, privilege or remedy or any amendment to this Note shall be effective unless made in writing and signed by the Holder. Under no circumstances shall an effective waiver of any right, privilege or remedy on any one occasion constitute or be construed as a bar to the exercise of or a waiver of such right, privilege or remedy on any future occasion. The acceptance by the Holder of any payment after any default hereunder shall not operate to extend the time of payment of any amount then remaining unpaid hereunder or constitute a waiver of any rights of the Holder under this Note.

All rights and remedies of the Holder, whether granted herein or otherwise, shall be cumulative and may be exercised singularly or concurrently, and the Holder shall have, in addition to all other rights and remedies, the rights and remedies of a secured party under the Uniform Commercial Code of New Hampshire. The Holder shall have no duty as to the collection or protection of the Collateral or of any income thereon, or as to the preservation of any rights pertaining thereto beyond the safe custody thereof.

As additional Collateral, the Undersigned (i) grants to the Holder a security interest in, or pledges, assigns and delivers to the Holder, as appropriate, all deposits, credits and other property (real or personal) now or hereafter due from the Holder to the Undersigned, and (ii) grants to the Holder the right to set-off or foreclosure and apply (and a security interest in said right), from time to time hereafter and without demand or notice of any nature, all, or any portion, of such deposits, credits and other property (real or personal), against the indebtedness evidenced by this Note, whether or not the other Collateral, if any, is deemed adequate.

The Undersigned waives, to the fullest extent permitted by law, presentment, notice, protest and all other demands and notices and assents (1) to any extension of the time of payment or any other indulgence, (2) to any substitution, exchange or release of collateral, and (3) to the release of any other person primarily or secondarily liable for the obligations evidenced hereby. The Undersigned expressly waives any defense or claim based in whole or in part upon any actual or alleged impairment of the Collateral. The Undersigned hereby consents and agrees that the Holder may as

long as the Note remains unpaid, periodically, and without notice to Borrower obtain credit reports, verify income and make inquiry of other creditors and credit reporting agencies with respect to the Borrower's financial condition.

**THE PARTIES AGREE THAT ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO ANY OF THE LOAN DOCUMENTS OR THE ACTIONS OF THE LENDER IN THE ENFORCEMENT THEREOF SHALL BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.**

This Note and the provisions hereof shall be binding upon the Undersigned and the Undersigned's heirs, administrators, executors, successors, legal representatives and assigns and shall inure to the benefit of the Holder and the Holder's heirs, administrators, executors, successors, legal representatives and assigns.

This Note may not be amended, changed or modified in any respect except by a written document which has been executed by each party. This Note is to be construed according to and governed by the laws of the State of New Hampshire. In the event of any dispute hereunder, the Undersigned agrees and irrevocably consents to the jurisdiction and venue of the federal or state courts sitting within the State of New Hampshire.

The term "Holder" as used herein shall mean the Lender, any assignee, endorsee, successor or other transferee of the Lender or any subsequent endorsee, successor or other transferee of this Note.

IN WITNESS WHEREOF, the Undersigned have executed this Term Promissory Note on this 25th day of February, 2003.

(the "Borrower")
BBC EQUITIES, INC.

By: _____

Name: Douglas Rau
Title: President
Duly Authorized

Witness

STATE OF NEW HAMPSHIRE
COUNTY OF HILLSBOROUGH

    The foregoing instrument was acknowledged before me
this 25th day of February, 2003 by Douglas K. Rau, duly
authorized President and Treasurer of BBC Equities, Inc., a
Massachusetts corporation as his free act and deed on
behalf of the corporation.

JOHN L. ALLEN

_____
Notary Public
My Commission Expires: 6/24/2008
Notary Seal:

# EXHIBIT E

# M E M O R A N D U M

**Date:**     June 24, 2004

**To:**      Doug Rau

**Fr:**      Mike Hart

**Re:**      <u>Legal Descriptions</u>

I discussed with Dick your scheduled refinancing of Greenwood Street, Grant Street, and Martel Street on Tuesday. We both agree that the easiest way for us to administer your loan given the selling and refinancing of properties is to blanket all your properties. As you sell or refinance we can discuss whether we release without compensation.

