UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BBC EQUITIES, INC., and DOUGLAS K. RAU,<br>        Plaintiffs<br><br>        V.<br><br>WESTMOUNT FINANCIAL LIMITED PARTNERSHIP,<br>        Defendant | DOCKET NO. 3:05-CV-40156-FDS |

### <u>AFFIDAVIT OF MICHAEL J. HART</u>

I, Michael J. Hart, being duly sworn, do hereby depose and state as follows:

1.      I am Senior Vice President of CIF, Inc., the general partner of Westmount Financial Limited Partnership ("Westmount").  In that capacity I have personal knowledge of the facts stated herein.

2.      Westmount is a Nevada limited partnership, with usual places of business at 14648 N. Scottsdale Rd., Suite 325, Scottsdale, Arizona; 4500 P.G.A. Blvd., Suite 303B, Palm Beach Gardens, Florida; and One Harbour Place, Suite 465, Portsmouth, NH.

3.      As a part of its business, Westmount extends short-term, quick-turnaround, 100%-financed, high-risk commercial real estate loans.  The underwriting risk associated with these loans is based on such factors as the borrower's credit history, the provision of 100% financing, the use of the funds in projects that don't conform to conventional lending, the location of projects in transitional areas, the low-occupancy levels of the properties and, in some instances, the mixed-use nature of the properties that are the subject of the loans.  The loans extended by Westmount to BBC are such loans.

4.      In extending such high-risk loans, Westmount requires the payment of "interest and expenses the aggregate of which exceeds an amount greater than twenty per centum per annum" as provided in M.G.L. c. 271, § 49. Accordingly, in compliance with the statute, Westmount periodically registers its intent to do so with the Attorney General of the Commonwealth of Massachusetts. True and accurate copies of such registrations filed since 2000 are attached as **Exhibit A**. As required by the statute, each registration contains the lender's "name and accurate address," and the statutorily required records are maintained and "available to the attorney general" at the designated address.

5.      Westmount has had an ongoing business relationship with BBC Equities, Inc. ("BBC") and has made thirteen loans to BBC since September 2001. Since that time, BBC has borrowed and repaid money from Westmount, on similar terms to those that are the subject of this action, without complaint. Ten of these loans have been paid off.

6.      On or about April 5, 2002, BBC and Westmount entered into a loan agreement through which BBC borrowed $75,000 to fund architectural services with regard to the property located at 14-34 Main Street, Gardner, Massachusetts (the "Architect Loan"). Attached as **Exhibit B** is a true and accurate copy of the promissory note memorializing the terms of the Architect Loan. BBC contemporaneously provided mortgages against certain of its real estate as collateral for the Architect Loan. Douglas K. Rau, President of BBC, personally guaranteed the Architect Loan.

7.      On or about February 25, 2003, BBC and Westmount entered into a second loan agreement through which BBC borrowed $1,448,632.23 (against available credit of $1,5000,00) to fund construction and improvement of property located at 14-34 Main Street, Gardner, Massachusetts (the "Construction Loan"). Attached as **Exhibit C** is a true and accurate copy of

the promissory note memorializing the terms of the Construction Loan. BBC contemporaneously provided mortgages against certain of its real estate as collateral for the Construction Loan. Mr. Rau personally guaranteed the Construction Loan.

8.    On or about July 1, 2003, BBC and Westmount entered into a third loan agreement through which BBC borrowed $200,000 to fund construction and improvement of property located at 325 Main Street, Fitchburg, Massachusetts (the "325 Main St. Loan"). Attached as **Exhibit D** is a true and accurate copy of the promissory note memorializing the terms of the 325 Main St. Loan. BBC contemporaneously provided a first mortgage against that property as collateral for the 325 Main St. Loan. Mr. Rau personally guaranteed the 325 Main St. Loan.

9.    In July 2003, the parties agreed that, as of August 1, 2003, the administration of the Architect Loan and the Construction Loan, both of which related to the 14-34 Main Street, Gardner, Property, would be combined such that the more advantageous (to BBC) terms of the larger Construction Loan would be applied to the Architect Loan, and payments against the two loans would be combined, notwithstanding that separate promissory notes would remain outstanding.

10.    In July 2004, BBC sought release of certain mortgages securing its outstanding debt, but was not then in a position to repay the loan. As consideration for the requested discharges, Westmount required that BBC provide mortgages against certain other real estate owned by plaintiffs as a substitute for the original collateral.

11.    The Architect Loan, the Construction Loan and the 325 Main St. Loan remain outstanding. BBC defaulted on the Architect and Construction Loans in October 2004, when it failed to make promised payments. The outstanding principal balance on those loans is

$1,026,767.65. BBC defaulted on the 325 Main St. Loan in November 2004, when it failed to make promised payments. The outstanding principal balance on the 325 Main St. Loan is $232,558.14.

12.    Based on a survey of the properties securing the outstanding loans and an analysis of the anticipated sales prices, equity and outstanding obligations, as reported by Mr. Rau, and historical closing prices for BBC properties, the outstanding loans are insufficiently collateralized to ensure repayment of the balance of the Architect, Construction and 325 Main St. Loans. According to Westmount's analysis, the net fair value of the collateral it holds is approximately $1,647,000, while the outstanding balance on the loans exceeds $2.3 million. In my experience, value realized by forced sale at foreclosure would be significantly less. Mr. Rau has acknowledged same in a letter to CIF, Inc. dated October 27, 2004, in which he states, "Even if you just foreclose you are probably not going to be made whole because the added costs and short sale prices would take away from the bottom line." A true and accurate copy of the October 27, 2004, letter is attached as **Exhibit E**.

Signed under the pains and penalties of perjury this 30th day of September, 2005.

_Michael J. Hart_
Michael J. Hart

### CERTIFICATE OF SERVICE

I, Kristin D. Thompson, hereby certify that I have this day served the foregoing document, via      electronic filing,      to **Dana E. Casher**, Esq., Krulewich, Casher, P.C., 50 Staniford Street, Boston, MA 02114.

Dated: October 3, 2005

_Kristin D. Thompson_
Kristin D. Thompson, Esq.

# EXHIBIT A

# Law Offices of Jack Bryan Little, P.C.

---

401 Andover Street
North Andover, MA 01845
(978) 682-9985    FAX (978) 682-9935

August 23, 2004

*00292*

Office of the Attorney General
Usury & Criminal Division
Commonwealth of Massachusetts
One Ashburton Place
Boston, MA 02108

RE:    WESTMOUNT FINANCIAL LIMITED PARTNERSHIP
       Notification of intent to engage in loan transactions pursuant to M.G.L. c. 271 s. 49

Dear Sir/Madam:

    This office represents Westmount Financial Limited Partnership in connection with certain high interest loan transactions.

    Please accept this correspondence as notification pursuant to M.G.L. c. 271, s. 49 that Westmount Financial Limited Partnership intends to enter into high interest loan transactions.

    The following information is provided pursuant to the said statute:

           Name of Lender:    Westmount Financial Limited Partnership
           Address of Lender:   14648 N. Scottsdale Road
                         Suite 325
                         Scottsdale, AZ 85254

    Records of all such transactions shall be maintained at the above address.

    Please feel free to contact me if I can be of any assistance to you in this regard.

           Sincerely,

           Jack Bryan Little

RECEIVED
AUG 2 4 2004
OFFICE OF THE ATTORNEY GENERAL
CRIMINAL BUREAU

# Law Offices of Jack Bryan Little, P.C.

**401 Andover Street**
**North Andover, MA 01845**
**(978) 682-9985    FAX (978) 682-9935**

August 4, 2003

Office of the Attorney General                                           **000190**
Usury & Criminal Division
Commonwealth of Massachusetts
One Ashburton Place
Boston, MA 02108

RE:    WESTMOUNT FINANCIAL LIMITED PARTNERSHIP
       Notification of intent to engage in loan transactions pursuant to M.G.L. c.271 s. 49

Dear Sir/Madam:

This office represents Westmount Financial Limited Partnership in connection with certain high interest loan transactions.

Please accept this correspondence as notification pursuant to M.G.L. c. 271, s. 49 that Westmount Financial Limited Partnership intends to enter into high interest loan transactions.