I will need the legal descriptions on the following properties:

> 136 Brookside Road, Orange, MA
> 102 Central/159 Park Street, Athol, MA
> 15-17 East main Street, Orange, MA
> ~~208 East Main Street, Orange, MA~~
> ~~322-324 Elm Street, Fitchburg, MA~~
> ~~67-77 Green Street, Athol, MA~~
> 52 Mechanic Street, Orange, MA  *SOLD*
> 38 Omena Place, Fitchburg, MA
> 274 Pleasant Street, Gardiner, MA
> 537-539 School Street, Athol, MA
> 88 Sherman Street, Gardiner, MA
> 24 Wright Street, Gardiner, MA
> 141-143 Cottage Street, Athol, MA  *SOLD*

*Deb - I have legal descriptions - do not need. Mike*

As soon as you get the legal descriptions to me I will fax them to John. Release of Greenwood, Grant and Martel will be contingent on you getting the legal descriptions together and to me as soon as possible.

Please call me to discuss.

# EXHIBIT F



**City of Gardner**
**Department of Inspectional Services**
**115 Pleasant Street**
**Gardner, MA 01440**
**(978) 630-4007  •  Fax (978) 630-4020**

August 9, 2005

Douglas K. Rau
180 Lawrence Street
Gardner, MA 01440

Doug;

  Since November 9, 2005 your property at 31 Grant Street has remained fire ravaged, structurally unsound, open to the weather, and especially dangerous in case of fire. On or about May 21, 2005, at Gardner Housing Court, you agreed to Make Safe or Remove this building by July 21,2005. You are now in CONTEMPT OF COURT and further court action could promote heavy fines as well as possible jail sentences. If you do not act Immediately I will have no choice, I will start court action.

  I will expect to hear from you Immediately.

Sincerely

Dick Reynolds
Building Commissioner




# CITY OF GARDNER

OFFICE OF THE
### BOARD OF HEALTH ROOM 29, CITY HALL
GARDNER, MASSACHUSETTS 01440
(978) 630-4013
FAX (978) 632-4682

CERTIFIED MAIL 7099 3400 0001 3826 5295

March 11, 2005

BBC Equities, Inc.
C/O Doug Rau
47 Halford St.
Gardner, MA 01440

Re: 31 Grant Street, Gardner, MA 01440

Request from the Mayors' office.

Dear Mr. Rau:

Acting under the authority of Massachusetts General Laws, Chapter 111, Section 127A and 127B, the above referenced property was inspected by Daniel T. Rajecki, an inspector for the Board of Health. According to the records on file with the Assessor's office this property is owned by you.

This property was found to contain certain violations to Chapter 2 of the State Sanitary Code, 105 CMR 410.000, Minimum Standards of Fitness for Human Habitations.

You are hereby ordered to correct all of the violations on the enclosed list within 24 hours, 10 days and /or 30 days of receipt of this letter.
Failure to correct these violations within 24 hours, 10 days and/or 30 days after receipt of this letter may result in additional non-criminal citations and/or a fine (upon conviction) levied against you of not less than ten nor more than five hundred dollars. Each day's failure to comply shall constitute a separate violation.

Under Regulation 410.840 of the code which is cited above, you have the right to a hearing, and any affected party has the right to appear at such a hearing. You also have the right to be represented at such a hearing and have the right to inspect and obtain copies of all relevant inspection and investigation reports, orders, notices and other documentary information in the possession of the Board of Health. If you want a hearing, you must make a written request to this office within seven days of receipt of this letter.