The following information is provided pursuant to said statute:

Name of Lender:       Westmount Financial Limited Partnership
Address of Lender:    4500 P.G.A. Boulevard
                      Suite 303B
                      Palm Beach Gardens, Florida 33418

Records of all such transactions shall be maintained at the above address.

Please feel free to contact me if I can be of any assistance to you in this regard.

Sincerely,

Jack Bryan Little

RECEIVED
AUG 06 2003
OFFICE OF THE ATTORNEY GENERAL
CRIMINAL BUREAU

# Law Offices of Jack Bryan Little, P.C.

**401 Andover Street**
**North Andover, MA 01845**
**(978) 682-9985    FAX (978) 682-9935**

February 1, 2002

Office of the Attorney General
Usury & Criminal Division
Commonwealth of Massachusetts
One Ashburton Place
Boston, MA 02108

RE:    WESTMOUNT FINANCIAL LIMITED PARTNERSHIP
Notification of intent to engage in loan transactions pursuant to M.G.L. c. 271 s. 49

Dear Sir/Madam:

This office represents Westmount Financial Limited Partnership in connection with certain high interest loan transactions.

Please accept this correspondence as notification pursuant to M.G.L. c. 271, s. 49 that Westmount Financial Limited Partnership intends to enter into high interest loan transactions.

The following information is provided pursuant to the said statute:

Name of Lender:    Westmount Financial Limited Partnership
Address of Lender:    4500 P.G.A. Boulevard
Suite 303B
Palm Beach Gardens, Florida 33418

Records of all such transactions shall be maintained at the above address.

Please feel free to contact me if I can be of any assistance to you in this regard.

Sincerely,

Jack Bryan Little

# LAW OFFICES OF JOHN L. ALLEN & ASSOCIATES

Professional Corporation
## ATTORNEYS

---

John L. Allen*
*Also admitted in MA

27 Lowell Street
Manchester, NH 03101
Telephone (603) 666-9966
Fax (603) 668-7750

David A. Pappalardo*

May 17, 2001

Office of the Attorney General
Usury & Criminal Division
Commonwealth of Massachusetts
One Ashburton Place
Boston, MA 02109

Re:  **WESTMOUNT FINANCIAL LIMITED PARTNERSHIP**
     **Notification of intent to engage in loan transactions pursuant
     to M.G.L. c 271 s. 49**

Dear Sir or Madam:

Please be advised that this office represents Westmount Financial Limited Partnership in connection with certain high interest loan transactions.

Please accept this correspondence as notification pursuant to M.G.L. c. 271, s. 49 that Westmount Financial Limited Partnership, CIF, Inc (General Partner) intends to enter into high interest loan transactions.

The following information is provided pursuant to the said statute.

Name of Lender:    Westmount Financial Limited Partnership

Address of Lender:  6929 E. Greenway Parkway, Suite 190
                    Scottsdale, AZ 85254

Records of all such transactions shall be maintained at the Lender's Florida address, 4500 PGA Boulevard, Suite 303B, Palm Beach Gardens, Florida 33418.

If you should have any questions, then please do not hesitate to contact me.

Very truly yours,

LAW OFFICES OF JOHN L. ALLEN
AND ASSOCIATES, P.C.

By: _____
    John L. Allen, Esquire

/vmm
cc:client

Law Offices of Jack Bryan Little, P.

401 Andover Street
North Andover, MA 01845
(978) 682-2003    FAX (978) 502-0055

June 8, 2000

Office of the Attorney General
Usury & Criminal Division
Commonwealth of Massachusetts
One Ashburton Place
Boston, MA 02108

RE. WESTMOUNT FINANCIAL LIMITED PARTNERSHIP
    Notification of intent to engage in loan transactions pursuant to M.G.L  c  271 s. 49

Dear Sir/Madam:

    This office represents Westmount Financial Limited Partnership in connection with certain high interest loan transactions.

    Please accept this correspondence as notification pursuant to M.G.L c. 271, s  49 that Westmount Financial Limited Partnership. CIF. Inc. (General Partner) intends to enter into high interest loan transactions

    The following information is provided pursuant to the said statute.

    Name of Lender· WESTMOUNT FINANCIAL LIMITED PARTNERSHIP

    Address of Lender·    4500 P.G.A. Boulevard
                      Suite 303B
                      Palm Beach Gardens, Florida 33418

    Records of all such transactions shall be maintained at the above address

    Please feel free to contact me if I can be of any assistance to you in this regard

        Sincerely.

        Jack Bryan Little

# EXHIBIT B

COPY

**TERM PROMISSORY NOTE**

$87,209.30
Twelve Months

April 5, 2002
Manchester, New Hampshire

FOR VALUE RECEIVED, BBC Equities, Inc., a Massachusetts corporation with an address of 14 Main Street, Gardner, Massachusetts 01440 (hereinafter referred to as the "Undersigned"), promises to pay to the order of WESTMOUNT FINANCIAL LIMITED PARTNERSHIP, a Nevada limited partnership with an address of 6929 E. Greenway Parkway, Suite 190, Scottsdale, Arizona 85254 (the "Lender"), its endorsees, successors and assigns, at such address or at such other address as may be designated hereafter by any Holder hereof, the principal sum of EIGHTY SEVEN THOUSAND TWO HUNDRED NINE DOLLARS AND 30/100 ($87,209.30), together with interest as provided for below, in lawful money of the United States of America.

Principal and interest shall be payable as follows:

(1)  On June 1, 2002, and on the corresponding day of the next succeeding ten (10) months during the term hereof, the Undersigned shall make a payment of accrued interest only in the amount of $1,308.14; and

(2)  Notwithstanding anything herein to the contrary, on April 5, 2003 ("Maturity Date"), the Undersigned shall make a final payment to the Holder of the entire then outstanding principal balance hereof, together with all accrued and unpaid interest and any costs and fees payable hereunder.

The Holder shall <u>not</u> render to the Undersigned a statement of account with respect thereto on a monthly basis. Interest shall be calculated and charged daily on the basis of a 360 day banking year on the unpaid principal balance outstanding from time to time. Prior to maturity, unless upon demand, acceleration or other default, the interest rate applicable to this Note shall be equal to eighteen percent (18.0%) per annum (the "Interest Rate").

Provided the Undersigned is not in default hereunder, the Undersigned shall have the right, once and only once, to extend the term of this Note for an additional period of six (6) months upon payment to the Holder of an extension fee in the sum of FOURTEEN THOUSAND ONE HUNDRED NINETY SIX DOLLARS AND 86/100 ($14,196.86) ("Extension Fee") on or before the maturity date stated above, time being of the essence which amount shall not be applied to outstanding interest or principal. In the event of any such extension, the Undersigned shall make monthly payments of accrued interest only at the Interest Rate on the outstanding principal balance hereunder, with a final payment of the entire

then outstanding principal balance hereof, together with all accrued and unpaid interest and any costs and fees payable hereunder on or before the extended maturity date.

The Undersigned may prepay this Note in full or in part at any time, without the payment of any penalty, premium or charge of any nature. In the event that any such prepayment shall be made by the Undersigned, the amount thereof shall be applied first to any accrued interest, costs and fees, and thereafter to outstanding principal. In the event of any prepayment of the Note prior to maturity at the original or any extended maturity date, no refund of the Extension Fee or any other sum collected hereunder prior to such repayment shall be refundable.

The payment and performance of the obligations contained herein are secured by a certain Mortgage and the other documents from the Undersigned to the Holder dated as of even date herewith securing property known as 14-34 Main Street, Gardner, Massachusetts and several other parcels of real property located at 1217 Main Street, Athol, Massachusetts, 479 School Street, Athol, Massachusetts, 537-539 School Street, Athol, Massachusetts, 98 Sherman Street, Gardner, Massachusetts and 47 Halford Street, Gardner, Massachusetts (such documents are hereinafter collectively referred to together with this Note as the "Loan Documents"), and the collateral granted to the Holder thereby (the "Collateral").

Upon the occurrence of any of the following events of default, this Note shall, at the option of the Holder, become immediately due and payable in full, without further demand or notice:

A.  Default by the Undersigned in payment on its due date of any principal or interest called for under the Loan Documents. TIME IS OF THE ESSENCE AS TO EACH PAYMENT.