Page 2

CERTIFIED MAIL 7099 3400 0001 3826 529

March 11, 2005

BBC Equities, Inc.
C/O Doug Rau
47 Halford St.
Gardner, MA 01440

Re: 31 Grant Street, Gardner, MA 01440

Dear Mr. Rau:

**The following violations must be corrected within <u>24 hours</u> of receipt of this letter. Any violation which is marked with an asterisk (*) may endanger or materially impair the health and/or well being of the occupants or the public.**

**\*1.   Remove all trash and debris including but not limiting to one mattress, one TV and lots of other debris front, sides and rear yard of dwelling.**
                                                            **Regulation 420.602**


*Daniel Rajecki*

Daniel Rajecki,
Asst., Sanitary Inspector

PC: His Honorable Mayors' office
      Fire Dept.
      Building Dept. City of Gardner


File: 31 Grant-05

## Commonwealth of Massachusetts
### The Trial Court

Worcester, ss.

Housing Court Department
Worcester County Division

Plaintiff  City of Gardner

Docket no. _____

v.

Defendant Douglas K.Rau

NOTICE TO APPEAR IN COURT

_180 Lawrence Street_

_Gardner, Ma. 01440_

A TRUE COPY ATTEST
DEPUTY SHERIFF
5.31.05

## TO THE ABOVE NAMED DEFENDANT:

AS A RESULT OF A COMPLAINT FILED BY THE PLAINTIFF, YOU ARE ORDERED TO
APPEAR IN THE HOUSING COURT AT THE TIME AND PLACE LISTED BELOW:

DATE  June 21, 2005                                      TIME  9:00 A.M.

PLACE  Gardner Housing Court--- 108 Mathews Street, Gardner, Ma.

The purpose of this hearing is to determine if a preliminary injunction will be issued against you as
requested in the attached complaint or restraining order. The hearing will proceed even if you are
not here.

When you come to court, please be prepared to tell your side of the story. In most cases, you and
the Plaintiff will be able to meet with a housing court mediator who may be able to help you both
settle this matter. If you have any questions, please call the Clerk's office at (508) 792-0800.

Dated:_____

James A. Bisceglia
James A. Bisceglia
Clerk Magistrate

## SHERIFF'S / CONSTABLE'S RETURN OF SERVICE
I, THE UNDERSIGNED, SERVED THIS NOTICE AND ANY ACCOMPANYING
DOCUMENTS UPON THE DEFENDANT IN THE FOLLOWING MANNER:

Date_____          Signature_____

**COMMONWEALTH OF MASSACHUSETTS**
**The Trial Court**

Worcester, ss

No._____

Housing Court Department
Worcester County Division

## PLAINTIFF'S AFFIDAVIT/VERIFIED COMPLAINT AND
## APPLICATION FOR TEMPORARY RESTRAINING ORDER

Richard C. Reynolds

**Plaintiff** Building Commissioner

**Address** 115 Pleasant Street

**City**      Gardner, MA  01440

**Phone**    (978) 630-4007

**Defendant**  Douglas K. Rau

**Address**     180 Lawrence Street

**City**        Gardner, MA  01440

**Phone**

Briefly describe the facts, date, and time of events that have occurred:

Since November 9, 2004, the property at 31 Grant Street, Gardner, MA has remained fire ravaged,

structurally unsound, open to the weather, and especially dangerous in case of fire.  The owner received a

make Safe or Remove, and agreed to begin in December and has not.  This building is a threat to

the public-at-large, both health and safety.

_____

_____

Based upon the specific facts set out above, I request that the Court order the Defendant(s)
to desist and refrain from:

_____ Evicting me or attempting to evict me from my residence by force without the benefit of judicial
        process.

_____ Failing to furnish the following to my residence_____

_____ Refusing to return my personal belongings listed above.

_____ Serving an execution for possession against me.

__X__ Other:   Order to Make Safe or Remove_____

I request that the Court specifically waive the requirements of rule 65(C) of the Mass.  Rules of Civil Procedure
that I provide security for the issuance of the above order(s) for the reason(s) that:

_____ I request a preliminary injunction.

Signed and sworn to under the pains and penalties of perjury on this date.