B.  Default by the Undersigned in the performance or observance of any of the provisions, terms, conditions, warranties or covenants of the Loan Documents not cured within any applicable grace or remedy period.

C.  Default by the Undersigned, not cured within any applicable grace or remedy period, in the payment or performance of any other obligations due the Holder or under any other contract for borrowed money with any other lender, private or institutional, whether created prior to, concurrent with, or subsequent to obligations arising out of the Loan Documents.

D.  If any statement, representation or warranty made by

2

the Undersigned in the Loan Documents or in connection therewith or any financial statement, report, schedule, or certificate furnished by the Undersigned or any of its agents or accountants to the Holder during the term of this Note shall prove to have been false or misleading when made, or subsequently becomes false or misleading, in any material respect.

E.    The Undersigned or any Guarantor shall (i) apply for or consent to the appointment of a receiver, trustee or liquidator of it or any of its property, (ii) admit in writing its inability to pay debts as they mature, (iii) make a general assignment for the benefit of creditors, (iv) be adjudicated as bankrupt or insolvent, (v) die, or (vi) file a voluntary petition in bankruptcy, or a petition or an answer seeking reorganization to take advantage of any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law or statute, or an answer admitting any material allegations of a petition filed against it in any proceeding under any such law.

F.    Proceedings shall be commenced or an order, judgment or decree shall be entered, without the application, approval or consent of the Undersigned, in or by any court of competent jurisdiction, relating to the bankruptcy, dissolution, liquidation, reorganization or the appointment of a receiver, trustee or liquidator of the Undersigned, or of all or a substantial part of its assets, and such proceedings, order, judgment or decree shall continue undischarged or unstayed for a period of sixty (60) days.

G.    Non-payment when due of any municipal assessment outstanding with respect to any real property which serves as collateral for repayment of the Note.

H.    Transfer, whether involuntary or voluntary, by the Undersigned of any portion or all of the property that constitutes and serves as Collateral for the obligations herein without the express written consent of the Lender prior to any such transfer.

I.    The death of Douglas K. Rau.

The Holder may impose upon the Undersigned a delinquency charge of One Thousand Dollars ($1,000.00) per month for any payment amount that is not paid on or before day such payment is

3

due and remains unpaid from month to month. The entire principal balance hereof, together with accrued interest, shall, after maturity or default, whether upon demand, acceleration or otherwise, bear interest at the rate of thirty-six percent (36.0%) per annum ("Default Rate"). In addition to constituting an event of default, Lender may assess a penalty of $1,000.00 per month for each month in which municipal assessments, water, sewer and or taxes, are due and unpaid.

In the event that the principal is not timely paid when due, whether at the Maturity Date or any extended maturity date as provided for herein, then a late payment charge equal to fourteen percent (14%) of the outstanding balance due to the Lender shall be due and payable either: (i) upon full payment by the Borrower; or (ii) in the event any collection action must be commenced (whether or not completed) by Lender to enforce repayment of the principal owed hereunder.

No provision of this Note or any other aspect of the transaction of which this Note is a part is intended to or shall require or permit the holder, directly or indirectly, to take, receive, contract for, or reserve, in money, goods, or things in action, or in any other way, any interest (including amounts deemed by law to be interest, such amounts to then be deemed to be an addition to the rate of interest agreed upon) in excess of the maximum rate of interest permitted by applicable law in the State of New Hampshire and/or the Commonwealth of Massachusetts as of the date hereof. If any such excess shall nevertheless be provided for, or be adjudicated by a court of competent jurisdiction to be provided for, the undersigned shall not be obligated to pay such excess but, if paid, then such excess shall be applied against the unpaid principal balance of this Note or, to the extent that the principal balance has been paid in full by reason of such application or otherwise, such excess shall be remitted to the undersigned.

The Undersigned agrees to pay on demand all out-of-pocket costs of collection and enforcement hereof, including attorney's fees, whether or not any foreclosure or other action is instituted by the Holder in its discretion. The term "enforcement" as used in this Note shall include, but not be limited to, the negotiation, documentation or other consummation of any modification, extension, renewal or other such transaction, whether or not the Undersigned is then in default under this Note or the other Loan Documents, and shall also include any and all attempts by the Holder to recover payment of amounts due under this Note or to require compliance with any term, covenant or condition of the Loan Documents with or without prior notice to the Borrower.

4

No delay or omission on the part of the Holder in exercising any right, privilege or remedy shall impair such right, privilege or remedy or be construed as a waiver thereof or of any other right, privilege or remedy. No waiver of any right, privilege or remedy or any amendment to this Note shall be effective unless made in writing and signed by the Holder. Under no circumstances shall an effective waiver of any right, privilege or remedy on any one occasion constitute or be construed as a bar to the exercise of or a waiver of such right, privilege or remedy on any future occasion. The acceptance by the Holder of any payment after any default hereunder shall not operate to extend the time of payment of any amount then remaining unpaid hereunder or constitute a waiver of any rights of the Holder under this Note.

All rights and remedies of the Holder, whether granted herein or otherwise, shall be cumulative and may be exercised singularly or concurrently, and the Holder shall have, in addition to all other rights and remedies, the rights and remedies of a secured party under the Uniform Commercial Code of New Hampshire. The Holder shall have no duty as to the collection or protection of the Collateral or of any income thereon, or as to the preservation of any rights pertaining thereto beyond the safe custody thereof.

As additional Collateral, the Undersigned (i) grants to the Holder a security interest in, or pledges, assigns and delivers to the Holder, as appropriate, all deposits, credits and other property (real or personal) now or hereafter due from the Holder to the Undersigned, and (ii) grants to the Holder the right to set-off or foreclosure and apply (and a security interest in said right), from time to time hereafter and without demand or notice of any nature, all, or any portion, of such deposits, credits and other property (real or personal), against the indebtedness evidenced by this Note, whether or not the other Collateral, if any, is deemed adequate.

The Undersigned waives, to the fullest extent permitted by law, presentment, notice, protest and all other demands and notices and assents (1) to any extension of the time of payment or any other indulgence, (2) to any substitution, exchange or release of collateral, and (3) to the release of any other person primarily or secondarily liable for the obligations evidenced hereby. The Undersigned expressly waives any defense or claim based in whole or in part upon any actual or alleged impairment of the Collateral. The Undersigned hereby consents and agrees that the Holder may as long as the Note remains unpaid, periodically, and without notice to Borrower obtain credit reports, verify income and make inquiry of other creditors and credit reporting agencies with respect to the Borrower's financial condition.

**THE PARTIES AGREE THAT ANY ACTION, PROCEEDING, OR**

COUNTERCLAIM ARISING OUT OF OR RELATING TO ANY OF THE LOAN DOCUMENTS OR THE ACTIONS OF THE LENDER IN THE ENFORCEMENT THEREOF SHALL BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

This Note and the provisions hereof shall be binding upon the Undersigned and the Undersigned's heirs, administrators, executors, successors, legal representatives and assigns and shall inure to the benefit of the Holder and the Holder's heirs, administrators, executors, successors, legal representatives and assigns.

This Note may not be amended, changed or modified in any respect except by a written document which has been executed by each party. This Note is to be construed according to and governed by the laws of the State of New Hampshire. In the event of any dispute hereunder, the Undersigned agrees and irrevocably consents to the jurisdiction and venue of the federal or state courts sitting within the State of New Hampshire.

The term "Holder" as used herein shall mean the Lender, any assignee, endorsee, successor or other transferee of the Lender or any subsequent endorsee, successor or other transferee of this Note.

IN WITNESS WHEREOF, the Undersigned have executed this Term Promissory Note on this 5ᵗʰ day of April, 2002.

_____
Witness

(the "Borrower")
BBC EQUITIES, INC.

By: _____
Name: Douglas Rau
Title: President
Duly Authorized

COMMONWEALTH OF MASSACHUSETTS
COUNTY OF WORCESTER

The foregoing instrument was acknowledged before me this 5ᵗʰ day of April, 2002 by Douglas K. Rau, duly authorized president of BBC Equities, Inc., a Massachusetts corporation as his free act and deed on behalf of the corporation.