Date    May 20, 2005                        Signature

# EXHIBIT G

# LAW OFFICES OF JOHN L. ALLEN & ASSOCIATES

Professional Corporation
**ATTORNEYS**

John L. Allen*

*Also admitted in MA

82 Palomino Lane
Suite 602
Bedford, NH 03110
Telephone (603) 666-9966
Fax (603) 668-7750
Email: jallen@jallenlaw.com

Richard M. Husband*

June 24, 2005

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
**and FIRST CLASS MAIL**

Douglas Rau
BBC Equities, Inc.
14 Main Street
P.O. Box 1014
Gardner, MA 01440

Douglas Rau
47 Halford Street
Gardner, MA 01440

Re:   Demand for Payment/$1,744,186.05 Term Promissory Note (the
      "Note") between Westmount Financial Limited Partnership
      (the "Lender") and BBC Equities, Inc. and Doug Rau (the
      "Borrower").

Dear Mr. Rau:

     This office represents the Lender with regard to the Note,
which was signed by the Borrower.

     (1)   **DEMAND**

     Please be advised that the Borrower is in default under the
terms of the Note for failure to make payments of interest and
principal when due, and that all principal amounts due pursuant
to the Note have been accelerated in accordance therewith.
Demand is hereby made for payment in full of such principal
balance, together with interest, late charges, costs and fees,
in accordance with the Note and the terms specified herein,
within ten (10) days of the date of this letter.

     (2)   **TOTAL AMOUNT DUE**

Douglas Rau
BBC Equities, Inc.
14-34 Main Street
Gardner, MA
Page Two
June 24, 2005


As of June 24, 2005, after application of all proper credits, the amount of principal, interest and late charges due under the Note is as follows:

| | |
|---|---|
| Principal | $1,027,848.40 |
| Interest | $ 122,371.33 |
| Accrued Interest | $ 320,609.34 |
| Late Fee (Mortgage) | $ 7,000.00 |
| Extension Fee (6/30/04) | $ 244,186.05 |
| Extension Fee (12/30/04) | $ 283,937.26 |
| Legal/Other Fees | $ 35.00 |
| Fee For Interest Deferral | $ 15,000.00 |

**TOTAL AMOUNT DUE as of June 24, 2005**    **$2,020,987.38**

Interest will continue to accrue on this account at the rate of $845.19 per diem.

In addition to the foregoing, the Lender hereby demands that you pay to it all of its costs and expenses, including attorneys' fees and disbursements, incurred by it in connection with the enforcement of the Note.

(4)  **FORM OF PAYMENT**

Payment should be made in current funds, or by bank or certified check, to The Law Offices of John L. Allen and Associates, P.C. as attorneys for Westmount Financial Limited Partnership, c/o John L. Allen, Esquire, 82 Palomino Lane, Suite 602, Bedford, New Hampshire, 03110. <u>Prior to making your payment, you must call our office to confirm the amount which must be provided</u>. In the event that payment is made in other than current funds, then please add on the appropriate per diem charges which will accrue until the item clears.

Douglas Rau
BBC Equities, Inc.
14-34 Main Street
Gardner, MA
Page Three
June 24, 2005

(5)  **WESTMOUNT'S REMEDIES**

Please note that, if payment in full is not received by the Lender as set forth above, then the Lender may proceed to exercise its various remedies at law and equity to collect the outstanding balances and amounts due under the Note, including, but not limited to, the initiation of legal proceedings against you in Rockingham County Superior Court and foreclosure of Westmount's collateral.

(6)  **NON-WAIVER**

Nothing that is contained in this letter should be construed, is intended, nor shall, waive any of the rights of the Lender pursuant to the Note. The Lender reserves all of its rights under the Note and any related documents, guarantees or collateral by which it is benefited. The Lender reserves to itself the right to accept partial payment of principal or any payment of interest, without in any way waiving or modifying its right to payment in full pursuant to the demand made herein.

Very truly yours,

THE LAW OFFICES OF JOHN L. ALLEN
AND ASSOCIATES, P.C.
As Attorneys for Westmount
Financial Limited Partnership

By: _____
John L. Allen, Esquire

c:  client

A true copy by photostatic process
Attest:
Asst. Clerk

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS


## CLERK'S NOTICE


This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.