_____
Notary Public/Justice of the Peace
My Commission Expires: 1-9-09
Notary Seal:

David A. Pappalardo

5

## UNLIMITED, UNCONDITIONAL GUARANTY AGREEMENT

THIS UNLIMITED, UNCONDITIONAL GUARANTY AGREEMENT (this "Agreement"), dated as of April 5, 2002, by DOUGLAS K. RAU, with an address of P.O. Box 1014, Gardner, Massachusetts 01440 (the "Guarantor"), to WESTMOUNT FINANCIAL LIMITED PARTNERSHIP, a limited partnership formed under the laws of the State of Nevada with an address of 6929 E. Greenway Parkway, Suite 190, Scottsdale, Arizona 85254 (the "Lender").

### W I T N E S S E T H :

WHEREAS, the Lender has agreed, subject to the terms and conditions set forth in a certain Letter Agreement dated as of even date herewith (the "Loan Agreement"), by and between BBC Equities, Inc. (the "Borrower") and the Lender, to make a certain loan to the Borrower in the maximum principal amount of $87,209.30 (the "Loan"), such Loan to be evidenced by a $87,209.30 Term Promissory Note, dated of on or near even date herewith, issued or to be issued by the Borrower pursuant to the Loan Agreement, made by the Borrower, payable to the order of the Lender (the "Note") and the "Loan Documents" (as that term is defined in the Loan Agreement); and

WHEREAS, the obligation of the Lender to make the Loan to the Borrower is subject to the condition, among others, that the Guarantor shall execute and deliver this Guaranty Agreement;

NOW, THEREFORE, in order to induce the Lender to make the Loan to the Borrower, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Guarantor, the Guarantor hereby agrees as follows:

1. <u>Guaranteed Obligations</u>. The Guarantor does hereby irrevocably and unconditionally guarantee the due and punctual payment and performance of the following obligations to the Lender (individually, a "Guaranteed Obligation" and together the "Guaranteed Obligations"):

    (a)  Principal of and premium, if any, interest and late charges on the Note, when the same becomes due and payable, whether on demand or by acceleration or otherwise;

    (b)  Any and all other obligations of the Borrower to the Lender under the Loan Agreement, the Note, the Loan Documents or under any agreement or instrument relating thereto, including any amendment, modification, extension, renewal, replacement or restatement thereof;

(c) Any and all other indebtedness or obligations of the Borrower to the Lender, whether now existing or hereafter arising;

(d) Any and all expenses that may be incurred by the Lender in collecting all or any of the Guaranteed Obligations, including reasonable attorneys' fees.

For the purposes of paragraph (c) above, the Guaranteed Obligations shall include, without limitation, all borrowings, advances, notes, checks, drafts, instruments, letters of credit, agreements, reimbursement obligations and writings executed, issued, drawn or made by or for the account of the Borrower on the Lender or any of its agents.

2. <u>Demand by the Lender</u>. Upon any failure by the Borrower punctually to pay or perform any Guaranteed Obligation when due, the Lender may make demand upon the Guarantor for the payment or performance of such Guaranteed Obligation and the Guarantor binds and obliges itself to make such payment or performance forthwith upon such demand.

3. <u>Obligations of the Guarantor Unconditional</u>. This Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment and performance by the Borrower of the Guaranteed Obligations and not of their collectability only and is in no way conditioned upon any requirement that the Lender first attempt to collect any of the Guaranteed Obligations from the Borrower or resort to any collateral, security, guaranty or other means of obtaining payment of any of the Guaranteed Obligations which the Lender now has or may acquire after the date hereof, or upon any other contingency whatsoever.

The obligations of the Guarantor under this Agreement shall be unconditional, irrespective of the validity, regularity or enforceability of any Guaranteed Obligations, and shall not be affected by (a) any action taken under any Guaranteed Obligations in the exercise of any right or remedy therein conferred, (b) any failure or omission on the part of the Lender to enforce any right given thereunder or hereunder or any remedy conferred thereby or hereby, (c) any waiver of any term, covenant, agreement or condition of any Guaranteed Obligation or this Guaranty, (d) any release of any security or any other guaranty at any time existing for the benefit of any Guaranteed Obligation, (e) the merger or consolidation of the Borrower, (f) any sale, lease or transfer by the Borrower or any guarantor to any person of any or all of its or their properties, (g) any action of the Lender granting indulgence or extension to, or waiving or acquiescing in any default by the Borrower or any guarantor, or any successor to the Borrower or any guarantor or any person or party which shall have

assumed its obligations, (h) reason of any disability or other defense of the Borrower or any guarantor or any successor to the Borrower or any guarantor, or (i) any modification, alteration, or by any circumstance whatsoever (with or without notice to or knowledge of the Guarantor) which may or might in any manner or to any extent vary the risk of the Guarantor hereunder, it being the purpose and intent of the Guarantor that the obligations of the Guarantor hereunder shall be absolute and unconditional under any and all circumstances and shall not be discharged except by payment or performance as herein provided, and then only to the extent of such payment or performance. Payments by the Guarantor hereunder may be required by the Lender on any number of occasions.

4.   <u>Continuing Nature of Guaranty</u>.   The obligation of the Guarantor under this Guaranty shall continue in full force and effect, notwithstanding any intermediate or temporary payment or settlement of the whole or any part of the Guaranteed Obligations. This Guaranty shall not be discharged until such time as (i) all Guaranteed Obligations shall be finally paid in full, (ii) all covenants, terms, conditions and undertakings of the Guarantor shall be complied with and performed and (iii) the Lender shall deliver a final discharge in writing to the Guarantor.   In the event of any discontinuance or termination of this Guaranty in any manner, all indebtedness and obligations included within the term Guaranteed Obligations under Section 1 herein (including, without limitation, the Notes and the Loan Documents) executed, issued, drawn or made by, or for the account of, the Borrower on the Lender or any of its agents purporting to be dated on or before the date such discontinuance or termination becomes known to the Lender, and all advances and payments made pursuant thereto even though made after such date, shall form part of the Guaranteed Obligations for which the Guarantor shall be liable under the terms hereof.

5.   <u>Lender's Freedom to Deal with the Borrower and Other Parties</u>. The Lender shall be at liberty, without giving notice to or obtaining the assents of the Guarantor and without relieving the Guarantor of any liability hereunder, to deal with the Borrower and with each other party who now is or after the date hereof becomes liable in any manner for any of the Guaranteed Obligations, in such manner as the Lender in its sole discretion deems fit, and to this end the Guarantor gives to the Lender full authority in its sole discretion to do any or all of the following things:   (a) extend credit, make loans and afford other financial accommodations to the Borrower at such times, in such amounts and on such terms as the Lender may approve, (b) vary the terms and grant extensions or renewals of any present or future indebtedness or obligations to the Lender of the Borrower or of any such other party, (c) grant time, waivers and other indulgences in respect thereto, (d) vary, exchange, release or discharge, wholly or

partially, or delay in or abstain from perfecting any enforcing any collateral, security, guaranty or other means of obtaining payment of any of the Guaranteed Obligations which the Lender how has or acquires after the date hereof, (e) accept partial payments from the Borrower or any such other party, (f) release or discharge, wholly or partially, any endorser or guarantor, and (g) compromise or make any settlement or other arrangement with the Borrower or any such other party.

6.  <u>Subordination of Claims of the Guarantor; Security</u>.  Any claim against the Borrower to which the Guarantor may be or become entitled (including, without limitation, claims by subrogation or otherwise by reason of any payment or performance by the Guarantor in satisfaction and discharge, in whole or in part, of its obligations under this Guaranty) shall be and hereby is made subject and subordinate to the prior payment or performance in full of the Guaranteed Obligations.  The Guarantor will not, by payment any sum recoverable hereunder (whether or not demanded by the Lender) or by any means or on any other ground, claim any set-off or counterclaim against the Borrower in respect of any liability of the Guarantor to the Borrower or, in proceedings under the Bankruptcy Reform Act of 1978, as amended, or insolvency proceedings of any nature, prove in competition with the Lender in respect of any payment hereunder or be entitled to have the benefit of any counterclaim or proof of claim or dividend or payment by or on behalf of the Borrower or the benefit of any other security for any Guaranteed Obligation which, now or hereafter, the Lender may hold or in which it may have any share.

In addition to any other security given by the Guarantor to the Lender, the Guarantor hereby grants to the Lender a security interest in, and the Lender is hereby authorized and empowered, at its option, to set-off, appropriate and apply to the payment and extinguishment of the Guaranteed Obligations, at any time after such liability becomes payable, any and all moneys or other property of the Guarantor and any proceeds thereof (including proceeds of sales provided for below) now or hereafter in the possession of the Lender for any purpose, including safekeeping or pledge for this or any other liability of the Guarantor, and including any balance on deposit or otherwise for the account of, to the credit of, or belonging to the Guarantor.

The Lender is hereby authorized and empowered, at its option, at any time after the Guaranteed Obligations become payable, to sell, assign and deliver any securities or property at any time given unto or left in the possession or custody of the Lender for any purpose (including safekeeping or pledge for this or any other liability of the Guarantor) by or for the Guarantor, or in which the Guarantor may have an interest, at public or private sale, for cash or upon credit, or for future delivery, all at the option of the Lender, without demand, advertisement or notice, all of which

are hereby expressly waived.

7.  <u>Waiver of Demands, Notices, Diligence, etc</u>.  The Guarantor hereby assents to all the terms and conditions of the Guaranteed Obligations and waives (a) demand for the payment of the principal of any Guaranteed Obligation or of any claim for interest or any part of any thereof (other than the demand provided for in Section 2 hereof); (b) notice of the occurrence of a default or an event of default under any Guaranteed Obligation; (c) protest of the nonpayment of the principal of any Guaranteed Obligation or of any claim for interest or any part of any thereof; (d) notice of presentment, demand and protest; (e) notice of acceptance of any guaranty herein provided for or of the terms and provisions thereof or hereof by the Lender; (f) notice of any indulgences or extensions granted to the Borrower or any corporate successor to the Borrower, or any guarantor or any person or party which shall have assumed the obligations of the Borrower or any guarantor; (g) any requirement of diligence or promptness on the part of the Lender in the enforcement of any of its rights under the provisions of any Guaranteed Obligations or this Guaranty; (h) any enforcement of any Guaranteed Obligation; (i) any right which the Guarantor might have to require the Lender to proceed against the Borrower or any other guarantor of the Guaranteed Obligations or to realize on any collateral security for the Guaranteed Obligations; (j) any and all notices of every kind and description which may be required to be given by any statute or rule of law in any jurisdiction; and any defense based upon a claim of impairment of any other collateral securing the Note.  The waivers set forth in this Section 7 shall be effective notwithstanding the fact that the Borrower cease to exist by reason of its liquidation, merger, consolidation or otherwise.

8.  <u>Notices, etc</u>.  All notices, demands and other communications hereunder shall be deemed to have been sufficiently given or made if in writing and mailed by first class mail, postage prepaid, to the parties at the addresses set forth herein or at such other address as the party to whom such notice or demand is directed may have designated in writing to the other parties hereto.

9.  <u>Survival of Guaranty, etc</u>.  This Guaranty shall inure to the benefit of and be binding upon the Guarantor and the Lender and their respective successors and assigns, including any subsequent holder or holders of any Guaranteed Obligations, and the term "Lender" shall include any such holder or holders whenever the context permits.  This Guaranty Agreement is intended to take effect as a sealed instrument.

10.  <u>Counterparts</u>.  This Guaranty Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of the counterparts shall

together constitute one and the same instrument.

11.  <u>Governing Law; Jurisdiction</u>.  This Guaranty Agreement shall be construed in accordance with and governed by the laws of the State of New Hampshire.  The Guarantor, to the extent that it may lawfully do so, hereby consents to the jurisdiction of the courts of the State of New Hampshire and the United States District Court for the State of New Hampshire, as well as to the jurisdiction of all courts from which an appeal may be taken from such courts, for the purpose of any suit, action or other proceeding arising out of any of its obligations hereunder or with respect to the transactions contemplated hereby, and expressly waives any and all objections it may have as to venue in any such courts.

12.  <u>Joint and Several Liability</u>.  It is agreed that the Guarantor's liability hereunder is joint and several with and independent of any other guaranties at any time in effect with respect to all or any part of the Guaranteed Obligations to the Lender and that the Guarantor's liability hereunder may be enforced regardless of the existence of such other guaranties.

13.  <u>Gender, etc</u>.  The provisions hereof shall apply to the parties according to the context thereof and without regard to the number or gender of words or expressions used.

    IN WITNESS WHEREOF, the Guarantor has executed this Guaranty Agreement as a sealed instrument as of the date first above written.

                              (the "Guarantor")

_____       _____
Witness                       Douglas K. Rau, Individually


COMMONWEALTH OF MASSACHUSETTS
COUNTY OF WORCESTER

    The foregoing Guaranty Agreement was acknowledged before me this 5th day of April, 2002, by Douglas K. Rau, individually, as his free act and deed.

                              _____
                              Notary Public/Justice of the Peace
                              (Notarial Seal)
                              My Commission expires: 1-9-09

                              David A. Pappalardo

# EXHIBIT C

COPY

**PROMISSORY NOTE**

$1,744,186.05
Eighteen Months

February 25, 2003
Manchester, New Hampshire

FOR VALUE RECEIVED, BBC Equities, Inc., a Massachusetts corporation with an address of 14 Main Street, Gardner, Massachusetts 01440 (hereinafter referred to as the "Undersigned"), promises to pay to the order of WESTMOUNT FINANCIAL LIMITED PARTNERSHIP, a Nevada limited partnership with an address of 14648 n. Scottsdale Road, Suite 325, Scottsdale, AZ 85254-2739 (the "Lender"), its endorsees, successors and assigns, at such address or at such other address as may be designated hereafter by any Holder hereof, the principal sum of ONE MILLION SEVEN HUNDRED FORTY FOUR THOUSAND ONE HUNDRED EIGHTY SIX AND 05/100 DOLLARS ($1,744,186.05), together with interest as provided for below, in lawful money of the United States of America.

Principal and interest shall be payable as follows:

(1)   On April 1, 2003, and on the corresponding day of the next succeeding sixteen (16) months during the term hereof, the Undersigned shall make a payment of accrued interest only calculated in accordance with the terms of this Note on the outstanding principal balance; and

(2)   Notwithstanding anything herein to the contrary, on August 25, 2004 ("Maturity Date"), the Undersigned shall make a final payment to the Holder of the entire then outstanding principal balance hereof, together with all accrued and unpaid interest and any costs and fees payable hereunder.

The Holder shall <u>not</u> render to the Undersigned a statement of account with respect thereto on a monthly basis. Interest shall be calculated and charged daily on the basis of a 360 day banking year on the unpaid principal balance outstanding from time to time. **Prior to maturity, unless upon demand, acceleration or other default, the interest rate applicable to this Note shall be equal to eighteen percent (18.0%) per annum (the "Interest Rate").** The Undersigned has elected to roll the Lender's origination fee of $244,186.05 into the principal balance of the Loan and such fee is considered earned at the time of the execution of the Note. Payments of interest only shall be due monthly computed at

12% per annum on the outstanding balance of the Loan (computed from the date of each advance) with an additional 6% per annum on the outstanding balance accruing, compounding monthly and such accruals due and payable at maturity or acceleration. **Borrower agrees to pay an accrual fee of $15,000.00, payable at acceleration and/or maturity, in cosideration of Lender's deferral of a portion of the monthly interest payments.** In the event no construction funds (not including closing costs and points) are drawn prior to September 30, 2003, **TIME BEING OF THE ESSENCE**, the Undersigned agrees that the Lender's origination fee of $244,186.05 shall be due and payable on October 30, 2003 along with any other applicable charges and Lender will have no further obligation to fund the Loan.

**Provided the Undersigned is not in default hereunder, the Undersigned shall have the right, once and only once, to extend the term of this Note for an additional period of six (6) months upon payment to the Holder of an extension fee in the sum of TWO HUNDRED EIGHTY THREE THOUSAND NINE HUNDRED THIRTY SEVEN 26/100 DOLLARS ($283,937.26) ("Extension Fee") on or before the maturity date stated above, time being of the essence which amount shall not be applied to outstanding interest or principal. In the event Borrower fails to notify the Lender that he does not wish to extend and the Note is not paid in full at maturity, the extension feel will be added to the principal balance. In the event of any such extension, the Undersigned shall make monthly payments of accrued interest only at the Interest Rate on the outstanding principal balance hereunder, with a final payment of the entire then outstanding principal balance hereof, together with all accrued and unpaid interest and any costs and fees payable hereunder on or before the extended maturity date.**

The Undersigned may prepay this Note in full or in part at any time, without the payment of any penalty, premium or charge of any nature. In the event that any such prepayment shall be made by the Undersigned, the amount thereof shall be applied first to any accrued interest, costs and fees, and thereafter to outstanding principal. In the event of any prepayment of the Note prior to maturity at the original or any extended maturity date, no refund of the Extension Fee or any other sum collected hereunder prior to such repayment shall be refundable.

The payment and performance of the obligations contained



herein are secured by a certain Mortgage and the other documents from the Undersigned to the Holder dated as of even date herewith securing property known as 14-34 Main Street, Gardner, Massachusetts (such documents are hereinafter collectively referred to together with this Note as the "Loan Documents"), and the additonal collateral granted to the Holder hereby (the "Collateral").

Upon the occurrence of any of the following events of default, this Note shall, at the option of the Holder, become immediately due and payable in full, without further demand or notice:

A.  Default by the Undersigned in payment on its due date of any principal or interest called for under the Loan Documents. **TIME IS OF THE ESSENCE AS TO EACH PAYMENT.**

B.  Default by the Undersigned in the performance or observance of any of the provisions, terms, conditions, warranties or covenants of the Loan Documents not cured within any applicable grace or remedy period.

C.  Default by the Undersigned, not cured within any applicable grace or remedy period, in the payment or performance of any other obligations due the Holder or under any other contract for borrowed money with any other lender, private or institutional, whether created prior to, concurrent with, or subsequent to obligations arising out of the Loan Documents.

D.  If any statement, representation or warranty made by the Undersigned in the Loan Documents or in connection therewith or any financial statement, report, schedule, or certificate furnished by the Undersigned or any of its agents or accountants to the Holder during the term of this Note shall prove to have been false or misleading when made, or subsequently becomes false or misleading, in any material respect.

E.  The Undersigned or any Guarantor shall (i) apply for or consent to the appointment of a receiver, trustee or liquidator of it or any of its property,



(ii) admit in writing its inability to pay debts as they mature, (iii) make a general assignment for the benefit of creditors, (iv) be adjudicated as bankrupt or insolvent, (v) die, or (vi) file a voluntary petition in bankruptcy, or a petition or an answer seeking reorganization to take advantage of any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law or statute, or an answer admitting any material allegations of a petition filed against it in any proceeding under any such law.

F.  Proceedings shall be commenced or an order, judgment or decree shall be entered, without the application, approval or consent of the Undersigned, in or by any court of competent jurisdiction, relating to the bankruptcy, dissolution, liquidation, reorganization or the appointment of a receiver, trustee or liquidator of the Undersigned, or of all or a substantial part of its assets, and such proceedings, order, judgment or decree shall continue undischarged or unstayed for a period of sixty (60) days.

G.  Non-payment when due of any municipal assessment outstanding with respect to any real property which serves as collateral for repayment of the Note.

H.  Transfer, whether involuntary or voluntary, by the Undersigned of any portion or all of the property that constitutes and serves as Collateral for the obligations herein without the express written consent of the Lender prior to any such transfer.

I.  The death of Douglas K. Rau.

The Holder may impose upon the Undersigned a delinquency charge of One Thousand Dollars ($1,000.00) per month for any payment amount that is not paid on or before day such payment is due and remains unpaid from month to month. The entire principal balance hereof, together with accrued interest, shall, after maturity or default, whether upon demand, acceleration or otherwise, bear interest at the rate of thirty six percent (36.0%) per annum ("Default Rate"). In addition to constituting an event of default, Lender may assess a penalty of $1,000.00 per month for each month in



which municipal assessments, water, sewer and or taxes, are due and unpaid.

In the event that the principal is not timely paid when due, whether at the Maturity Date or any extended maturity date as provided for herein, then a late payment charge equal to fourteen percent (14%) of the outstanding balance due to the Lender shall be due and payable either: (i) upon full payment by the Borrower; or (ii) in the event any collection action must be commenced (whether or not completed) by Lender to enforce repayment of the principal owed hereunder.

No provision of this Note or any other aspect of the transaction of which this Note is a part is intended to or shall require or permit the holder, directly or indirectly, to take, receive, contract for, or reserve, in money, goods, or things in action, or in any other way, any interest (including amounts deemed by law to be interest, such amounts to then be deemed to be an addition to the rate of interest agreed upon) in excess of the maximum rate of interest permitted by applicable law in the State of New Hampshire and/or the Commonwealth of Massachusetts as of the date hereof. If any such excess shall nevertheless be provided for, or be adjudicated by a court of competent jurisdiction to be provided for, the undersigned shall not be obligated to pay such excess but, if paid, then such excess shall be applied against the unpaid principal balance of this Note or, to the extent that the principal balance of this Note has been paid in full by reason of such application or otherwise, such excess shall be remitted to the undersigned.

The Undersigned agrees to pay on demand all out-of-pocket costs of collection and enforcement hereof, including attorney's fees, whether or not any foreclosure or other action is instituted by the Holder in its discretion. The term "enforcement" as used in this Note shall include, but not be limited to, the negotiation, documentation or other consummation of any modification, extension, renewal or other such transaction, whether or not the Undersigned is then in default under this Note or the other Loan Documents, and shall also include any and all attempts by the Holder to recover payment of amounts due under this Note or to require compliance with any term, covenant or condition of the Loan Documents with or without prior notice to the Borrower.

No delay or omission on the part of the Holder in exercising any right, privilege or remedy shall impair such

right, privilege or remedy or be construed as a waiver thereof or of any other right, privilege or remedy. No waiver of any right, privilege or remedy or any amendment to this Note shall be effective unless made in writing and signed by the Holder. Under no circumstances shall an effective waiver of any right, privilege or remedy on any one occasion constitute or be construed as a bar to the exercise of or a waiver of such right, privilege or remedy on any future occasion. The acceptance by the Holder of any payment after any default hereunder shall not operate to extend the time of payment of any amount then remaining unpaid hereunder or constitute a waiver of any rights of the Holder under this Note.

All rights and remedies of the Holder, whether granted herein or otherwise, shall be cumulative and may be exercised singularly or concurrently, and the Holder shall have, in addition to all other rights and remedies, the rights and remedies of a secured party under the Uniform Commercial Code of New Hampshire. The Holder shall have no duty as to the collection or protection of the Collateral or of any income thereon, or as to the preservation of any rights pertaining thereto beyond the safe custody thereof.

As additional Collateral, the Undersigned (i) grants to the Holder a security interest in, or pledges, assigns and delivers to the Holder, as appropriate, all deposits, credits and other property (real or personal) now or hereafter due from the Holder to the Undersigned, and (ii) grants to the Holder the right to set-off or foreclosure and apply (and a security interest in said right), from time to time hereafter and without demand or notice of any nature, all, or any portion, of such deposits, credits and other property (real or personal), against the indebtedness evidenced by this Note, whether or not the other Collateral, if any, is deemed adequate.

The Undersigned waives, to the fullest extent permitted by law, presentment, notice, protest and all other demands and notices and assents (1) to any extension of the time of payment or any other indulgence, (2) to any substitution, exchange or release of collateral, and (3) to the release of any other person primarily or secondarily liable for the obligations evidenced hereby. The Undersigned expressly waives any defense or claim based in whole or in part upon any actual or alleged impairment of the Collateral. The Undersigned hereby consents and agrees that the Holder may as



long as the Note remains unpaid, periodically, and without notice to Borrower obtain credit reports, verify income and make inquiry of other creditors and credit reporting agencies with respect to the Borrower's financial condition.

**THE PARTIES AGREE THAT ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO ANY OF THE LOAN DOCUMENTS OR THE ACTIONS OF THE LENDER IN THE ENFORCEMENT THEREOF SHALL BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.**

This Note and the provisions hereof shall be binding upon the Undersigned and the Undersigned's heirs, administrators, executors, successors, legal representatives and assigns and shall inure to the benefit of the Holder and the Holder's heirs, administrators, executors, successors, legal representatives and assigns.

This Note may not be amended, changed or modified in any respect except by a written document which has been executed by each party. This Note is to be construed according to and governed by the laws of the State of New Hampshire. In the event of any dispute hereunder, the Undersigned agrees and irrevocably consents to the jurisdiction and venue of the federal or state courts sitting within the State of New Hampshire.

The term "Holder" as used herein shall mean the Lender, any assignee, endorsee, successor or other transferee of the Lender or any subsequent endorsee, successor or other transferee of this Note.

IN WITNESS WHEREOF, the Undersigned have executed this Term Promissory Note on this 25th day of February, 2003.

Witness

(the "Borrower")
BBC EQUITIES, INC.

By:
Name: Douglas Rau
Title: President
Duly Authorized

STATE OF NEW HAMPSHIRE
COUNTY OF HILLSBOROUGH

The foregoing instrument was acknowledged before me this 25th day of February, 2003 by Douglas K. Rau, duly authorized President and Treasurer of BBC Equities, Inc., a Massachusetts corporation as his free act and deed on behalf of the corporation.

John L. Allen

_____
Notary Public
My Commission Expires: 6/24/2008
Notary Seal:

# EXHIBIT D

COPY

## PROMISSORY NOTE

$232,558.14
Twelve Months

June 30, 2003
Manchester, New Hampshire

FOR VALUE RECEIVED, **BBC EQUITIES, INC.**, a Massachusetts corporation with an address of 14 Main Street, Gardner, Massachusetts 01440 (hereinafter referred to as the "Undersigned"), promises to pay to the order of **WESTMOUNT FINANCIAL LIMITED PARTNERSHIP**, a Nevada limited partnership with an address of 14648 n. Scottsdale Road, Suite 325, Scottsdale, AZ 85254-2739 (the "Lender"), its endorsees, successors and assigns, at such address or at such other address as may be designated hereafter by any Holder hereof, the principal sum of TWO HUNDRED THIRTY TWO THOUSAND FIVE HUNDRED FIFTY EIGHT AND 14/100 DOLLARS ($232,558.14), together with interest as provided for below, in lawful money of the United States of America.

Principal and interest shall be payable as follows:

(1)  On August 1, 2003, and on the corresponding day of the next succeeding ten (10) months during the term hereof, the Undersigned shall make a payment of accrued interest only calculated in accordance with the terms of this Note on the outstanding principal balance; and

(2)  Notwithstanding anything herein to the contrary, on June 30, 2004 ("Maturity Date"), the Undersigned shall make a final payment to the Holder of the entire then outstanding principal balance hereof, together with all accrued and unpaid interest and any costs and fees payable hereunder.

The Holder shall <u>not</u> render to the Undersigned a statement of account with respect thereto on a monthly basis. Interest shall be calculated and charged daily on the basis of a 360 day banking year on the unpaid principal balance outstanding from time to time. **Prior to maturity, unless upon demand, acceleration or other default, the interest rate applicable to this Note shall be equal to eighteen percent (18.0%) per annum (the "Interest Rate").** The Undersigned has elected to roll the Lender's origination fee of $32,558.14 into the principal balance of the Loan and such fee is considered earned at the time of the execution of the Note.

Provided the Undersigned is not in default hereunder, the Undersigned shall have the right, once and only once, to extend the term of this Note for an additional period of six (6) months upon payment to the Holder of an extension fee in the sum of THIRTY SEVEN THOUSAND EIGHT HUNDRED FIFTY EIGHT AND 30/100 DOLLARS ($37,858.30) ("Extension Fee") on or before the maturity date stated above, time being of the essence which amount shall not be applied to outstanding interest or principal. In the event Borrower fails to notify the Lender that he does not wish to extend and the Note is not paid in full at maturity, the extension feel will be added to the principal balance.    In the event of any such extension, the Undersigned shall make monthly payments of accrued interest only at the Interest Rate on the outstanding principal balance hereunder, with a final payment of the entire then outstanding principal balance hereof, together with all accrued and unpaid interest and any costs and fees payable hereunder on or before the extended maturity date.

The Undersigned may prepay this Note in full or in part at any time, without the payment of any penalty, premium or charge of any nature.    In the event that any such prepayment shall be made by the Undersigned, the amount thereof shall be applied first to any accrued interest, costs and fees, and thereafter tb outstanding principal.    In the event of any prepayment of the Note prior to maturity at the original or any extended maturity date, no refund of the Extension Fee or any other sum collected hereunder prior to such repayment shall be refundable.

The payment and performance of the obligations contained herein are secured by a certain Mortgage and the other documents from the Undersigned to the Holder dated as of even date herewith securing property known as 325-327 Main Street, Fitchburg, Massachusetts (such documents are hereinafter collectively referred to together with this Note as the "Loan Documents"), and the additional collateral granted to the Holder hereby (the "Collateral").

Upon the occurrence of any of the following events of default, this Note shall, at the option of the Holder, become immediately due and payable in full, without further demand or notice:

A.    Default by the Undersigned in payment on its due date of any principal or interest called for under

the Loan Documents. **TIME IS OF THE ESSENCE AS TO EACH PAYMENT.**

B.    Default by the Undersigned in the performance or observance of any of the provisions, terms, conditions, warranties or covenants of the Loan Documents not cured within any applicable grace or remedy period.

C.    Default by the Undersigned, not cured within any applicable grace or remedy period, in the payment or performance of any other obligations due the Holder or under any other contract for borrowed money with any other lender, private or institutional, whether created prior to, concurrent with, or subsequent to obligations arising out of the Loan Documents.

D.    If any statement, representation or warranty made by the Undersigned in the Loan Documents or in connection therewith or any financial statement, report, schedule, or certificate furnished by the Undersigned or any of its agents or accountants to the Holder during the term of this Note shall prove to have been false or misleading when made, or subsequently becomes false or misleading, in any material respect.

E.    The Undersigned or any Guarantor shall (i) apply for or consent to the appointment of a receiver, trustee or liquidator of it or any of its property, (ii) admit in writing its inability to pay debts as they mature, (iii) make a general assignment for the benefit of creditors, (iv) be adjudicated as bankrupt or insolvent, (v) die, or (vi) file a voluntary petition in bankruptcy, or a petition or an answer seeking reorganization to take advantage of any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law or statute, or an answer admitting any material allegations of a petition filed against it in any proceeding under any such law.

F.    Proceedings shall be commenced or an order, judgment or decree shall be entered, without the application, approval or consent of the

Undersigned, in or by any court of competent jurisdiction, relating to the bankruptcy, dissolution, liquidation, reorganization or the appointment of a receiver, trustee or liquidator of the Undersigned, or of all or a substantial part of its assets, and such proceedings, order, judgment or decree shall continue undischarged or unstayed for a period of sixty (60) days.

G.   Non-payment when due of any municipal assessment outstanding with respect to any real property which serves as collateral for repayment of the Note.

H.   Transfer, whether involuntary or voluntary, by the Undersigned of any portion or all of the property that constitutes and serves as Collateral for the obligations herein without the express written consent of the Lender prior to any such transfer.

I.   The death of Douglas K. Rau.

The Holder may impose upon the Undersigned a delinquency charge of One Thousand Dollars ($1,000.00) __per month__ for any payment amount that is not paid on or before day such payment is due and remains unpaid from month to month. **The entire principal balance hereof, together with accrued interest, shall, after maturity or default, whether upon demand, acceleration or otherwise, bear interest at the rate of thirty six percent (36.0%) per annum ("Default Rate").** In addition to constituting an event of default, Lender may assess a penalty of $1,000.00 per month for each month in which municipal assessments, water, sewer and or taxes, are due and unpaid.

In the event that the principal is not timely paid when due, whether at the Maturity Date or any extended maturity date as provided for herein, then a late payment charge equal to fourteen percent (14%) of the outstanding balance due to the Lender shall be due and payable either: (i) upon full payment by the Borrower; or (ii) in the event any collection action must be commenced (whether or not completed) by Lender to enforce repayment of the principal owed hereunder.

No provision of this Note or any other aspect of the transaction of which this Note is a part is intended to or shall require or permit the holder, directly or indirectly, to take, receive, contract for, or reserve, in money, goods,

or things in action, or in any other way, any interest (including amounts deemed by law to be interest, such amounts to then be deemed to be an addition to the rate of interest agreed upon) in excess of the maximum rate of interest permitted by applicable law in the State of New Hampshire and/or the Commonwealth of Massachusetts as of the date hereof. If any such excess shall nevertheless be provided for, or be adjudicated by a court of competent jurisdiction to be provided for, the undersigned shall not be obligated to pay such excess but, if paid, then such excess shall be applied against the unpaid principal balance of this Note or, to the extent that the principal balance has been paid in full by reason of such application or otherwise, such excess shall be remitted to the undersigned.

The Undersigned agrees to pay on demand all out-of-pocket costs of collection and enforcement hereof, including attorney's fees, whether or not any foreclosure or other action is instituted by the Holder in its discretion. The term "enforcement" as used in this Note shall include, but not be limited to, the negotiation, documentation or other consummation of any modification, extension, renewal or other such transaction, whether or not the Undersigned is then in default under this Note or the other Loan Documents, and shall also include any and all attempts by the Holder to recover payment of amounts due under this Note or to require compliance with any term, covenant or condition of the Loan Documents with or without prior notice to the Borrower.

No delay or omission on the part of the Holder in exercising any right, privilege or remedy shall impair such right, privilege or remedy or be construed as a waiver thereof or of any other right, privilege or remedy. No waiver of any right, privilege or remedy or any amendment to this Note shall be effective unless made in writing and signed by the Holder. Under no circumstances shall an effective waiver of any right, privilege or remedy on any one occasion constitute or be construed as a bar to the exercise of or a waiver of such right, privilege or remedy on any future occasion. The acceptance by the Holder of any payment after any default hereunder shall not operate to extend the time of payment of any amount then remaining unpaid hereunder or constitute a waiver of any rights of the Holder under this Note.

All rights and remedies of the Holder, whether granted herein or otherwise, shall be cumulative and may be exercised

singularly or concurrently, and the Holder shall have, in addition to all other rights and remedies, the rights and remedies of a secured party under the Uniform Commercial Code of New Hampshire. The Holder shall have no duty as to the collection or protection of the Collateral or of any income thereon, or as to the preservation of any rights pertaining thereto beyond the safe custody thereof.

As additional Collateral, the Undersigned (i) grants to the Holder a security interest in, or pledges, assigns and delivers to the Holder, as appropriate, all deposits, credits and other property (real or personal) now or hereafter due from the Holder to the Undersigned, and (ii) grants to the Holder the right to set-off or foreclosure and apply (and a security interest in said right), from time to time hereafter and without demand or notice of any nature, all, or any portion, of such deposits, credits and other property (real or personal), against the indebtedness evidenced by this Note, whether or not the other Collateral, if any, is deemed adequate.

The Undersigned waives, to the fullest extent permitted by law, presentment, notice, protest and all other demands and notices and assents (1) to any extension of the time of payment or any other indulgence, (2) to any substitution, exchange or release of collateral, and (3) to the release of any other person primarily or secondarily liable for the obligations evidenced hereby. The Undersigned expressly waives any defense or claim based in whole or in part upon any actual or alleged impairment of the Collateral. The Undersigned hereby consents and agrees that the Holder may as long as the Note remains unpaid, periodically, and without notice to Borrower obtain credit reports, verify income and make inquiry of other creditors and credit reporting agencies with respect to the Borrower's financial condition.

THE PARTIES AGREE THAT ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO ANY OF THE LOAN DOCUMENTS OR THE ACTIONS OF THE LENDER IN THE ENFORCEMENT THEREOF SHALL BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

This Note and the provisions hereof shall be binding upon the Undersigned and the Undersigned's heirs, administrators, executors, successors, legal representatives and assigns and shall inure to the benefit of the Holder and the Holder's heirs, administrators, executors, successors, legal representatives and assigns.

This Note may not be amended, changed or modified in any respect except by a written document which has been executed by each party. This Note is to be construed according to and governed by the laws of the State of New Hampshire. In the event of any dispute hereunder, the Undersigned agrees and irrevocably consents to the jurisdiction and venue of the federal or state courts sitting within the State of New Hampshire.

The term "Holder" as used herein shall mean the Lender, any assignee, endorsee, successor or other transferee of the Lender or any subsequent endorsee, successor or other transferee of this Note.

IN WITNESS WHEREOF, the Undersigned have executed this Term Promissory Note on this 10th day of June, 2003.

Witness

(the "Borrower")
BBC EQUITIES, INC.

By: _____
Name: Douglas Rau
Title: President
Duly Authorized

STATE OF NEW HAMPSHIRE
COUNTY OF HILLSBOROUGH

   The foregoing instrument was acknowledged before me
this 30TH day of June_____, 2003 by Douglas  K. Rau,
duly authorized President and Treasurer of BBC Equities,
Inc., a Massachusetts corporation as his free act and deed
on behalf of the corporation.


_____          _____
                               Notary Public
                               My Commission Expires: 5/24/2008
                               Notary Seal:

# <u>EXHIBIT E</u>

# BBC
# Equities, Inc.

*Strategic Real Estate Investment & Management*

October 27, 2004

Mr. Dick Cabral
CIF, Inc.
One Harbour Place Suite 465
Portsmouth NH 03801

Dear Dick,

I am writing you this letter to express my thoughts to you regarding our financial problems. I use the word "our" because I am very aware that what is hurting me right now will also cause a loss to you. I am writing to you also because when we have conversations you do most of the talking. This is not meant to sound derogatory, but I can't talk over you and expect you to hear me.

First, I would like to talk about the balance that is owed on 14-34 Main Street. The figure of $1,800,000.00 has been used in our conversations over the past few weeks. If we can agree that this is the balance this would be a great starting point and would give me a reference point to work towards. It would also give me incentive to try to pay this debt off in full. When the number is referred to as somewhere between $1,800,000.00 and $2,100,000.00 I can't have any definiteness of purpose. This is the first point I want to make.

The second point is your idea of selling 14-34 Main Street, Gardner as the only solution. While it may be part of the solution it is not something that can occur in the next month or perhaps longer. In the meanwhile, during the month of October, I am completing three closings with the net proceeds at around $290,000.00. In order for me to continue to sell off properties at top dollar and generate income two things must happen. Some of the money must be applied to debt service and some money must be released back to me or my company, BBC Equities Inc. so that I can continue to pay my bills. If you can't see the logistics behind this request let me take a minute to paint a scenario for you.

I have no money to stay afloat and then the utility bills and mortgage payments, etc. don't get made, tenants leave, pipes freeze, properties are destroyed and first mortgage holders are going to be lucky to get paid. I go bankrupt and we all lose.

*The Goodnow   14 Main Street   P.O. Box 1014   Gardner, MA  01440*
Ph: 978 632 0226    Fx: 978 630 5131    E m: info@BBC...

While this may be a grim scenario, it could very well happen with utilities costing what they are costing right now.

Even if you just foreclose you are probably not going to be made whole because the added costs and short sale prices would take away from the bottom line.

Back in the here and now, keeping me in business to pay you back even though the time frame may be a little lengthy will at least get it paid and will allow you to earn additional interest until it is.

It will also allow you to make a percentage on many small deals which have to occur in order to pay down this principal balance of $1,800,000.00.

I know that you have made mention numerous times of the fact that no bank would let me do this so why should you. My answer is only this, no ordinary bank charges what you charge so I feel our relationship is more of a joint venture with your profits realized up front and mine are more long term. In any event you make money when I can make money and when I stumble I would expect a hand up and not to be thrown under the bus.

Lastly, the one true asset that I possess is my willingness (stubbornness) to finish what I set out to do; I will pay you the money I owe you if we can come to terms on this plan.

I have always tried to maintain our relationship and I think that it has been and still can be a profitable one for both.

Please take some time to consider this as a viable plan and give me the incentive to continue working 15-18 hour days seven days a week.

I hope you can see my good faith and don't think that I am not trying to find a buyer for 14-34 Main Street but I can't send panic messages because the only offers I will receive are going to be ridiculous ones.

Please contact me regarding this workout at your earliest convenience.

Sincerely,

Douglas K. Rau

DKR/dk