UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

BBC EQUITIES, INC., and DOUGLAS K.
RAU,
       Plaintiffs

V.

WESTMOUNT FINANCIAL LIMITED
PARTNERSHIP,
       Defendant

CIVIL ACTION NO. 05CV-40156-FDS

## DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS

Pursuant to Fed. R. Civ. P. 15(a), Westmount Financial Limited Partnership

("Westmount") makes the following amended answer to the complaint filed by BBC Equities,

Inc. ("BBC") and Douglas K. Rau ("Rau"):

1.   Westmount is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 1.

2.   Westmount is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 2.

3.   Westmount admits the allegations in paragraph 3.

4.   Westmount admits the allegations in paragraph 4, and states that it also has usual

places of business at 4500 P.G.A. Boulevard, Suite 303B, Palm Beach Gardens, Florida, and One

Harbour Place, Suite 465, Portsmouth, New Hampshire.

5.   Westmount admits that BBC has purchased and resold properties in Worcester and Franklin Counties, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 5.

6.   Westmount is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6.

7.   Westmount admits that BBC obtained mortgage loans from Westmount relating to the properties listed in paragraph 7, but denies the remaining allegations in that paragraph.

8.   Westmount is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8.

9.   Westmount denies the allegations in paragraph 9.

10. Westmount admits that it made certain loans to BBC, the terms of which are contained in various writings memorializing the "Loan Agreements."  The terms of the Loan Agreements speak for themselves.  Westmount denies the remaining allegations in paragraph 10 to the extent they are inconsistent with the Loan Agreements.

11. Westmount denies the allegations in paragraph 11 to the extent they are inconsistent with the Loan Agreements.

12. Westmount admits that neither of the loans referenced in paragraph 12 was paid within the initial term specified in its Loan Agreement, but denies the remaining allegations in paragraph 12.

13. Westmount denies that all of the loans referenced in paragraph 13 were paid within the initial terms specified in their Loan Agreements.

14. Westmount admits that BBC purchased property at 14-34 Main Street, Gardner, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 14.

15. Westmount is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15.

16. Westmount admits the allegations in paragraph 16.

17. Westmount is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17.

18. Westmount is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18.  To the extent the allegations characterize municipal code provisions, no response is required.

19. Westmount denies the allegations in paragraph 19.

20. Westmount admits the authenticity of the letter attached to the Complaint as Exhibit C and that it offered BBC a loan consistent with the terms expressed therein, but denies the remaining allegations in paragraph 20.

21. Westmount states that the Construction Loan for 14-34 Main Street, Gardner, is the largest construction rehabilitation loan Westmount has undertaken and therefore denies that BBC knew otherwise.

22. Westmount admits that it or its subsidiaries or affiliates has participated in joint ventures to develop large commercial real estate projects, but denies that it owns or develops rehabilitation projects of the scale of 14-34 Main Street, Gardner.

23. Westmount denies that it has owned rehabilitation projects of the scale of 14-34 Main Street, Gardner and therefore denies that BBC knew otherwise.

24. Westmount denies the allegations in paragraph 24.

25. Westmount admits the authenticity of the letter attached to the Complaint as Exhibit D, but denies the remaining allegations in paragraph 25.  Westmount specifically denies that it made any representations to BBC, that BBC relied on same, and that any such reliance would have been reasonable.

26. Westmount is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26.

27. Westmount denies the allegations in paragraph 27.

28. Westmount admits the allegations in paragraph 28.

29. Westmount admits that BBC sold certain of its properties, but denies the remaining allegations in paragraph 29.

30. Westmount admits that the Construction Loan for 14-34 Main St., Gardner, was secured by several properties, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 30.

31. Westmount is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31.

32. Westmount admits the authenticity of the memorandum attached to the Complaint as Exhibit E, but denies the remaining allegations in paragraph 32.

33. Westmount admits that BBC granted Westmount a security interest in certain of its properties listed in Exhibit E to the Complaint, but denies the remaining allegations in paragraph 33.

34. Westmount denies the allegations in paragraph 34.

35. Westmount admits that it had a security interest in the property at 15 Nashua St., Fitchburg, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 35.

36. Westmount admits that it administered its loans to BBC in accordance with the rights granted it under the Loan Agreements, and denies any suggestion to the contrary in paragraph 36.

37. Westmount admits that, in October 2004, when BBC was in default of its obligations under the Loan Agreements, BBC requested modification of prior agreements without consideration and Westmount declined such proposal. Westmount denies the remainder of the allegations in paragraph 37.

38. Westmount admits that it administered its loans to BBC in accordance with the rights granted it under the Loan Agreements, and denies any suggestion to the contrary in paragraph 38.

39. Westmount is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39.

40. Westmount admits that BBC asked for a payoff figure and the timeframe within which it had to be paid, but denies the remaining allegations in paragraph 40.

41. Westmount denies the allegations in paragraph 41.

42. Westmount is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42.

43. Westmount denies the allegations in paragraph 43.

44. Westmount denies the allegations in paragraph 44 and specifically denies any change in Westmount's payoff.

45. Westmount is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45.

46. Westmount is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46.

47. Westmount admits that it administered its loans to BBC in accordance with the rights granted it under the Loan Agreements, subject to the Stipulation In Lieu of Preliminary Injunction, approved in the Superior Court Action on August 17, 2005, but denies the remaining allegations in paragraph 47.

48. Westmount admits that 31 Grant Street, Gardner, was substantially damaged by fire, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 48.

49. Westmount admits that it administered its loans to BBC in accordance with the rights granted it under the Loan Agreements, but denies the remaining allegations in paragraph 49.

50. Westmount is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50.

51. Westmount denies the allegations in paragraph 51.

52. Westmount is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52.

53. Westmount denies the allegations in paragraph 53.

54. Westmount admits that Rau personally guaranteed certain of BBC's obligations to Westmount, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 54.

55. Westmount denies that it seized proceeds from BBC's sales of assets, admits that it received promised payments upon liquidation of its collateral consistent with the terms of the Loan Agreements and denies the remaining allegations in paragraph 55.

56. Westmount admits that BBC has submitted various proposals to modify the terms of the Loan Agreements, the terms of which speak for themselves.

57. Westmount denies the allegations in paragraph 57.

58. Westmount denies that it usurped sales proceeds, admits that it administered its loans to BBC in accordance with the rights granted it under the Loan Agreements and denies the remaining allegations in paragraph 58.

59. Westmount denies the allegations in paragraph 59.

60. Westmount admits the authenticity of the letter attached to the complaint as Exhibit G, but denies the remaining allegations in paragraph 60.

61. Westmount denies the allegations in paragraph 61.

62. Westmount denies the allegations in paragraph 62.

63. Westmount denies the allegations in paragraph 63. True and accurate copies of letters, as filed with the Massachusetts Attorney General's office, evidencing compliance with the terms of M.G.L. 271, § 49 are attached hereto as **Exhibit A**.

## COUNT I
## Usury

64. Westmount repeats its responses to paragraphs 1 through 63 and incorporates them as though they were fully set forth herein.

65. Westmount states that paragraph 65 is a statement of law to which no response is required.

66. Westmount states that paragraph 66 is a statement of law to which no response is required.

67. The allegations in paragraph 67 are unintelligible, and Westmount therefore denies them.

68. Westmount denies the allegations in paragraph 68.

## COUNT II
## Fraud

69. Westmount repeats its responses to paragraphs 1 through 68 and incorporates them as though they were fully set forth herein.

70. As to the allegations in the first sentence of paragraph 70, Westmount states that the terms of the Loan Agreements speak for themselves. Westmount denies the allegations in the second sentence of paragraph 70.

71. Westmount admits that, in consideration of the partial release of its collateral, it required substitute collateral in the form of a blanket security interest in certain of BBC's properties, but denies the remaining allegations in paragraph 71.

72. Westmount denies the allegations in paragraph 72.

73. Westmount denies the allegations in paragraph 73.

74. Westmount denies the allegations in paragraph 74.

**COUNT III**
**Fraud**

75. Westmount repeats its responses to paragraphs 1 through 74 and incorporates them as though they were fully set forth herein.

76. Westmount denies the allegations in paragraph 76.

77. Westmount denies the allegations in paragraph 77.

78. Westmount denies the allegations in paragraph 78.

79. Westmount denies the allegations in paragraph 79.

80. Westmount denies the allegations in paragraph 80.

**COUNT IV**
**Interference with Contractual Relations**

81. Westmount repeats its responses to paragraphs 1 through 80 and incorporates them as though they were fully set forth herein.

82. Westmount is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 82.

83. Westmount denies the allegations in paragraph 83.

84. Westmount denies the allegations in paragraph 84.

85. Westmount denies the allegations in paragraph 85.

**COUNT V**
**Good Faith and Fair Dealing**

86. Westmount repeats its responses to paragraphs 1 through 85 and incorporates them as though they were fully set forth herein.

87. Westmount states that paragraph 87 is a statement of law to which no response is required.

88. Westmount admits the allegations in paragraph 88.

89. Westmount denies the allegations in paragraph 89.

90. Westmount denies the allegations in paragraph 90.

**COUNT VI**
**G.L. c. 93A, §§ 2 and 11**

91. Westmount repeats its responses to paragraphs 1 through 90 and incorporates them as though they were fully set forth herein.

92. Westmount admits the allegations in paragraph 92.

93. Westmount admits that it knows that certain of the loans it made to BBC were for purchase of properties in Massachusetts, but denies the remaining allegations in paragraph 93.

94. Westmount admits that is has performed inspections of properties in Massachusetts, has received checks and correspondence from Massachusetts, and has recorded documents in Massachusetts, but denies the remaining allegations in paragraph 94.

95. Westmount denies the allegations in paragraph 95.

96. Westmount denies the allegations in paragraph 96.

## FIRST AFFIRMATIVE DEFENSE

The plaintiffs have failed to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

The plaintiffs' damages, if any, are the consequence of its knowing assumption of business risk.

## THIRD AFFIRMATIVE DEFENSE

The plaintiffs' claims are barred by the doctrines of waiver, estoppel and/or unclean hands.

## FOURTH AFFIRMATIVE DEFENSE

The plaintiffs' claims are governed by New Hampshire law.

## FIFTH AFFIRMATIVE DEFENSE

The plaintiffs' damages, if any, were caused by persons other than the defendants.

## SIXTH AFFIRMATIVE DEFENSE

Any alleged unfair or deceptive acts did not occur primarily and substantially in Massachusetts.

## SEVENTH AFFIRMATIVE DEFENSE

The plaintiffs have failed to plead fraud with particularity.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs are barred from recovery by lack or failure of consideration for any alleged modification of the parties' agreement.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' alleged reliance on any alleged representations or misrepresentations made by defendants was speculative, misplaced, unreasonable, and/or constituted a voluntary business decision.

## TENTH AFFIRMATIVE DEFENSE

Defendant has complied with the registration requirements of M.G.L. c. 271, § 49. See **Exhibit A**.

## ELEVENTH AFFIRMATIVE DEFENSE

The plaintiff's claims are barred by the statute of frauds.

## TWELFTH AFFIRMATIVE DEFENSE

The plaintiff is precluded from recovery in whole or in part due to his failure to mitigate the alleged damages.

## COUNTERCLAIMS

### Parties

1.  The plaintiff-in-counterclaim, Westmount Financial Limited Partnership ("Westmount"), is a limited partnership having usual places of business at 14648 N. Scottsdale Road, Suite 325, Scottsdale, Arizona; 4500 P.G.A. Blvd., Suite 303B, Palm Beach Gardens, Florida; and One Harbour Place, Suite 465, Portsmouth, New Hampshire.

2.  Defendant-in-counterclaim BBC Equities, Inc. ("BBC") is a corporation with a usual place of business at 14 Main Street, Gardner, Massachusetts.

3.    Defendant-in-counterclaim Douglas K. Rau ("Rau") is an individual residing at 180 Lawrence Street, Gardner, Massachusetts.  At all times relevant hereto, Rau was the President and Owner of BBC.

## Jurisdiction and Venue

4.    This is a claim between citizens of different states.  The amount in controversy is in excess of $75,000, exclusive of interest and costs.  This court has jurisdiction under 28 U.S.C. § 1332(a).  This court has venue pursuant to 28 U.S.C. § 1391(a).

## General Allegations

5.    From time to time, Westmount filed with the Office of the Attorney General for the Commonwealth of Massachusetts, letters stating its intent to enter into high-interest loan transactions in compliance with M.G.L. c. 271, § 49.  True copies of Westmount's letters to the Office of the Attorney General for the years 2000 through 2004 are attached as **Exhibit A**.

6.    On or about April 5, 2002, BBC borrowed Eighty-Seven Thousand, Two Hundred Nine Thousand Dollars and 30/100 ($87,209.30) (including $75,000.00 of principal) from Westmount and promised to repay that loan in accordance with the terms contained in a promissory note executed and delivered to Westmount (the "Architect Note").  A true copy of the Architect Note is attached as **Exhibit B**.

7.    The moneys advanced by the Architect Note were to fund architectural services with regard to the property located at 14-34 Main Street, Gardner, Massachusetts (the "Architect Project").

8.   Pursuant to the Architect Note, beginning June 1, 2002, BBC promised to make monthly interest payments and repay the loan balance in full, with any outstanding interest and other agreed charges, on or before April 5, 2003.

9.   As provided under the terms of the Architect Note, BBC elected to extend the Architect Note for one six-month period in April 2003.

10. On or about February 25, 2003, BBC executed a second promissory note in the amount of One Million, Seven Hundred Forty-Four Thousand, One Hundred Eighty-Six Dollars and 05/100 ($1,744,186.05) and delivered same to Westmount.  Westmount advanced a principal amount of $1,448,632.23.  BBC promised to repay that loan in accordance with the terms contained in the February 25, 2003, promissory note (the "Construction Note").  A true copy of the Construction Note is attached as **Exhibit C**.

11. BBC agreed as a condition for such loan that all funds advanced under the Construction Note would be used exclusively for construction and improvement of 14-34 Main Street, Gardner, Massachusetts (the "Construction Project").

12. Pursuant to the Construction Note, beginning April 1, 2003, BBC promised to make monthly interest payments and repay the loan balance in full, with any outstanding interest and other agreed charges, on or before August 5, 2004.

13. In July 2003, the parties agreed to modify the terms of the Architect Note to conform with the repayment terms of the Construction Note.

14. On or about June 30, 2003, BBC borrowed Two Hundred Thirty-Two Thousand, Five Hundred Fifty-Eight Dollars and 14/100 ($232,558.14) (including $200,000.00 of principal)

from Westmount and promised to repay that loan in accordance with the terms contained in a third promissory note executed and delivered to Westmount (the "Fitchburg Note").  A true copy of the Fitchburg Note is attached as **Exhibit D**.

15. BBC agreed as a condition for such loan that all funds advanced under the Fitchburg Note would be used exclusively for construction and improvement of property located at 325 Main Street, Fitchburg, Massachusetts (the "Fitchburg Project").

16. Pursuant to the Fitchburg Note, beginning August 1, 2003, BBC promised to make monthly interest payments and repay the loan balance in full, with any outstanding interest and other agreed charges, on or before June 30, 2004.

17. As provided under the terms of the Fitchburg Note, BBC elected to extend the Fitchburg Note for one six-month period in June 2004.

18.  As provided under the terms of the Construction and Architect Notes, BBC elected to extend the Construction and Architect Notes for one six-month period in August 2004.

19. BBC defaulted on the Fitchburg, Architect and Construction Notes by failing to make payments and use loan proceeds as agreed.

20. By letter dated June 24, 2005, Westmount made demand upon BBC for all amounts outstanding under the Construction and Architect Notes.  BBC failed to respond to that demand. A true copy of the demand letter is attached as **Exhibit E**.

21. By letter dated June 24, 2005, Westmount made demand upon BBC for all amounts outstanding under the Fitchburg Note.  BBC failed to respond to that demand.  A true copy of the demand letter is attached as **Exhibit F**.

## COUNT I
(Breach of Contract – Architect Note)

22. Westmount repeats and realleges the allegations contained in paragraphs 1 through 21 above, as if expressly restated and realleged.

23. Westmount performed all of its obligations under the Architect Note.

24. BBC breached the terms of its agreement under the Architect Note by failing to make payments as required.  Under the terms of the Architect Note, the entire balance is now due.

25. Westmount has been damaged by BBC's breach and is entitled to the outstanding principal, interest, fees and charges, including attorneys' fees, due under the terms of the Architect Note.

## COUNT II
(Money Lent)

26. Westmount repeats and realleges the allegations contained in paragraphs 1 through 25 above as if expressly restated and realleged.

27. BBC owes Westmount for money lent to it on or about April 5, 2002.

## COUNT III
(Breach of Contract – Construction Note)

28. Westmount repeats and realleges the allegations contained in paragraphs 1 through 27 above as if expressly restated and realleged.

29. Westmount performed all of its obligations under the Construction Note.

30. BBC breached the terms of its agreement under the Construction Note by failing to make payments as required. Under the terms of the Construction Note, the entire balance is now due.

31. Westmount has been damaged by BBC's breach and is entitled to the outstanding principal, interest, fees and charges, including attorneys' fees, due under the terms of the Construction Note.

## COUNT IV
### (Money Lent)

32. Westmount repeats and realleges the allegations contained in paragraphs 1 through 31 above, as if expressly restated and realleged.

33. BBC owes Westmount for money lent to it on or about February 25, 2003.

## COUNT V
### (Breach of Contract – Fitchburg Note)

34. Westmount repeats and realleges the allegations contained in paragraphs 1 through 33, above as if expressly restated and realleged.

35. Westmount performed all of its obligations under the Fitchburg Note.

36. BBC breached the terms of its agreement under the Fitchburg Note by failing to make payments as required. Under the terms of the Fitchburg Note, the entire balance is now due.

37. Westmount has been damaged by BBC's breach and is entitled to the outstanding principal, interest, fees and charges, including attorneys' fees, due under the terms of the Fitchburg Note.

## COUNT VI
(Money Lent)

38. Westmount repeats and realleges the allegations contained in paragraphs 1 though 37 above, as if expressly restated and realleged.

39. BBC owes Westmount for money lent to it on or about June 30, 2003.

## COUNT VII
(Breach of Contract – April 2002 Guaranty)

40. Westmount repeats and realleges the allegations contained in paragraphs 1 through 39, above as if expressly restated and realleged.

41. On or about April 5, 2002, Rau executed an Unlimited, Unconditional Guaranty Agreement guaranteeing all obligations of BBC (the "April 2002 Guaranty").  A true copy of the Guaranty is attached as **Exhibit G**.

42. By letter dated June 24, 2005, Westmount made demand upon Rau for payment under the April 2002 Guaranty.  Rau failed to respond to that demand.  A true copy of the demand letter is attached at Exhibit E.

43. Rau failed to make payment under his Guaranty and owes Westmount the remaining principal, subsequently accruing interest, late fees and costs of collection, including attorneys fees due under the terms of the April 2002 Guaranty.

## COUNT VIII
(Breach of Contract – February 2003 Guaranty)

44. Westmount repeats and realleges the allegations contained in paragraphs 1 through 43, above as if expressly restated and realleged.

45. On or about February 25, 2003, Rau executed an Unlimited, Unconditional Guaranty Agreement guaranteeing all obligations of BBC (the "February 2003 Guaranty").  A true copy of the Guaranty is attached as **Exhibit H**.

46. By letter dated June 24, 2005, Westmount made demand upon Rau for payment under the February 2003 Guaranty.  Rau failed to respond to that demand.  A true copy of the demand letter is attached at Exhibit E.

47. Rau failed to make payment under his Guaranty and owes Westmount the remaining principal, subsequently accruing interest, late fees and costs of collection, including attorneys fees due under the terms of the February 2003 Guaranty.

## COUNT IX
(Breach of Contract – June 2003 Guaranty)

48. Westmount repeats and realleges the allegations contained in paragraphs 1 through 47, above as if expressly restated and realleged.

49. On or about June 30, 2003, Rau executed an Unlimited, Unconditional Guaranty Agreement guaranteeing all obligations of BBC (the "June 2003 Guaranty").  A true copy of the June 2003 Guaranty is attached as **Exhibit I**.

50. By letter dated June 24, 2005, Westmount made demand upon Rau for payment under the June 2003 Guaranty.  Rau failed to respond to that demand.  A true copy of the demand letter is attached at Exhibit F.

51. Rau failed to make payment under his Guaranty and owes Westmount the remaining principal, subsequently accruing interest, late fees and costs of collection, including attorneys fees due under the terms of the June 2003 Guaranty

WHEREFORE, the plaintiff-in-counterclaim, Westmount Financial Limited Partnership, hereby demands that judgment enter in its favor and against the defendants-in-counterclaim, BBC Equities, Inc., and Douglas K. Rau, jointly and severally, in the amount of its damages, including accrued interest, late fees, and costs of collection, including attorneys fees; and such other and further relief as this Court may deem just and proper.

WESTMOUNT FINANCIAL LIMITED PARTNERSHIP

By its attorney,

/s/ Kristin D. Thompson
Robert L. Hamer, Esq., BBO #218715
Kristin D. Thompson, Esq., BBO #656179
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Dated: October 11, 2005      Fax:    (508) 791-8502

## CERTIFICATE OF SERVICE

I, Kristin D. Thompson, hereby certify that I have this day served a copy of the foregoing document, via electronic filing, to **Dana E. Casher**, Esq., Krulewich, Casher, P.C., 50 Staniford Street, Boston, MA 02114.

/s/ Kristin D. Thompson
Dated: October 11, 2005      Kristin D. Thompson, Esq.

# EXHIBIT A

# Law Offices of Jack Bryan Little, P.C.

---

**401 Andover Street**
**North Andover, MA 01845**
**(978) 682-9985    FAX (978) 682-9935**

August 23, 2004

*00292*

Office of the Attorney General
Usury & Criminal Division
Commonwealth of Massachusetts
One Ashburton Place
Boston, MA 02108

RE:    WESTMOUNT FINANCIAL LIMITED PARTNERSHIP
      Notification of intent to engage in loan transactions pursuant to M.G.L. c. 271 s. 49

Dear Sir/Madam:

    This office represents Westmount Financial Limited Partnership in connection with certain high interest loan transactions.

    Please accept this correspondence as notification pursuant to M.G.L. c. 271, s. 49 that Westmount Financial Limited Partnership intends to enter into high interest loan transactions.

    The following information is provided pursuant to the said statute:

| | |
|---|---|
| Name of Lender: | Westmount Financial Limited Partnership |
| Address of Lender: | 14648 N. Scottsdale Road |
| | Suite 325 |
| | Scottsdale, AZ 85254 |

    Records of all such transactions shall be maintained at the above address.

    Please feel free to contact me if I can be of any assistance to you in this regard.

        Sincerely,

        Jack Bryan Little

RECEIVED
AUG 24 2004
OFFICE OF THE ATTORNEY GENERAL
CRIMINAL BUREAU

# Law Offices of Jack Bryan Little, P.C.

---

**401 Andover Street**
**North Andover, MA 01845**
**(978) 682-9985    FAX (978) 682-9935**

August 4, 2003

Office of the Attorney General                                    **000190**
Usury & Criminal Division
Commonwealth of Massachusetts
One Ashburton Place
Boston, MA 02108

RE:    WESTMOUNT FINANCIAL LIMITED PARTNERSHIP
       Notification of intent to engage in loan transactions pursuant to M.G.L. c.271 s. 49

Dear Sir/Madam:

This office represents Westmount Financial Limited Partnership in connection with certain high interest loan transactions.

Please accept this correspondence as notification pursuant to M.G.L. c. 271, s. 49 that Westmount Financial Limited Partnership intends to enter into high interest loan transactions.

The following information is provided pursuant to said statute:

Name of Lender:    Westmount Financial Limited Partnership
Address of Lender:    4500 P.G.A. Boulevard
                      Suite 303B
                      Palm Beach Gardens, Florida 33418

Records of all such transactions shall be maintained at the above address.

Please feel free to contact me if I can be of any assistance to you in this regard.

Sincerely,

Jack Bryan Little

RECEIVED
AUG 06 2003
OFFICE OF THE ATTORNEY GENERAL
CRIMINAL BUREAU

# Law Offices of Jack Bryan Little, P.C.

401 Andover Street
North Andover, MA 01845
(978) 682-9985    FAX (978) 682-9935

February 1, 2002

Office of the Attorney General
Usury & Criminal Division
Commonwealth of Massachusetts
One Ashburton Place
Boston, MA 02108

RE:    WESTMOUNT FINANCIAL LIMITED PARTNERSHIP
       Notification of intent to engage in loan transactions pursuant to M.G.L. c. 271 s. 49

Dear Sir/Madam:

This office represents Westmount Financial Limited Partnership in connection with certain high interest loan transactions.

Please accept this correspondence as notification pursuant to M.G.L. c. 271, s. 49 that Westmount Financial Limited Partnership intends to enter into high interest loan transactions.

The following information is provided pursuant to the said statute:

Name of Lender:    Westmount Financial Limited Partnership
Address of Lender:    4500 P.G.A. Boulevard
                      Suite 303B
                      Palm Beach Gardens, Florida 33418

Records of all such transactions shall be maintained at the above address.

Please feel free to contact me if I can be of any assistance to you in this regard.

Sincerely,

Jack Bryan Little

# LAW OFFICES OF JOHN L. ALLEN & ASSOCIATES

Professional Corporation
## ATTORNEYS

---

John L. Allen*
*Also admitted in MA

27 Lowell Street
Manchester, NH 03101
Telephone (603) 666-9966
Fax (603) 668-7750

David A. Pappalardo*

May 17, 2001

Office of the Attorney General
Usury & Criminal Division
Commonwealth of Massachusetts
One Ashburton Place
Boston, MA 02109

Re: **WESTMOUNT FINANCIAL LIMITED PARTNERSHIP**
    **Notification of intent to engage in loan transactions pursuant
    to M.G.L. c 271 s. 49**

Dear Sir or Madam:

Please be advised that this office represents Westmount
Financial Limited Partnership in connection with certain high
interest loan transactions.

Please accept this correspondence as notification pursuant to
M.G.L. c. 271, s. 49 that Westmount Financial Limited Partnership,
CIF, Inc (General Partner) intends to enter into high interest loan
transactions.

The following information is provided pursuant to the said
statute.

Name of Lender:    Westmount Financial Limited Partnership

Address of Lender:  6929 E. Greenway Parkway, Suite 190
                    Scottsdale, AZ 85254

Records of all such transactions shall be maintained at the Lender's Florida address, 4500 PGA Boulevard, Suite 303B, Palm Beach Gardens, Florida 33418.

If you should have any questions, then please do not hesitate to contact me.

                                    Very truly yours,

                                    LAW OFFICES OF JOHN L. ALLEN
                                    AND ASSOCIATES, P.C.

                                    By: _____
                                        John L. Allen, Esquire

/vmm
cc:client

Law Offices of Jack Bryan Little, P.C.

401 Andover Street
North Andover, MA 01845
(781) 602-2005    FAX (978) 502-9955

June 8, 2000

Office of the Attorney General
Usury & Criminal Division
Commonwealth of Massachusetts
One Ashburton Place
Boston, MA 02108

RE. WESTMOUNT FINANCIAL LIMITED PARTNERSHIP
    Notification of intent to engage in loan transactions pursuant to M.G.L  c  271 s. 49

Dear Sir/Madam:

    This office represents Westmount Financial Limited Partnership in connection with certain high interest loan transactions.

    Please accept this correspondence as notification pursuant to M.G L  c. 271, s  49 that Westmount Financial Limited Partnership. CIF. Inc. (General Partner) intends to enter into high interest loan transactions

    The following information is provided pursuant to the said statute.

    Name of Lender  WESTMOUNT FINANCIAL LIMITED PARTNERSHIP

    Address of Lender·   4500 P.G.A. Boulevard
                         Suite 303B
                         Palm Beach Gardens, Florida 33418

    Records of all such transactions shall be maintained at the above address

    Please feel free to contact me if I can be of any assistance to you in this regard

                         Sincerely.

                         Jack Bryan Little

# EXHIBIT B

**TERM PROMISSORY NOTE**

$87,209.30                                        April 5, 2002
Twelve Months                              Manchester, New Hampshire

FOR VALUE RECEIVED, BBC Equities, Inc., a Massachusetts
corporation with an address of 14 Main Street, Gardner,
Massachusetts 01440 (hereinafter referred to as the
"Undersigned", promises to pay to the order of WESTMOUNT
FINANCIAL LIMITED PARTNERSHIP, a Nevada limited partnership with
an address of 6929 E. Greenway Parkway, Suite 190, Scottsdale,
Arizona 85254 (the "Lender"), its endorsees, successors and
assigns, at such address or at such other address as may be
designated hereafter by any Holder hereof, the principal sum of
EIGHTY SEVEN THOUSAND TWO HUNDRED NINE DOLLARS AND 30/100
($87,209.30), together with interest as provided for below, in
lawful money of the United States of America.

Principal and interest shall be payable as follows:

(1)   On June 1, 2002, and on the corresponding day of the
      next succeeding ten (10) months during the term hereof,
      the Undersigned shall make a payment of accrued
      interest only in the amount of $1,308.14; and

(2)   Notwithstanding anything herein to the contrary, on
      April 5, 2003 ("Maturity Date"), the Undersigned
      shall make a final payment to the Holder of the entire
      then outstanding principal balance hereof, together
      with all accrued and unpaid interest and any costs and
      fees payable hereunder.

The Holder shall <u>not</u> render to the Undersigned a statement of
account with respect thereto on a monthly basis. Interest shall
be calculated and charged daily on the basis of a 360 day banking
year on the unpaid principal balance outstanding from time to
time. Prior to maturity, unless upon demand, acceleration or
other default, the interest rate applicable to this Note shall be
equal to eighteen percent (18.0%) per annum (the "Interest Rate").

**Provided the Undersigned is not in default hereunder, the
Undersigned shall have the right, once and only once, to extend
the term of this Note for an additional period of six (6) months
upon payment to the Holder of an extension fee in the sum of
FOURTEEN THOUSAND ONE HUNDRED NINETY SIX DOLLARS AND 86/100
($14,196.86) ("Extension Fee") on or before the maturity date
stated above, time being of the essence which amount shall not be
applied to outstanding interest or principal. In the event of any
such extension, the Undersigned shall make monthly payments of
accrued interest only at the Interest Rate on the outstanding
principal balance hereunder, with a final payment of the entire**

then outstanding principal balance hereof, together with all accrued and unpaid interest and any costs and fees payable hereunder on or before the extended maturity date.

The Undersigned may prepay this Note in full or in part at any time, without the payment of any penalty, premium or charge of any nature. In the event that any such prepayment shall be made by the Undersigned, the amount thereof shall be applied first to any accrued interest, costs and fees, and thereafter to outstanding principal. In the event of any prepayment of the Note prior to maturity at the original or any extended maturity date, no refund of the Extension Fee or any other sum collected hereunder prior to such repayment shall be refundable.

The payment and performance of the obligations contained herein are secured by a certain Mortgage and the other documents from the Undersigned to the Holder dated as of even date herewith securing property known as 14-34 Main Street, Gardner, Massachusetts and several other parcels of real property located at 1217 Main Street, Athol, Massachusetts, 479 School Street, Athol, Massachusetts, 537-539 School Street, Athol, Massachusetts, 38 Sherman Street, Gardner, Massachusetts and 47 Halford Street, Gardner, Massachusetts (such documents are hereinafter collectively referred to together with this Note as the "Loan Documents"), and the collateral granted to the Holder thereby (the "Collateral").

Upon the occurrence of any of the following events of default, this Note shall, at the option of the Holder, become immediately due and payable in full, without further demand or notice:

A.    Default by the Undersigned in payment on its due date of any principal or interest called for under the Loan Documents. TIME IS OF THE ESSENCE AS TO EACH PAYMENT.

B.    Default by the Undersigned in the performance or observance of any of the provisions, terms, conditions, warranties or covenants of the Loan Documents not cured within any applicable grace or remedy period.

C.    Default by the Undersigned, not cured within any applicable grace or remedy period, in the payment or performance of any other obligations due the Holder or under any other contract for borrowed money with any other lender, private or institutional, whether created prior to, concurrent with, or subsequent to obligations arising out of the Loan Documents.

D.    If any statement, representation or warranty made by

2

the Undersigned in the Loan Documents or in connection therewith or any financial statement, report, schedule, or certificate furnished by the Undersigned or any of its agents or accountants to the Holder during the term of this Note shall prove to have been false or misleading when made, or subsequently becomes false or misleading, in any material respect.

E.    The Undersigned or any Guarantor shall (i) apply for or consent to the appointment of a receiver, trustee or liquidator of it or any of its property, (ii) admit in writing its inability to pay debts as they mature, (iii) make a general assignment for the benefit of creditors, (iv) be adjudicated as bankrupt or insolvent, (v) die, or (vi) file a voluntary petition in bankruptcy, or a petition or an answer seeking reorganization to take advantage of any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law or statute, or an answer admitting any material allegations of a petition filed against it in any proceeding under any such law.

F.    Proceedings shall be commenced or an order, judgment or decree shall be entered, without the application, approval or consent of the Undersigned, in or by any court of competent jurisdiction, relating to the bankruptcy, dissolution, liquidation, reorganization or the appointment of a receiver, trustee or liquidator of the Undersigned, or of all or a substantial part of its assets, and such proceedings, order, judgment or decree shall continue undischarged or unstayed for a period of sixty (60) days.

G.    Non-payment when due of any municipal assessment outstanding with respect to any real property which serves as collateral for repayment of the Note.

H.    Transfer, whether involuntary or voluntary, by the Undersigned of any portion or all of the property that constitutes and serves as Collateral for the obligations herein without the express written consent of the Lender prior to any such transfer.

I.    The death of Douglas K. Rau.

The Holder may impose upon the Undersigned a delinquency charge of One Thousand Dollars ($1,000.00) per month for any payment amount that is not paid on or before day such payment is

due and remains unpaid from month to month. The entire principal balance hereof, together with accrued interest, shall, after maturity or default, whether upon demand, acceleration or otherwise, bear interest at the rate of thirty-six percent (36.0%) per annum ("Default Rate"). In addition to constituting an event of default, Lender may assess a penalty of $1,000.00 per month for each month in which municipal assessments, water, sewer and or taxes, are due and unpaid.

In the event that the principal is not timely paid when due, whether at the Maturity Date or any extended maturity date as provided for herein, then a late payment charge equal to fourteen percent (14%) of the outstanding balance due to the Lender shall be due and payable either: (i) upon full payment by the Borrower; or (ii) in the event any collection action must be commenced (whether or not completed) by Lender to enforce repayment of the principal owed hereunder.

No provision of this Note or any other aspect of the transaction of which this Note is a part is intended to or shall require or permit the holder, directly or indirectly, to take, receive, contract for, or reserve, in money, goods, or things in action, or in any other way, any interest (including amounts deemed by law to be interest, such amounts to then be deemed to be an addition to the rate of interest agreed upon) in excess of the maximum rate of interest permitted by applicable law in the State of New Hampshire and/or the Commonwealth of Massachusetts as of the date hereof. If any such excess shall nevertheless be provided for, or be adjudicated by a court of competent jurisdiction to be provided for, the undersigned shall not be obligated to pay such excess but, if paid, then such excess shall be applied against the unpaid principal balance of this Note or, to the extent that the principal balance has been paid in full by reason of such application or otherwise, such excess shall be remitted to the undersigned.

The Undersigned agrees to pay on demand all out-of-pocket costs of collection and enforcement hereof, including attorney's fees, whether or not any foreclosure or other action is instituted by the Holder in its discretion. The term "enforcement" as used in this Note shall include, but not be limited to, the negotiation, documentation or other consummation of any modification, extension, renewal or other such transaction, whether or not the Undersigned is then in default under this Note or the other Loan Documents, and shall also include any and all attempts by the Holder to recover payment of amounts due under this Note or to require compliance with any term, covenant or condition of the Loan Documents with or without prior notice to the Borrower.

4

No delay or omission on the part of the Holder in exercising any right, privilege or remedy shall impair such right, privilege or remedy or be construed as a waiver thereof or of any other right, privilege or remedy. No waiver of any right, privilege or remedy or any amendment to this Note shall be effective unless made in writing and signed by the Holder. Under no circumstances shall an effective waiver of any right, privilege or remedy on any one occasion constitute or be construed as a bar to the exercise of or a waiver of such right, privilege or remedy on any future occasion. The acceptance by the Holder of any payment after any default hereunder shall not operate to extend the time of payment of any amount then remaining unpaid hereunder or constitute a waiver of any rights of the Holder under this Note.

All rights and remedies of the Holder, whether granted herein or otherwise, shall be cumulative and may be exercised singularly or concurrently, and the Holder shall have, in addition to all other rights and remedies, the rights and remedies of a secured party under the Uniform Commercial Code of New Hampshire. The Holder shall have no duty as to the collection or protection of the Collateral or of any income thereon, or as to the preservation of any rights pertaining thereto beyond the safe custody thereof.

As additional Collateral, the Undersigned (i) grants to the Holder a security interest in, or pledges, assigns and delivers to the Holder, as appropriate, all deposits, credits and other property (real or personal) now or hereafter due from the Holder to the Undersigned, and (ii) grants to the Holder the right to set-off or foreclosure and apply (and a security interest in said right), from time to time hereafter and without demand or notice of any nature, all, or any portion, of such deposits, credits and other property (real or personal), against the indebtedness evidenced by this Note, whether or not the other Collateral, if any, is deemed adequate.

The Undersigned waives, to the fullest extent permitted by law, presentment, notice, protest and all other demands and notices and assents (1) to any extension of the time of payment or any other indulgence, (2) to any substitution, exchange or release of collateral, and (3) to the release of any other person primarily or secondarily liable for the obligations evidenced hereby. The Undersigned expressly waives any defense or claim based in whole or in part upon any actual or alleged impairment of the Collateral. The Undersigned hereby consents and agrees that the Holder may as long as the Note remains unpaid, periodically, and without notice to Borrower obtain credit reports, verify income and make inquiry of other creditors and credit reporting agencies with respect to the Borrower's financial condition.

**THE   PARTIES   AGREE   THAT   ANY   ACTION,   PROCEEDING,   OR**

5

COUNTERCLAIM ARISING OUT OF OR RELATING TO ANY OF THE LOAN
DOCUMENTS OR THE ACTIONS OF THE LENDER IN THE ENFORCEMENT THEREOF
SHALL BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE
SITTING WITHOUT A JURY.

This Note and the provisions hereof shall be binding upon the
Undersigned and the Undersigned's heirs, administrators,
executors, successors, legal representatives and assigns and shall
inure to the benefit of the Holder and the Holder's heirs,
administrators, executors, successors, legal representatives and
assigns.

This Note may not be amended, changed or modified in any
respect except by a written document which has been executed by
each party. This Note is to be construed according to and
governed by the laws of the State of New Hampshire. In the event
of any dispute hereunder, the Undersigned agrees and irrevocably
consents to the jurisdiction and venue of the federal or state
courts sitting within the State of New Hampshire.

The term "Holder" as used herein shall mean the Lender, any
assignee, endorsee, successor or other transferee of the Lender or
any subsequent endorsee, successor or other transferee of this
Note.

IN WITNESS WHEREOF, the Undersigned have executed this
Term Promissory Note on this 5th day of April, 2002.

_____
Witness

(the "Borrower")
BBC EQUITIES, INC.

By: _____
Name: Douglas Rau
Title: President
Duly Authorized

COMMONWEALTH OF MASSACHUSETTS
COUNTY OF WORCESTER

The foregoing instrument was acknowledged before me this 5th
day of April, 2002 by Douglas K. Rau, duly authorized president
of BBC Equities, Inc., a Massachusetts corporation as his free
act and deed on behalf of the corporation.

_____
Notary Public/Justice of the Peace
My Commission Expires: 1-9-09
Notary Seal:
David A. Pappalardo

5

# EXHIBIT C

## PROMISSORY NOTE

$1,744,186.05                                              February 25, 2003
Eighteen Months                                  Manchester, New Hampshire

FOR VALUE RECEIVED, BBC Equities, Inc., a Massachusetts corporation with an address of 14 Main Street, Gardner, Massachusetts 01440 (hereinafter referred to as the "Undersigned"), promises to pay to the order of WESTMOUNT FINANCIAL LIMITED PARTNERSHIP, a Nevada limited partnership with an address of 14648 n. Scottsdale Road, Suite 325, Scottsdale, AZ 85254-2739 (the "Lender"), its endorsees, successors and assigns, at such address or at such other address as may be designated hereafter by any Holder hereof, the principal sum of ONE MILLION SEVEN HUNDRED FORTY FOUR THOUSAND ONE HUNDRED EIGHTY SIX AND 05/100 DOLLARS ($1,744,186.05), together with interest as provided for below, in lawful money of the United States of America.

Principal and interest shall be payable as follows:

(1)    On April 1, 2003, and on the corresponding day of the next succeeding sixteen (16) months during the term hereof, the Undersigned shall make a payment of accrued interest only calculated in accordance with the terms of this Note on the outstanding principal balance; and

(2)    Notwithstanding anything herein to the contrary, on August 25, 2004 ("Maturity Date"), the Undersigned shall make a final payment to the Holder of the entire then outstanding principal balance hereof, together with all accrued and unpaid interest and any costs and fees payable hereunder.

The Holder shall not render to the Undersigned a statement of account with respect thereto on a monthly basis. Interest shall be calculated and charged daily on the basis of a 360 day banking year on the unpaid principal balance outstanding from time to time. **Prior to maturity, unless upon demand, acceleration or other default, the interest rate applicable to this Note shall be equal to eighteen percent (18.0%) per annum (the "Interest Rate").** The Undersigned has elected to roll the Lender's origination fee of $244,186.05 into the principal balance of the Loan and such fee is considered earned at the time of the execution of the Note. Payments of interest only shall be due monthly computed at

12% per annum on the outstanding balance of the Loan
(computed from the date of each advance) with an additional
6% per annum on the outstanding balance accruing, compounding
monthly and such accruals due and payable at maturity or
acceleration. **Borrower agrees to pay an accrual fee of
$15,000.00, payable at acceleration and/or maturity, in
cosideration of Lender's deferral of a portion of the monthly
interest payments.** In the event no construction funds (not
including closing costs and points) are drawn prior to
September 30, 2003, **TIME BEING OF THE ESSENCE**, the
Undersigned agrees that the Lender's origination fee of
$244,186.05 shall be due and payable on October 30, 2003
along with any other applicable charges and Lender will have
no further obligation to fund the Loan.

**Provided the Undersigned is not in default hereunder,
the Undersigned shall have the right, once and only once, to
extend the term of this Note for an additional period of six
(6) months upon payment to the Holder of an extension fee in
the sum of TWO HUNDRED EIGHTY THREE THOUSAND NINE HUNDRED
THIRTY SEVEN 26/100 DOLLARS ($283,937.26) ("Extension Fee")
on or before the maturity date stated above, time being of
the essence which amount shall not be applied to outstanding
interest or principal. In the event Borrower fails to notify
the Lender that he does not wish to extend and the Note is
not paid in full at maturity, the extension feel will be
added to the principal balance. In the event of any such
extension, the Undersigned shall make monthly payments of
accrued interest only at the Interest Rate on the outstanding
principal balance hereunder, with a final payment of the
entire then outstanding principal balance hereof, together
with all accrued and unpaid interest and any costs and fees
payable hereunder on or before the extended maturity date.**

The Undersigned may prepay this Note in full or in part
at any time, without the payment of any penalty, premium or
charge of any nature. In the event that any such prepayment
shall be made by the Undersigned, the amount thereof shall be
applied first to any accrued interest, costs and fees, and
thereafter to outstanding principal. In the event of any
prepayment of the Note prior to maturity at the original or
any extended maturity date, no refund of the Extension Fee or
any other sum collected hereunder prior to such repayment
shall be refundable.

The payment and performance of the obligations contained



herein are secured by a certain Mortgage and the other documents from the Undersigned to the Holder dated as of even date herewith securing property known as 14-34 Main Street, Gardner, Massachusetts (such documents are hereinafter collectively referred to together with this Note as the "Loan Documents"), and the additonal collateral granted to the Holder hereby (the "Collateral").

Upon the occurrence of any of the following events of default, this Note shall, at the option of the Holder, become immediately due and payable in full, without further demand or notice:

A.    Default by the Undersigned in payment on its due date of any principal or interest called for under the Loan Documents. **TIME IS OF THE ESSENCE AS TO EACH PAYMENT.**

B.    Default by the Undersigned in the performance or observance of any of the provisions, terms, conditions, warranties or covenants of the Loan Documents not cured within any applicable grace or remedy period.

C.    Default by the Undersigned, not cured within any applicable grace or remedy period, in the payment or performance of any other obligations due the Holder or under any other contract for borrowed money with any other lender, private or institutional, whether created prior to, concurrent with, or subsequent to obligations arising out of the Loan Documents.

D.    If any statement, representation or warranty made by the Undersigned in the Loan Documents or in connection therewith or any financial statement, report, schedule, or certificate furnished by the Undersigned or any of its agents or accountants to the Holder during the term of this Note shall prove to have been false or misleading when made, or subsequently becomes false or misleading, in any material respect.

E.    The Undersigned or any Guarantor shall (i) apply for or consent to the appointment of a receiver, trustee or liquidator of it or any of its property,



(ii) admit in writing its inability to pay debts as they mature, (iii) make a general assignment for the benefit of creditors, (iv) be adjudicated as bankrupt or insolvent, (v) die, or (vi) file a voluntary petition in bankruptcy, or a petition or an answer seeking reorganization to take advantage of any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law or statute, or an answer admitting any material allegations of a petition filed against it in any proceeding under any such law.

F.  Proceedings shall be commenced or an order, judgment or decree shall be entered, without the application, approval or consent of the Undersigned, in or by any court of competent jurisdiction, relating to the bankruptcy, dissolution, liquidation, reorganization or the appointment of a receiver, trustee or liquidator of the Undersigned, or of all or a substantial part of its assets, and such proceedings, order, judgment or decree shall continue undischarged or unstayed for a period of sixty (60) days.

G.  Non-payment when due of any municipal assessment outstanding with respect to any real property which serves as collateral for repayment of the Note.

H.  Transfer, whether involuntary or voluntary, by the Undersigned of any portion or all of the property that constitutes and serves as Collateral for the obligations herein without the express written consent of the Lender prior to any such transfer.

I.  The death of Douglas K. Rau.

The Holder may impose upon the Undersigned a delinquency charge of One Thousand Dollars ($1,000.00) <u>per month</u> for any payment amount that is not paid on or before day such payment is due and remains unpaid from month to month. The entire principal balance hereof, together with accrued interest, shall, after maturity or default, whether upon demand, acceleration or otherwise, bear interest at the rate of thirty six percent (36.0%) per annum ("Default Rate"). In addition to constituting an event of default, Lender may assess a penalty of $1,000.00 per month for each month in



which municipal assessments, water, sewer and or taxes, are
due and unpaid.

In the event that the principal is not timely paid when
due, whether at the Maturity Date or any extended maturity
date as provided for herein, then a late payment charge equal
to fourteen percent (14%) of the outstanding balance due to
the Lender shall be due and payable either: (i) upon full
payment by the Borrower; or (ii) in the event any collection
action must be commenced (whether or not completed) by Lender
to enforce repayment of the principal owed hereunder.

No provision of this Note or any other aspect of the
transaction of which this Note is a part is intended to or
shall require or permit the holder, directly or indirectly,
to take, receive, contract for, or reserve, in money, goods,
or things in action, or in any other way, any interest
(including amounts deemed by law to be interest, such amounts
to then be deemed to be an addition to the rate of interest
agreed upon) in excess of the maximum rate of interest
permitted by applicable law in the State of New Hampshire
and/or the Commonwealth of Massachusetts as of the date
hereof. If any such excess shall nevertheless be provided
for, or be adjudicated by a court of competent jurisdiction
to be provided for, the undersigned shall not be obligated to
pay such excess but, if paid, then such excess shall be
applied against the unpaid principal balance of this Note or,
to the extent that the principal balance has been paid in
full by reason of such application or otherwise, such excess
shall be remitted to the undersigned.

The Undersigned agrees to pay on demand all
out-of-pocket costs of collection and enforcement hereof,
including attorney's fees, whether or not any foreclosure or
other action is instituted by the Holder in its discretion.
The term "enforcement" as used in this Note shall include,
but not be limited to, the negotiation, documentation or
other consummation of any modification, extension, renewal or
other such transaction, whether or not the Undersigned is
then in default under this Note or the other Loan Documents,
and shall also include any and all attempts by the Holder to
recover payment of amounts due under this Note or to require
compliance with any term, covenant or condition of the Loan
Documents with or without prior notice to the Borrower.

No delay or omission on the part of the Holder in
exercising any right, privilege or remedy shall impair such



right, privilege or remedy or be construed as a waiver
thereof or of any other right, privilege or remedy.    No
waiver of any right, privilege or remedy or any amendment to
this Note shall be effective unless made in writing and
signed by the Holder.    Under no circumstances shall an
effective waiver of any right, privilege or remedy on any one
occasion constitute or be construed as a bar to the exercise
of or a waiver of such right, privilege or remedy on any
future occasion.   The acceptance by the Holder of any payment
after any default hereunder shall not operate to extend the
time of payment of any amount then remaining unpaid hereunder
or constitute a waiver of any rights of the Holder under this
Note.

All rights and remedies of the Holder, whether granted
herein or otherwise, shall be cumulative and may be exercised
singularly or concurrently, and the Holder shall have, in
addition to all other rights and remedies, the rights and
remedies of a secured party under the Uniform Commercial Code
of New Hampshire.   The Holder shall have no duty as to the
collection or protection of the Collateral or of any income
thereon, or as to the preservation of any rights pertaining
thereto beyond the safe custody thereof.

As additional Collateral, the Undersigned (i) grants to
the Holder a security interest in, or pledges, assigns and
delivers to the Holder, as appropriate, all deposits, credits
and other property (real or personal) now or hereafter due
from the Holder to the Undersigned, and (ii) grants to the
Holder the right to set-off or foreclosure and apply (and a
security interest in said right), from time to time hereafter
and without demand or notice of any nature, all, or any
portion, of such deposits, credits and other property (real
or personal), against the indebtedness evidenced by this
Note, whether or not the other Collateral, if any, is deemed
adequate.

The Undersigned waives, to the fullest extent permitted
by law, presentment, notice, protest and all other demands
and notices and assents (1) to any extension of the time of
payment or any other indulgence, (2) to any substitution,
exchange or release of collateral, and (3) to the release of
any other person primarily or secondarily liable for the
obligations evidenced hereby.    The Undersigned expressly
waives any defense or claim based in whole or in part upon
any actual or alleged impairment of the Collateral.    The
Undersigned hereby consents and agrees that the Holder may as



long as the Note remains unpaid, periodically, and without notice to Borrower obtain credit reports, verify income and make inquiry of other creditors and credit reporting agencies with respect to the Borrower's financial condition.

**THE PARTIES AGREE THAT ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO ANY OF THE LOAN DOCUMENTS OR THE ACTIONS OF THE LENDER IN THE ENFORCEMENT THEREOF SHALL BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.**

This Note and the provisions hereof shall be binding upon the Undersigned and the Undersigned's heirs, administrators, executors, successors, legal representatives and assigns and shall inure to the benefit of the Holder and the Holder's heirs, administrators, executors, successors, legal representatives and assigns.

This Note may not be amended, changed or modified in any respect except by a written document which has been executed by each party. This Note is to be construed according to and governed by the laws of the State of New Hampshire. In the event of any dispute hereunder, the Undersigned agrees and irrevocably consents to the jurisdiction and venue of the federal or state courts sitting within the State of New Hampshire.

The term "Holder" as used herein shall mean the Lender, any assignee, endorsee, successor or other transferee of the Lender or any subsequent endorsee, successor or other transferee of this Note.

IN WITNESS WHEREOF, the Undersigned have executed this Term Promissory Note on this 25th day of February, 2003.

(the "Borrower")
BBC EQUITIES, INC.

By: _____

Name: Douglas Rau
Title: President
Duly Authorized

Witness _____

STATE OF NEW HAMPSHIRE
COUNTY OF HILLSBOROUGH

The foregoing instrument was acknowledged before me
this 25th day of February, 2003 by Douglas  K. Rau, duly
authorized President and Treasurer of BBC Equities, Inc., a
Massachusetts corporation as his free act and deed on
behalf of the corporation.

John L. Allen

Notary Public
My Commission Expires: 6/24/2008
Notary Seal:

# EXHIBIT D

COPY

## PROMISSORY NOTE

$232,558.14
Twelve Months

June 30, 2003
Manchester, New Hampshire

FOR VALUE RECEIVED, **BBC EQUITIES, INC.**, a Massachusetts corporation with an address of 14 Main Street, Gardner, Massachusetts 01440 (hereinafter referred to as the "Undersigned"), promises to pay to the order of **WESTMOUNT FINANCIAL LIMITED PARTNERSHIP**, a Nevada limited partnership with an address of 14648 n. Scottsdale Road, Suite 325, Scottsdale, AZ 85254-2739 (the "Lender"), its endorsees, successors and assigns, at such address or at such other address as may be designated hereafter by any Holder hereof, the principal sum of TWO HUNDRED THIRTY TWO THOUSAND FIVE HUNDRED FIFTY EIGHT AND 14/100 DOLLARS ($232,558.14), together with interest as provided for below, in lawful money of the United States of America.

Principal and interest shall be payable as follows:

(1) On August 1, 2003, and on the corresponding day of the next succeeding ten (10) months during the term hereof, the Undersigned shall make a payment of accrued interest only calculated in accordance with the terms of this Note on the outstanding principal balance; and

(2) Notwithstanding anything herein to the contrary, on June 30, 2004 ("Maturity Date"), the Undersigned shall make a final payment to the Holder of the entire then outstanding principal balance hereof, together with all accrued and unpaid interest and any costs and fees payable hereunder.

The Holder shall <u>not</u> render to the Undersigned a statement of account with respect thereto on a monthly basis. Interest shall be calculated and charged daily on the basis of a 360 day banking year on the unpaid principal balance outstanding from time to time. **Prior to maturity, unless upon demand, acceleration or other default, the interest rate applicable to this Note shall be equal to eighteen percent (18.0%) per annum (the "Interest Rate").** The Undersigned has elected to roll the Lender's origination fee of $32,558.14 into the principal balance of the Loan and such fee is considered earned at the time of the execution of the Note.

Provided the Undersigned is not in default hereunder, the Undersigned shall have the right, once and only once, to extend the term of this Note for an additional period of six (6) months upon payment to the Holder of an extension fee in the sum of THIRTY SEVEN THOUSAND EIGHT HUNDRED FIFTY EIGHT AND 30/100 DOLLARS ($37,858.30) ("Extension Fee") on or before the maturity date stated above, time being of the essence which amount shall not be applied to outstanding interest or principal. In the event Borrower fails to notify the Lender that he does not wish to extend and the Note is not paid in full at maturity, the extension feel will be added to the principal balance.    In the event of any such extension, the Undersigned shall make monthly payments of accrued interest only at the Interest Rate on the outstanding principal balance hereunder, with a final payment of the entire then outstanding principal balance hereof, together with all accrued and unpaid interest and any costs and fees payable hereunder on or before the extended maturity date.

The Undersigned may prepay this Note in full or in part at any time, without the payment of any penalty, premium or charge of any nature.    In the event that any such prepayment shall be made by the Undersigned, the amount thereof shall be applied first to any accrued interest, costs and fees, and thereafter to outstanding principal.    In the event of any prepayment of the Note prior to maturity at the original or any extended maturity date, no refund of the Extension Fee or any other sum collected hereunder prior to such repayment shall be refundable.

The payment and performance of the obligations contained herein are secured by a certain Mortgage and the other documents from the Undersigned to the Holder dated as of even date herewith securing property known as 325-327 Main Street, Fitchburg, Massachusetts (such documents are hereinafter collectively referred to together with this Note as the "Loan Documents"), and the additional collateral granted to the Holder hereby (the "Collateral").

Upon the occurrence of any of the following events of default, this Note shall, at the option of the Holder, become immediately due and payable in full, without further demand or notice:

A.    Default by the Undersigned in payment on its due date of any principal or interest called for under

the Loan Documents.  **TIME IS OF THE ESSENCE AS TO EACH PAYMENT.**

B.   Default by the Undersigned in the performance or observance of any of the provisions, terms, conditions, warranties or covenants of the Loan Documents not cured within any applicable grace or remedy period.

C.   Default by the Undersigned, not cured within any applicable grace or remedy period, in the payment or performance of any other obligations due the Holder or under any other contract for borrowed money with any other lender, private or institutional, whether created prior to, concurrent with, or subsequent to obligations arising out of the Loan Documents.

D.   If any statement, representation or warranty made by the Undersigned in the Loan Documents or in connection therewith or any financial statement, report, schedule, or certificate furnished by the Undersigned or any of its agents or accountants to the Holder during the term of this Note shall prove to have been false or misleading when made, or subsequently becomes false or misleading, in any material respect.

E.   The Undersigned or any Guarantor shall (i) apply for or consent to the appointment of a receiver, trustee or liquidator of it or any of its property, (ii) admit in writing its inability to pay debts as they mature, (iii) make a general assignment for the benefit of creditors, (iv) be adjudicated as bankrupt or insolvent, (v) die, or (vi) file a voluntary petition in bankruptcy, or a petition or an answer seeking reorganization to take advantage of any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law or statute, or an answer admitting any material allegations of a petition filed against it in any proceeding under any such law.

F.   Proceedings shall be commenced or an order, judgment or decree shall be entered, without the application, approval or consent of the

Undersigned, in or by any court of competent jurisdiction, relating to the bankruptcy, dissolution, liquidation, reorganization or the appointment of a receiver, trustee or liquidator of the Undersigned, or of all or a substantial part of its assets, and such proceedings, order, judgment or decree shall continue undischarged or unstayed for a period of sixty (60) days.

G.    Non-payment when due of any municipal assessment outstanding with respect to any real property which serves as collateral for repayment of the Note.

H.    Transfer, whether involuntary or voluntary, by the Undersigned of any portion or all of the property that constitutes and serves as Collateral for the obligations herein without the express written consent of the Lender prior to any such transfer.

I.    The death of Douglas K. Rau.

The Holder may impose upon the Undersigned a delinquency charge of One Thousand Dollars ($1,000.00) **per month** for any payment amount that is not paid on or before day such payment is due and remains unpaid from month to month. The entire principal balance hereof, together with accrued interest, shall, after maturity or default, whether upon demand, acceleration or otherwise, bear interest at the rate of thirty six percent (36.0%) per annum ("Default Rate"). In addition to constituting an event of default, Lender may assess a penalty of $1,000.00 per month for each month in which municipal assessments, water, sewer and or taxes, are due and unpaid.

In the event that the principal is not timely paid when due, whether at the Maturity Date or any extended maturity date as provided for herein, then a late payment charge equal to fourteen percent (14%) of the outstanding balance due to the Lender shall be due and payable either: (i) upon full payment by the Borrower; or (ii) in the event any collection action must be commenced (whether or not completed) by Lender to enforce repayment of the principal owed hereunder.

No provision of this Note or any other aspect of the transaction of which this Note is a part is intended to or shall require or permit the holder, directly or indirectly, to take, receive, contract for, or reserve, in money, goods,

or things in action, or in any other way, any interest (including amounts deemed by law to be interest, such amounts to then be deemed to be an addition to the rate of interest agreed upon) in excess of the maximum rate of interest permitted by applicable law in the State of New Hampshire and/or the Commonwealth of Massachusetts as of the date hereof. If any such excess shall nevertheless be provided for, or be adjudicated by a court of competent jurisdiction to be provided for, the undersigned shall not be obligated to pay such excess but, if paid, then such excess shall be applied against the unpaid principal balance of this Note or, to the extent that the principal balance has been paid in full by reason of such application or otherwise, such excess shall be remitted to the undersigned.

The Undersigned agrees to pay on demand all out-of-pocket costs of collection and enforcement hereof, including attorney's fees, whether or not any foreclosure or other action is instituted by the Holder in its discretion. The term "enforcement" as used in this Note shall include, but not be limited to, the negotiation, documentation or other consummation of any modification, extension, renewal or other such transaction, whether or not the Undersigned is then in default under this Note or the other Loan Documents, and shall also include any and all attempts by the Holder to recover payment of amounts due under this Note or to require compliance with any term, covenant or condition of the Loan Documents with or without prior notice to the Borrower.

No delay or omission on the part of the Holder in exercising any right, privilege or remedy shall impair such right, privilege or remedy or be construed as a waiver thereof or of any other right, privilege or remedy. No waiver of any right, privilege or remedy or any amendment to this Note shall be effective unless made in writing and signed by the Holder. Under no circumstances shall an effective waiver of any right, privilege or remedy on any one occasion constitute or be construed as a bar to the exercise of or a waiver of such right, privilege or remedy on any future occasion. The acceptance by the Holder of any payment after any default hereunder shall not operate to extend the time of payment of any amount then remaining unpaid hereunder or constitute a waiver of any rights of the Holder under this Note.

All rights and remedies of the Holder, whether granted herein or otherwise, shall be cumulative and may be exercised

singularly or concurrently, and the Holder shall have, in addition to all other rights and remedies, the rights and remedies of a secured party under the Uniform Commercial Code of New Hampshire. The Holder shall have no duty as to the collection or protection of the Collateral or of any income thereon, or as to the preservation of any rights pertaining thereto beyond the safe custody thereof.

As additional Collateral, the Undersigned (i) grants to the Holder a security interest in, or pledges, assigns and delivers to the Holder, as appropriate, all deposits, credits and other property (real or personal) now or hereafter due from the Holder to the Undersigned, and (ii) grants to the Holder the right to set-off or foreclosure and apply (and a security interest in said right), from time to time hereafter and without demand or notice of any nature, all, or any portion, of such deposits, credits and other property (real or personal), against the indebtedness evidenced by this Note, whether or not the other Collateral, if any, is deemed adequate.

The Undersigned waives, to the fullest extent permitted by law, presentment, notice, protest and all other demands and notices and assents (1) to any extension of the time of payment or any other indulgence, (2) to any substitution, exchange or release of collateral, and (3) to the release of any other person primarily or secondarily liable for the obligations evidenced hereby. The Undersigned expressly waives any defense or claim based in whole or in part upon any actual or alleged impairment of the Collateral. The Undersigned hereby consents and agrees that the Holder may as long as the Note remains unpaid, periodically, and without notice to Borrower obtain credit reports, verify income and make inquiry of other creditors and credit reporting agencies with respect to the Borrower's financial condition.

THE PARTIES AGREE THAT ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO ANY OF THE LOAN DOCUMENTS OR THE ACTIONS OF THE LENDER IN THE ENFORCEMENT THEREOF SHALL BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

This Note and the provisions hereof shall be binding upon the Undersigned and the Undersigned's heirs, administrators, executors, successors, legal representatives and assigns and shall inure to the benefit of the Holder and the Holder's heirs, administrators, executors, successors, legal representatives and assigns.

This Note may not be amended, changed or modified in any respect except by a written document which has been executed by each party. This Note is to be construed according to and governed by the laws of the State of New Hampshire. In the event of any dispute hereunder, the Undersigned agrees and irrevocably consents to the jurisdiction and venue of the federal or state courts sitting within the State of New Hampshire.

The term "Holder" as used herein shall mean the Lender, any assignee, endorsee, successor or other transferee of the Lender or any subsequent endorsee, successor or other transferee of this Note.

IN WITNESS WHEREOF, the Undersigned have executed this Term Promissory Note on this 20th day of June, 2003.

Witness

(the "Borrower")
BBC EQUITIES, INC.

By: _____
Name: Douglas Rau
Title: President
Duly Authorized

STATE OF NEW HAMPSHIRE
COUNTY OF HILLSBOROUGH

The foregoing instrument was acknowledged before me this _30th_ day of _June_____, 2003 by Douglas K. Rau, duly authorized President and Treasurer of BBC Equities, Inc., a Massachusetts corporation as his free act and deed on behalf of the corporation.

_Robert L. All—_

Notary Public
My Commission Expires: _5/24/2008_
Notary Seal:

# EXHIBIT E

# LAW OFFICES OF JOHN L. ALLEN & ASSOCIATES
### Professional Corporation
## ATTORNEYS

John L. Allen*
*Also admitted in MA

82 Palomino Lane
Suite 602
Bedford. NH 03110
Telephone (603) 666-9966
Fax (603) 668-7750
Email: jallen@jallenlaw.com

Richard M. Husband*

June 24, 2005

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED
and FIRST CLASS MAIL**

Douglas Rau                     Douglas Rau
BBC Equities, Inc.              47 Halford Street
14 Main Street                  Gardner, MA 01440
P.O. Box 1014
Gardner, MA 01440

Re:  Demand for Payment/$1,744,186.05 Term Promissory Note (the
     "Note") between Westmount Financial Limited Partnership
     (the "Lender") and BBC Equities, Inc. and Doug Rau(the
     "Borrower").

Dear Mr. Rau:

     This office represents the Lender with regard to the Note,
which was signed by the Borrower.

     (1)  **DEMAND**

     Please be advised that the Borrower is in default under the
terms of the Note for failure to make payments of interest and
principal when due, and that all principal amounts due pursuant
to the Note have been accelerated in accordance therewith.
Demand is hereby made for payment in full of such principal
balance, together with interest, late charges, costs and fees,
in accordance with the Note and the terms specified herein,
within ten (10) days of the date of this letter.

     (2)  **TOTAL AMOUNT DUE**

Douglas Rau
BBC Equities, Inc.
14-34 Main Street
Gardner, MA
Page Two
June 24, 2005


As of June 24, 2005, after application of all proper
credits, the amount of principal, interest and late charges due
under the Note is as follows:

| | |
|---|---:|
| Principal | $1,027.848.40 |
| Interest | $ 122,371.33 |
| Accrued Interest | $ 320,609.34 |
| Late Fee (Mortgage) | $ 7,000.00 |
| Extension Fee (6/30/04) | $ 244,186.05 |
| Extension Fee (12/30/04) | $ 283,937.26 |
| Legal/Other Fees | $ 35.00 |
| Fee For Interest Deferral | $ 15,000.00 |

**TOTAL AMOUNT DUE as of June 24, 2005**    $2,020,987.38

Interest will continue to accrue on this account at the
rate of $845.19 per diem.

In addition to the foregoing, the Lender hereby demands
that you pay to it all of its costs and expenses, including
attorneys' fees and disbursements, incurred by it in connection
with the enforcement of the Note.

(4)  <u>**FORM OF PAYMENT**</u>

Payment should be made in current funds, or by bank or
certified check, to The Law Offices of John L. Allen and
Associates, P.C. as attorneys for Westmount Financial Limited
Partnership, c/o John L. Allen, Esquire, 82 Palomino Lane, Suite
602, Bedford, New Hampshire, 03110.  <u>Prior to making your
payment, you must call our office to confirm the amount which
must be provided</u>.  In the event that payment is made in other
than current funds, then please add on the appropriate per diem
charges which will accrue until the item clears.

Douglas Rau
BBC Equities, Inc.
14-34 Main Street
Gardner, MA
Page Three
June 24, 2005

### (5)  WESTMOUNT'S REMEDIES

Please note that, if payment in full is not received by the
Lender as set forth above, then the Lender may proceed to
exercise its various remedies at law and equity to collect the
outstanding balances and amounts due under the Note, including,
but not limited to, the initiation of legal proceedings against
you in Rockingham County Superior Court and foreclosure of
Westmount's collateral.

### (6)  NON-WAIVER

Nothing that is contained in this letter should be
construed, is intended, nor shall, waive any of the rights of
the Lender pursuant to the Note. The Lender reserves all of its
rights under the Note and any related documents, guarantees or
collateral by which it is benefited. The Lender reserves to
itself the right to accept partial payment of principal or any
payment of interest, without in any way waiving or modifying its
right to payment in full pursuant to the demand made herein.

Very truly yours,

THE LAW OFFICES OF JOHN L. ALLEN
AND ASSOCIATES, P.C.
As Attorneys for Westmount
Financial Limited Partnership

By: _____
     John L. Allen, Esquire

c:   client

# EXHIBIT F

# LAW OFFICES OF JOHN L. ALLEN & ASSOCIATES
### Professional Corporation
### ATTORNEYS

---

John L. Allen*
*Also admitted in MA

82 Palomino Lane
Suite 602
Bedford, NH 03110
Telephone (603) 666-9966
Fax (603) 668-7750
Email: jallen@jallenlaw.com

Richard M. Husband*

June 24, 2005

<u>VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED</u>
<u>and FIRST CLASS MAIL</u>

Douglas Rau
BBC Equities, Inc.
14 Main Street
P.O. Box 1014
Gardner, MA 01440

Douglas Rau
47 Halford Street
Gardner, MA 01440

Re:  Demand for Payment/$232,558.14 Term Promissory Note (the
     "Note") between Westmount Financial Limited Partnership
     (the "Lender") and BBC Equities, Inc. and Doug Rau(the
     "Borrower").

Dear Mr. Rau:

     This office represents the Lender with regard to the Note,
which was signed by the Borrower.

     (1)  **DEMAND**

     Please be advised that the Borrower is in default under the
terms of the Note for failure to make payments of interest and
principal when due, and that all principal amounts due pursuant
to the Note have been accelerated in accordance therewith.
Demand is hereby made for payment in full of such principal
balance, together with interest, late charges, costs and fees,
in accordance with the Note and the terms specified herein,
within ten (10) days of the date of this letter.

     (2)  **TOTAL AMOUNT DUE**

Douglas Rau
BBC Equities, Inc.
14-34 Main Street
Gardner, MA
Page Two
June 24, 2005

As of June 24, 2005, after application of all proper
credits, the amount of principal, interest and late charges due
under the Note is as follows:

| | |
|---|---|
| Principal | $ 232,558.14 |
| Interest | $   3,391.02 |
| Accrued Interest | $  26,039.76 |
| Late Fee (Mortgage) | $   6,000.00 |
| Extension Fee (6/30/04) | $  37,858.30 |
| Extension Fee (12/30/04) | $  37,858.30 |

**TOTAL AMOUNT DUE as of June 24, 2005**     $  343,705.52

Interest will continue to accrue on this account at the
rate of $154.14 per diem.

In addition to the foregoing, the Lender hereby demands
that you pay to it all of its costs and expenses, including
attorneys' fees and disbursements, incurred by it in connection
with the enforcement of the Note.

(4)  **FORM OF PAYMENT**

Payment should be made in current funds, or by bank or
certified check, to The Law Offices of John L. Allen and
Associates, P.C. as attorneys for Westmount Financial Limited
Partnership, c/o John L. Allen, Esquire, 82 Palomino Lane, Suite
602, Bedford, New Hampshire, 03110.  Prior to making your
payment, you must call our office to confirm the amount which
must be provided.  In the event that payment is made in other
than current funds, then please add on the appropriate per diem
charges which will accrue until the item clears.

(5)  **WESTMOUNT'S REMEDIES**

Please note that, if payment in full is not received by the
Lender as set forth above, then the Lender may proceed to
exercise its various remedies at law and equity to collect the
outstanding balances and amounts due under the Note, including,

Douglas Rau
BBC Equities, Inc.
14-34 Main Street
Gardner, MA
Page Three
June 24, 2005


but not limited to, the initiation of legal proceedings against
you in Rockingham County Superior Court and foreclosure of
Westmount's collateral.

    (6)  **NON-WAIVER**

    Nothing that is contained in this letter should be
construed, is intended, nor shall, waive any of the rights of
the Lender pursuant to the Note.  The Lender reserves all of its
rights under the Note and any related documents, guarantees or
collateral by which it is benefited.  The Lender reserves to
itself the right to accept partial payment of principal or any
payment of interest, without in any way waiving or modifying its
right to payment in full pursuant to the demand made herein.


                Very truly yours,

                THE LAW OFFICES OF JOHN L. ALLEN
                AND ASSOCIATES, P.C.
                As Attorneys for Westmount
                Financial Limited Partnership


                By:_____
                    John L. Allen, Esquire


c:    client

# EXHIBIT G

## UNLIMITED, UNCONDITIONAL GUARANTY AGREEMENT

THIS UNLIMITED, UNCONDITIONAL GUARANTY AGREEMENT (this "Agreement"), dated as of April 5, 2002, by DOUGLAS K. RAU, with an address of P.O. Box 1014, Gardner, Massachusetts 01440 (the "Guarantor"), to WESTMOUNT FINANCIAL LIMITED PARTNERSHIP, a limited partnership formed under the laws of the State of Nevada with an address of 6929 E. Greenway Parkway, Suite 190, Scottsdale, Arizona 85254 (the "Lender").

## W I T N E S S E T H :

WHEREAS, the Lender has agreed, subject to the terms and conditions set forth in a certain Letter Agreement dated as of even date herewith (the "Loan Agreement"), by and between BBC Equities, Inc. (the "Borrower") and the Lender, to make a certain loan to the Borrower in the maximum principal amount of $87,209.30 (the "Loan"), such Loan to be evidenced by a $87,209.30 Term Promissory Note, dated of on or near even date herewith, issued or to be issued by the Borrower pursuant to the Loan Agreement, made by the Borrower, payable to the order of the Lender (the "Note") and the "Loan Documents" (as that term is defined in the Loan Agreement); and

WHEREAS, the obligation of the Lender to make the Loan to the Borrower is subject to the condition, among others, that the Guarantor shall execute and deliver this Guaranty Agreement;

NOW, THEREFORE, in order to induce the Lender to make the Loan to the Borrower, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Guarantor, the Guarantor hereby agrees as follows:

1. <u>Guaranteed Obligations</u>. The Guarantor does hereby irrevocably and unconditionally guarantee the due and punctual payment and performance of the following obligations to the Lender (individually, a "Guaranteed Obligation" and together the "Guaranteed Obligations"):

    (a) Principal of and premium, if any, interest and late charges on the Note, when the same becomes due and payable, whether on demand or by acceleration or otherwise;

    (b) Any and all other obligations of the Borrower to the Lender under the Loan Agreement, the Note, the Loan Documents or under any agreement or instrument relating thereto, including any amendment, modification, extension, renewal, replacement or restatement thereof;

(c) Any and all other indebtedness or obligations of the Borrower to the Lender, whether now existing or hereafter arising;

(d) Any and all expenses that may be incurred by the Lender in collecting all or any of the Guaranteed Obligations, including reasonable attorneys' fees.

For the purposes of paragraph (c) above, the Guaranteed Obligations shall include, without limitation, all borrowings, advances, notes, checks, drafts, instruments, letters of credit, agreements, reimbursement obligations and writings executed, issued, drawn or made by or for the account of the Borrower on the Lender or any of its agents.

2. <u>Demand by the Lender</u>. Upon any failure by the Borrower punctually to pay or perform any Guaranteed Obligation when due, the Lender may make demand upon the Guarantor for the payment or performance of such Guaranteed Obligation and the Guarantor binds and obliges itself to make such payment or performance forthwith upon such demand.

3. <u>Obligations of the Guarantor Unconditional</u>. This Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment and performance by the Borrower of the Guaranteed Obligations and not of their collectability only and is in no way conditioned upon any requirement that the Lender first attempt to collect any of the Guaranteed Obligations from the Borrower or resort to any collateral, security, guaranty or other means of obtaining payment of any of the Guaranteed Obligations which the Lender now has or may acquire after the date hereof, or upon any other contingency whatsoever.

The obligations of the Guarantor under this Agreement shall be unconditional, irrespective of the validity, regularity or enforceability of any Guaranteed Obligations, and shall not be affected by (a) any action taken under any Guaranteed Obligations in the exercise of any right or remedy therein conferred, (b) any failure or omission on the part of the Lender to enforce any right given thereunder or hereunder or any remedy conferred thereby or hereby, (c) any waiver of any term, covenant, agreement or condition of any Guaranteed Obligation or this Guaranty, (d) any release of any security or any other guaranty at any time existing for the benefit of any Guaranteed Obligation, (e) the merger or consolidation of the Borrower, (f) any sale, lease or transfer by the Borrower or any guarantor to any person of any or all of its or their properties, (g) any action of the Lender granting indulgence or extension to, or waiving or acquiescing in any default by the Borrower or any guarantor, or any successor to the Borrower or any guarantor or any person or party which shall have

2

assumed its obligations, (h) reason of any disability or other defense of the Borrower or any guarantor or any successor to the Borrower or any guarantor, or (i) any modification, alteration, or by any circumstance whatsoever (with or without notice to or knowledge of the Guarantor) which may or might in any manner or to any extent vary the risk of the Guarantor hereunder, it being the purpose and intent of the Guarantor that the obligations of the Guarantor hereunder shall be absolute and unconditional under any and all circumstances and shall not be discharged except by payment or performance as herein provided, and then only to the extent of such payment or performance. Payments by the Guarantor hereunder may be required by the Lender on any number of occasions.

4.   Continuing Nature of Guaranty.   The obligation of the Guarantor under this Guaranty shall continue in full force and effect, notwithstanding any intermediate or temporary payment or settlement of the whole or any part of the Guaranteed Obligations. This Guaranty shall not be discharged until such time as (i) all Guaranteed Obligations shall be finally paid in full, (ii) all covenants, terms, conditions and undertakings of the Guarantor shall be complied with and performed and (iii) the Lender shall deliver a final discharge in writing to the Guarantor.   In the event of any discontinuance or termination of this Guaranty in any manner, all indebtedness and obligations included within the term Guaranteed Obligations under Section 1 herein (including, without limitation, the Notes and the Loan Documents) executed, issued, drawn or made by, or for the account of, the Borrower on the Lender or any of its agents purporting to be dated on or before the date such discontinuance or termination becomes known to the Lender, and all advances and payments made pursuant thereto even though made after such date, shall form part of the Guaranteed Obligations for which the Guarantor shall be liable under the terms hereof.

5.   Lender's Freedom to Deal with the Borrower and Other Parties. The Lender shall be at liberty, without giving notice to or obtaining the assents of the Guarantor and without relieving the Guarantor of any liability hereunder, to deal with the Borrower and with each other party who now is or after the date hereof becomes liable in any manner for any of the Guaranteed Obligations, in such manner as the Lender in its sole discretion deems fit, and to this end the Guarantor gives to the Lender full authority in its sole discretion to do any or all of the following things:  (a) extend credit, make loans and afford other financial accommodations to the Borrower at such times, in such amounts and on such terms as the Lender may approve, (b) vary the terms and grant extensions or renewals of any present or future indebtedness or obligations to the Lender of the Borrower or of any such other party, (c) grant time, waivers and other indulgences in respect thereto, (d) vary, exchange, release or discharge, wholly or

3

partially, or delay in or abstain from perfecting any enforcing any collateral, security, guaranty or other means of obtaining payment of any of the Guaranteed Obligations which the Lender how has or acquires after the date hereof, (e) accept partial payments from the Borrower or any such other party, (f) release or discharge, wholly or partially, any endorser or guarantor, and (g) compromise or make any settlement or other arrangement with the Borrower or any such other party.

6.  Subordination of Claims of the Guarantor; Security.  Any claim against the Borrower to which the Guarantor may be or become entitled (including, without limitation, claims by subrogation or otherwise by reason of any payment or performance by the Guarantor in satisfaction and discharge, in whole or in part, of its obligations under this Guaranty) shall be and hereby is made subject and subordinate to the prior payment or performance in full of the Guaranteed Obligations.  The Guarantor will not, by payment any sum recoverable hereunder (whether or not demanded by the Lender) or by any means or on any other ground, claim any set-off or counterclaim against the Borrower in respect of any liability of the Guarantor to the Borrower or, in proceedings under the Bankruptcy Reform Act of 1978, as amended, or insolvency proceedings of any nature, prove in competition with the Lender in respect of any payment hereunder or be entitled to have the benefit of any counterclaim or proof of claim or dividend or payment by or on behalf of the Borrower or the benefit of any other security for any Guaranteed Obligation which, now or hereafter, the Lender may hold or in which it may have any share.

In addition to any other security given by the Guarantor to the Lender, the Guarantor hereby grants to the Lender a security interest in, and the Lender is hereby authorized and empowered, at its option, to set-off, appropriate and apply to the payment and extinguishment of the Guaranteed Obligations, at any time after such liability becomes payable, any and all moneys or other property of the Guarantor and any proceeds thereof (including proceeds of sales provided for below) now or hereafter in the possession of the Lender for any purpose, including safekeeping or pledge for this or any other liability of the Guarantor, and including any balance on deposit or otherwise for the account of, to the credit of, or belonging to the Guarantor.

The Lender is hereby authorized and empowered, at its option, at any time after the Guaranteed Obligations become payable, to sell, assign and deliver any securities or property at any time given unto or left in the possession or custody of the Lender for any purpose (including safekeeping or pledge for this or any other liability of the Guarantor) by or for the Guarantor, or in which the Guarantor may have an interest, at public or private sale, for cash or upon credit, or for future delivery, all at the option of the Lender, without demand, advertisement or notice, all of which

4

are hereby expressly waived.

7.    Waiver of Demands, Notices, Diligence, etc.    The Guarantor
hereby assents to all the terms and conditions of the Guaranteed
Obligations and waives (a) demand for the payment of the principal
of any Guaranteed Obligation or of any claim for interest or any
part of any thereof (other than the demand provided for in Section
2 hereof); (b) notice of the occurrence of a default or an event
of default under any Guaranteed Obligation; (c) protest of the
nonpayment of the principal of any Guaranteed Obligation or of any
claim for interest or any part of any thereof; (d) notice of
presentment, demand and protest; (e) notice of acceptance of any
guaranty herein provided for or of the terms and provisions
thereof or hereof by the Lender; (f) notice of any indulgences or
extensions granted to the Borrower or any corporate successor to
the Borrower, or any guarantor or any person or party which shall
have assumed the obligations of the Borrower or any guarantor; (g)
any requirement of diligence or promptness on the part of the
Lender in the enforcement of any of its rights under the
provisions of any Guaranteed Obligations or this Guaranty; (h) any
enforcement of any Guaranteed Obligation; (i) any right which the
Guarantor might have to require the Lender to proceed against the
Borrower or any other guarantor of the Guaranteed Obligations or
to realize on any collateral security for the Guaranteed
Obligations; (j) any and all notices of every kind and description
which may be required to be given by any statute or rule of law in
any jurisdiction; and any defense based upon a claim of impairment
of any other collateral securing the Note.    The waivers set forth
in this Section 7 shall be effective notwithstanding the fact that
the Borrower cease to exist by reason of its liquidation, merger,
consolidation or otherwise.

8.    Notices, etc.    All notices, demands and other communications
hereunder shall be deemed to have been sufficiently given or made
if in writing and mailed by first class mail, postage prepaid, to
the parties at the addresses set forth herein or at such other
address as the party to whom such notice or demand is directed may
have designated in writing to the other parties hereto.

9.    Survival of Guaranty, etc.    This Guaranty shall inure to the
benefit of and be binding upon the Guarantor and the Lender and
their respective successors and assigns, including any subsequent
holder or holders of any Guaranteed Obligations, and the term
"Lender" shall include any such holder or holders whenever the
context permits.    This Guaranty Agreement is intended to take
effect as a sealed instrument.

10.    Counterparts.    This Guaranty Agreement may be executed in any
number of counterparts and by the different parties hereto on
separate counterparts, each of which when so executed and
delivered shall be an original, but all of the counterparts shall

5

together constitute one and the same instrument.

11.  Governing Law; Jurisdiction.  This Guaranty Agreement shall
be construed in accordance with and governed by the laws of the
State of New Hampshire.  The Guarantor, to the extent that it may
lawfully do so, hereby consents to the jurisdiction of the courts
of the State of New Hampshire and the United States District Court
for the State of New Hampshire, as well as to the jurisdiction of
all courts from which an appeal may be taken from such courts, for
the purpose of any suit, action or other proceeding arising out of
any  of  its  obligations  hereunder  or  with  respect  to  the
transactions contemplated hereby, and expressly waives any and all
objections it may have as to venue in any such courts.

12.   Joint  and  Several  Liability.   It  is  agreed  that  the
Guarantor's liability hereunder is joint and several with and
independent of any other guaranties at any time in effect with
respect to all or any part of the Guaranteed Obligations to the
Lender  and  that  the  Guarantor's  liability  hereunder  may  be
enforced regardless of the existence of any such other guaranties.

13.  Gender of Pronouns.  The provisions hereof shall apply to the
parties according to the context thereof and without regard to the
number or gender of words or expressions used.


     IN WITNESS WHEREOF, the Guarantor has executed this Guaranty
Agreement  as  a  sealed  instrument  as  of  the  date  first  above
written.

                              (the "Guarantor")



_____       _____
Witness                       Douglas K. Rau, Individually




COMMONWEALTH OF MASSACHUSETTS
COUNTY OF WORCESTER

     The foregoing Guaranty Agreement was acknowledged before me
this  5th day of April, 2002, by Douglas K. Rau, individually, as
his free act and deed.

                              _____
                              Notary Public/Justice of the Peace
                              (Notarial Seal)
                              My Commission expires:  1-9-09
                              David A. Pappalardo

                              6

# EXHIBIT H

## UNLIMITED, UNCONDITIONAL GUARANTY AGREEMENT

THIS UNLIMITED, UNCONDITIONAL GUARANTY AGREEMENT (this "Agreement"), dated as of February 25, 2003, by DOUGLAS K. RAU, of 14 Main Street, Gardner, Massachusetts 01440 (the Guarantor"), to WESTMOUNT FINANCIAL LIMITED PARTNERSHIP, a limited partnership formed under the laws of the State of Nevada with an address of 14648 N. Scottsdale Road, Suite 325, Scottsdale, AZ, 85254-2739 (the "Lender").

W I T N E S S E T H :

WHEREAS, the Lender has agreed, subject to the terms and conditions set forth in a certain Letter Agreement dated as of even date herewith (the "Loan Agreement"), by and between BBC Equities, Inc. (the "Borrower") and the Lender, to make a certain construction loan to the Borrower in the maximum principal amount of $1,744,186.05 (the "Loan"), such Loan to be evidenced by a $1,744,186.05 Promissory Note, dated of on or near even date herewith, issued or to be issued by the Borrower pursuant to the Loan Agreement, made by the Borrower, payable to the order of the Lender (the "Note") and the "Loan Documents" (as that term is defined in the Loan Agreement); and

WHEREAS, the obligation of the Lender to make the Loan to the Borrower is subject to the condition, among others, that the Guarantor shall execute and deliver this Guaranty Agreement;

NOW, THEREFORE, in order to induce the Lender to make the Loan to the Borrower, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Guarantor, the Guarantor hereby agrees as follows:

1.   Guaranteed Obligations.   The Guarantor does hereby irrevocably and unconditionally guarantee the due and punctual payment and performance of the following obligations to the Lender (individually, a "Guaranteed Obligation" and together the "Guaranteed Obligations"):

   (a)   Principal of and premium, if any, interest and late charges on the Note, when the same becomes due and payable, whether on demand or by acceleration or otherwise;

   (b)   Any and all other obligations of the Borrower to the Lender under the Loan Agreement, the Note, the Loan Documents or under any agreement or instrument relating thereto, including any amendment, modification, extension, renewal, replacement or restatement thereof;

(c)    Any and all other indebtedness or obligations of the Borrower to the Lender, whether now existing or hereafter arising;

(d)    Any and all expenses that may be incurred by the Lender in collecting all or any of the Guaranteed Obligations, including reasonable attorneys' fees.

For the purposes of paragraph (c) above, the Guaranteed Obligations shall include, without limitation, all borrowings, advances, notes, checks, drafts, instruments, letters of credit, agreements, reimbursement obligations and writings executed, issued, drawn or made by or for the account of the Borrower on the Lender or any of its agents.

2.   <u>Demand by the Lender</u>.  Upon any failure by the Borrower punctually to pay or perform any Guaranteed Obligation when due, the Lender may make demand upon the Guarantor for the payment or performance of such Guaranteed Obligation and the Guarantor binds and obliges itself to make such payment or performance forthwith upon such demand.

3.   <u>Obligations of the Guarantor Unconditional</u>.  This Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment and performance by the Borrower of the Guaranteed Obligations and not of their collectability only and is in no way conditioned upon any requirement that the Lender first attempt to collect any of the Guaranteed Obligations from the Borrower or resort to any collateral, security, guaranty or other means of obtaining payment of any of the Guaranteed Obligations which the Lender now has or may acquire after the date hereof, or upon any other contingency whatsoever.

The obligations of the Guarantor under this Agreement shall be unconditional, irrespective of the validity, regularity or enforceability of any Guaranteed Obligations, and shall not be affected by (a) any action taken under any Guaranteed Obligations in the exercise of any right or remedy therein conferred, (b) any failure or omission on the part of the Lender to enforce any right given thereunder or hereunder or any remedy conferred thereby or hereby, (c) any waiver of any term, covenant, agreement or condition of any Guaranteed Obligation or this Guaranty, (d) any release of any security or any other guaranty at any time existing for the benefit of any Guaranteed Obligation, (e) the merger or consolidation of the Borrower, (f) any sale, lease or transfer by the Borrower or any guarantor to any person of any or all of its or their properties, (g) any action of the Lender granting indulgence or extension to, or waiving or acquiescing in any default by the Borrower or any guarantor, or any successor to the Borrower or any guarantor or any person or party which shall have

assumed its obligations, (h) reason of any disability or other defense of the Borrower or any guarantor or any successor to the Borrower or any guarantor, or (i) any modification, alteration, or by any circumstance whatsoever (with or without notice to or knowledge of the Guarantor) which may or might in any manner or to any extent vary the risk of the Guarantor hereunder, it being the purpose and intent of the Guarantor that the obligations of the Guarantor hereunder shall be absolute and unconditional under any and all circumstances and shall not be discharged except by payment or performance as herein provided, and then only to the extent of such payment or performance.  Payments by the Guarantor hereunder may be required by the Lender on any number of occasions.

4.    Continuing Nature of Guaranty.    The obligation of the Guarantor under this Guaranty shall continue in full force and effect, notwithstanding any intermediate or temporary payment or settlement of the whole or any part of the Guaranteed Obligations. This Guaranty shall not be discharged until such time as (i) all Guaranteed Obligations shall be finally paid in full, (ii) all covenants, terms, conditions and undertakings of the Guarantor shall be complied with and performed and (iii) the Lender shall deliver a final discharge in writing to the Guarantor.    In the event of any discontinuance or termination of this Guaranty in any manner, all indebtedness and obligations included within the term Guaranteed Obligations under Section 1 herein (including, without limitation, the Notes and the Loan Documents) executed, issued, drawn or made by, or for the account of, the Borrower on the Lender or any of its agents purporting to be dated on or before the date such discontinuance or termination becomes known to the Lender, and all advances and payments made pursuant thereto even though made after such date, shall form part of the Guaranteed Obligations for which the Guarantor shall be liable under the terms hereof.

5.    Lender's Freedom to Deal with the Borrower and Other Parties. The Lender shall be at liberty, without giving notice to or obtaining the assents of the Guarantor and without relieving the Guarantor of any liability hereunder, to deal with the Borrower and with each other party who now is or after the date hereof becomes liable in any manner for any of the Guaranteed Obligations, in such manner as the Lender in its sole discretion deems fit, and to this end the Guarantor gives to the Lender full authority in its sole discretion to do any or all of the following things:    (a) extend credit, make loans and afford other financial accommodations to the Borrower at such times, in such amounts and on such terms as the Lender may approve, (b) vary the terms and grant extensions or renewals of any present or future indebtedness or obligations to the Lender of the Borrower or of any such other party, (c) grant time, waivers and other indulgences in respect thereto, (d) vary, exchange, release or discharge, wholly or

3

partially, or delay in or abstain from perfecting any enforcing any collateral, security, guaranty or other means of obtaining payment of any of the Guaranteed Obligations which the Lender how has or acquires after the date hereof, (e) accept partial payments from the Borrower or any such other party, (f) release or discharge, wholly or partially, any endorser or guarantor, and (g) compromise or make any settlement or other arrangement with the Borrower or any such other party.

6.  Subordination of Claims of the Guarantor; Security.  Any claim against the Borrower to which the Guarantor may be or become entitled (including, without limitation, claims by subrogation or otherwise by reason of any payment or performance by the Guarantor in satisfaction and discharge, in whole or in part, of its obligations under this Guaranty) shall be and hereby is made subject and subordinate to the prior payment or performance in full of the Guaranteed Obligations.  The Guarantor will not, by payment any sum recoverable hereunder (whether or not demanded by the Lender) or by any means or on any other ground, claim any set-off or counterclaim against the Borrower in respect of any liability of the Guarantor to the Borrower or, in proceedings under the Bankruptcy Reform Act of 1978, as amended, or insolvency proceedings of any nature, prove in competition with the Lender in respect of any payment hereunder or be entitled to have the benefit of any counterclaim or proof of claim or dividend or payment by or on behalf of the Borrower or the benefit of any other security for any Guaranteed Obligation which, now or hereafter, the Lender may hold or in which it may have any share.

In addition to any other security given by the Guarantor to the Lender, the Guarantor hereby grants to the Lender a security interest in, and the Lender is hereby authorized and empowered, at its option, to set-off, appropriate and apply to the payment and extinguishment of the Guaranteed Obligations, at any time after such liability becomes payable, any and all moneys or other property of the Guarantor and any proceeds thereof (including proceeds of sales provided for below) now or hereafter in the possession of the Lender for any purpose, including safekeeping or pledge for this or any other liability of the Guarantor, and including any balance on deposit or otherwise for the account of, to the credit of, or belonging to the Guarantor.

The Lender is hereby authorized and empowered, at its option, at any time after the Guaranteed Obligations become payable, to sell, assign and deliver any securities or property at any time given unto or left in the possession or custody of the Lender for any purpose (including safekeeping or pledge for this or any other liability of the Guarantor) by or for the Guarantor, or in which the Guarantor may have an interest, at public or private sale, for cash or upon credit, or for future delivery, all at the option of the Lender, without demand, advertisement or notice, all of which

4

are hereby expressly waived.

7.   Waiver of Demands, Notices, Diligence, etc.   The Guarantor hereby assents to all the terms and conditions of the Guaranteed Obligations and waives (a) demand for the payment of the principal of any Guaranteed Obligation or of any claim for interest or any part of any thereof (other than the demand provided for in Section 2 hereof); (b) notice of the occurrence of a default or an event of default under any Guaranteed Obligation; (c) protest of the nonpayment of the principal of any Guaranteed Obligation or of any claim for interest or any part of any thereof; (d) notice of presentment, demand and protest; (e) notice of acceptance of any guaranty herein provided for or of the terms and provisions thereof or hereof by the Lender; (f) notice of any indulgences or extensions granted to the Borrower or any corporate successor to the Borrower, or any guarantor or any person or party which shall have assumed the obligations of the Borrower or any guarantor; (g) any requirement of diligence or promptness on the part of the Lender in the enforcement of any of its rights under the provisions of any Guaranteed Obligations or this Guaranty; (h) any enforcement of any Guaranteed Obligation; (i) any right which the Guarantor might have to require the Lender to proceed against the Borrower or any other guarantor of the Guaranteed Obligations or to realize on any collateral security for the Guaranteed Obligations; (j) any and all notices of every kind and description which may be required to be given by any statute or rule of law in any jurisdiction; and any defense based upon a claim of impairment of any other collateral securing the Note.  The waivers set forth in this Section 7 shall be effective notwithstanding the fact that the Borrower cease to exist by reason of its liquidation, merger, consolidation or otherwise.

8.   Notices, etc.   All notices, demands and other communications hereunder shall be deemed to have been sufficiently given or made if in writing and mailed by first class mail, postage prepaid, to the parties at the addresses set forth herein or at such other address as the party to whom such notice or demand is directed may have designated in writing to the other parties hereto.

9.   Survival of Guaranty, etc.   This Guaranty shall inure to the benefit of and be binding upon the Guarantor and the Lender and their respective successors and assigns, including any subsequent holder or holders of any Guaranteed Obligations, and the term "Lender" shall include any such holder or holders whenever the context permits.   This Guaranty Agreement is intended to take effect as a sealed instrument.

10.   Counterparts.   This Guaranty Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of the counterparts shall

together constitute one and the same instrument.

11.   Governing Law; Jurisdiction.   This Guaranty Agreement shall be construed in accordance with and governed by the laws of the State of New Hampshire.  The Guarantor, to the extent that it may lawfully do so, hereby consents to the jurisdiction of the courts of the State of New Hampshire and the United States District Court for the State of New Hampshire, as well as to the jurisdiction of all courts from which an appeal may be taken from such courts, for the purpose of any suit, action or other proceeding arising out of any of its obligations hereunder or with respect to the transactions contemplated hereby, and expressly waives any and all objections it may have as to venue in any such courts.

12.   Joint and Several Liability.   It is agreed that the Guarantor's liability hereunder is joint and several with and independent of any other guaranties at any time in effect with respect to all or any part of the Guaranteed Obligations to the Lender and that the Guarantor's liability hereunder may be enforced regardless of the existence of any such other guaranties.

13.  Gender of Pronouns.  The provisions hereof shall apply to the parties according to the context thereof and without regard to the number or gender of words or expressions used.


    IN WITNESS WHEREOF, the Guarantor has executed this Guaranty Agreement as a sealed instrument as of the date first above written.

                                        (the "Guarantor")



Witness                          Douglas K. Rau, Individually


COMMONWEALTH OF MASSACHUSETTS
COUNTY OF WORCESTER


    The foregoing Guaranty Agreement was acknowledged before me this 25th day of February, 2003, by Douglas K. Rau, individually, as his free act and deed.

                              Notary Public/Justice of the Peace
                              (Notarial Seal)
                              My Commission expires: 6/24/300

6

# EXHIBIT I

<u>UNLIMITED, UNCONDITIONAL GUARANTY AGREEMENT</u>

THIS UNLIMITED, UNCONDITIONAL GUARANTY AGREEMENT (this "Agreement"), dated as of ~~June 30~~ , 2003, by DOUGLAS K. RAU, of 14 Main Street, Gardner, Massachusetts 01440 (the "Guarantor"), to WESTMOUNT FINANCIAL LIMITED PARTNERSHIP, a limited partnership formed under the laws of the State of Nevada with an address of 14648 N. Scottsdale Road, Suite 325, Scottsdale, AZ, 85254-2739 (the "Lender").

W I T N E S S E T H :

WHEREAS, the Lender has agreed, subject to the terms and conditions set forth in a certain Letter Agreement dated as of even date herewith (the "Loan Agreement"), by and between BBC Equities, Inc. (the "Borrower") and the Lender, to make a certain construction loan to the Borrower in the maximum principal amount of $232,558.14 (the "Loan"), such Loan to be evidenced by a $232,558.14 Promissory Note, dated of on or near even date herewith, issued or to be issued by the Borrower pursuant to the Loan Agreement, made by the Borrower, payable to the order of the Lender (the "Note") and the "Loan Documents" (as that term is defined in the Loan Agreement); and

WHEREAS, the obligation of the Lender to make the Loan to the Borrower is subject to the condition, among others, that the Guarantor shall execute and deliver this Guaranty Agreement;

NOW, THEREFORE, in order to induce the Lender to make the Loan to the Borrower, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Guarantor, the Guarantor hereby agrees as follows:

1.   <u>Guaranteed Obligations</u>. The Guarantor does hereby irrevocably and unconditionally guarantee the due and punctual payment and performance of the following obligations to the Lender (individually, a "Guaranteed Obligation" and together the "Guaranteed Obligations"):

   (a)   Principal of and premium, if any, interest and late charges on the Note, when the same becomes due and payable, whether on demand or by acceleration or otherwise;

   (b)   Any and all other obligations of the Borrower to the Lender under the Loan Agreement, the Note, the Loan Documents or under any agreement or instrument relating thereto, including any amendment, modification, extension, renewal, replacement or restatement thereof;

(c) Any and all other indebtedness or obligations of the Borrower to the Lender, whether now existing or hereafter arising;

(d) Any and all expenses that may be incurred by the Lender in collecting all or any of the Guaranteed Obligations, including reasonable attorneys' fees.

For the purposes of paragraph (c) above, the Guaranteed Obligations shall include, without limitation, all borrowings, advances, notes, checks, drafts, instruments, letters of credit, agreements, reimbursement obligations and writings executed, issued, drawn or made by or for the account of the Borrower on the Lender or any of its agents.

2. <u>Demand by the Lender</u>. Upon any failure by the Borrower punctually to pay or perform any Guaranteed Obligation when due, the Lender may make demand upon the Guarantor for the payment or performance of such Guaranteed Obligation and the Guarantor binds and obliges itself to make such payment or performance forthwith upon such demand.

3. <u>Obligations of the Guarantor Unconditional</u>. This Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment and performance by the Borrower of the Guaranteed Obligations and not of their collectability only and is in no way conditioned upon any requirement that the Lender first attempt to collect any of the Guaranteed Obligations from the Borrower or resort to any collateral, security, guaranty or other means of obtaining payment of any of the Guaranteed Obligations which the Lender now has or may acquire after the date hereof, or upon any other contingency whatsoever.

The obligations of the Guarantor under this Agreement shall be unconditional, irrespective of the validity, regularity or enforceability of any Guaranteed Obligations, and shall not be affected by (a) any action taken under any Guaranteed Obligations in the exercise of any right or remedy therein conferred, (b) any failure or omission on the part of the Lender to enforce any right given thereunder or hereunder or any remedy conferred thereby or hereby, (c) any waiver of any term, covenant, agreement or condition of any Guaranteed Obligation or this Guaranty, (d) any release of any security or any other guaranty at any time existing for the benefit of any Guaranteed Obligation, (e) the merger or consolidation of the Borrower, (f) any sale, lease or transfer by the Borrower or any guarantor to any person of any or all of its or their properties, (g) any action of the Lender granting indulgence or extension to, or waiving or acquiescing in any default by the Borrower or any guarantor, or any successor to the Borrower or any guarantor or any person or party which shall have assumed its obligations, (h) reason of any disability or other defense of the

2

Borrower or any guarantor or any successor to the Borrower or any guarantor, or (i) any modification, alteration, or by any circumstance whatsoever (with or without notice to or knowledge of the Guarantor) which may or might in any manner or to any extent vary the risk of the Guarantor hereunder, it being the purpose and intent of the Guarantor that the obligations of the Guarantor hereunder shall be absolute and unconditional under any and all circumstances and shall not be discharged except by payment or performance as herein provided, and then only to the extent of such payment or performance. Payments by the Guarantor hereunder may be required by the Lender on any number of occasions.

4.    Continuing Nature of Guaranty.  The obligation of the Guarantor under this Guaranty shall continue in full force and effect, notwithstanding any intermediate or temporary payment or settlement of the whole or any part of the Guaranteed Obligations.  This Guaranty shall not be discharged until such time as (i) all Guaranteed Obligations shall be finally paid in full, (ii) all covenants, terms, conditions and undertakings of the Guarantor shall be complied with and performed and (iii) the Lender shall deliver a final discharge in writing to the Guarantor.  In the event of any discontinuance or termination of this Guaranty in any manner, all indebtedness and obligations included within the term Guaranteed Obligations under Section 1 herein (including, without limitation, the Notes and the Loan Documents) executed, issued, drawn or made by, or for the account of, the Borrower on the Lender or any of its agents purporting to be dated on or before the date such discontinuance or termination becomes known to the Lender, and all advances and payments made pursuant thereto even though made after such date, shall form part of the Guaranteed Obligations for which the Guarantor shall be liable under the terms hereof.

5.    Lender's Freedom to Deal with the Borrower and Other Parties. The Lender shall be at liberty, without giving notice to or obtaining the assents of the Guarantor and without relieving the Guarantor of any liability hereunder, to deal with the Borrower and with each other party who now is or after the date hereof becomes liable in any manner for any of the Guaranteed Obligations, in such manner as the Lender in its sole discretion deems fit, and to this end the Guarantor gives to the Lender full authority in its sole discretion to do any or all of the following things:  (a) extend credit, make loans and afford other financial accommodations to the Borrower at such times, in such amounts and on such terms as the Lender may approve, (b) vary the terms and grant extensions or renewals of any present or future indebtedness or obligations to the Lender of the Borrower or of any such other party, (c) grant time, waivers and other indulgences in respect thereto, (d) vary, exchange, release or discharge, wholly or partially, or delay in or abstain from perfecting any enforcing any collateral, security, guaranty or other means of obtaining payment of any of the Guaranteed Obligations which the Lender how has or acquires after

the date hereof, (e) accept partial payments from the Borrower or any such other party, (f) release or discharge, wholly or partially, any endorser or guarantor, and (g) compromise or make any settlement or other arrangement with the Borrower or any such other party.

6.  <u>Subordination of Claims of the Guarantor; Security</u>.  Any claim against the Borrower to which the Guarantor may be or become entitled (including, without limitation, claims by subrogation or otherwise by reason of any payment or performance by the Guarantor in satisfaction and discharge, in whole or in part, of its obligations under this Guaranty) shall be and hereby is made subject and subordinate to the prior payment or performance in full of the Guaranteed Obligations.  The Guarantor will not, by payment any sum recoverable hereunder (whether or not demanded by the Lender) or by any means or on any other ground, claim any set-off or counterclaim against the Borrower in respect of any liability of the Guarantor to the Borrower or, in proceedings under the Bankruptcy Reform Act of 1978, as amended, or insolvency proceedings of any nature, prove in competition with the Lender in respect of any payment hereunder or be entitled to have the benefit of any counterclaim or proof of claim or dividend or payment by or on behalf of the Borrower or the benefit of any other security for any Guaranteed Obligation which, now or hereafter, the Lender may hold or in which it may have any share.

In addition to any other security given by the Guarantor to the Lender, the Guarantor hereby grants to the Lender a security interest in, and the Lender is hereby authorized and empowered, at its option, to set-off, appropriate and apply to the payment and extinguishment of the Guaranteed Obligations, at any time after such liability becomes payable, any and all moneys or other property of the Guarantor and any proceeds thereof (including proceeds of sales provided for below) now or hereafter in the possession of the Lender for any purpose, including safekeeping or pledge for this or any other liability of the Guarantor, and including any balance on deposit or otherwise for the account of, to the credit of, or belonging to the Guarantor.

The Lender is hereby authorized and empowered, at its option, at any time after the Guaranteed Obligations become payable, to sell, assign and deliver any securities or property at any time given unto or left in the possession or custody of the Lender for any purpose (including safekeeping or pledge for this or any other liability of the Guarantor) by or for the Guarantor, or in which the Guarantor may have an interest, at public or private sale, for cash or upon credit, or for future delivery, all at the option of the Lender, without demand, advertisement or notice, all of which are hereby expressly waived.

7.  <u>Waiver of Demands, Notices, Diligence, etc</u>.  The Guarantor

4

hereby assents to all the terms and conditions of the Guaranteed Obligations and waives (a) demand for the payment of the principal of any Guaranteed Obligation or of any claim for interest or any part of any thereof (other than the demand provided for in Section 2 hereof); (b) notice of the occurrence of a default or an event of default under any Guaranteed Obligation; (c) protest of the nonpayment of the principal of any Guaranteed Obligation or of any claim for interest or any part of any thereof; (d) notice of presentment, demand and protest; (e) notice of acceptance of any guaranty herein provided for or of the terms and provisions thereof or hereof by the Lender; (f) notice of any indulgences or extensions granted to the Borrower or any corporate successor to the Borrower, or any guarantor or any person or party which shall have assumed the obligations of the Borrower or any guarantor; (g) any requirement of diligence or promptness on the part of the Lender in the enforcement of any of its rights under the provisions of any Guaranteed Obligations or this Guaranty; (h) any enforcement of any Guaranteed Obligation; (i) any right which the Guarantor might have to require the Lender to proceed against the Borrower or any other guarantor of the Guaranteed Obligations or to realize on any collateral security for the Guaranteed Obligations; (j) any and all notices of every kind and description which may be required to be given by any statute or rule of law in any jurisdiction; and any defense based upon a claim of impairment of any other collateral securing the Note. The waivers set forth in this Section 7 shall be effective notwithstanding the fact that the Borrower cease to exist by reason of its liquidation, merger, consolidation or otherwise.

8.   **Notices, etc.**   All notices, demands and other communications hereunder shall be deemed to have been sufficiently given or made if in writing and mailed by first class mail, postage prepaid, to the parties at the addresses set forth herein or at such other address as the party to whom such notice or demand is directed may have designated in writing to the other parties hereto.

9.   **Survival of Guaranty, etc.**   This Guaranty shall inure to the benefit of and be binding upon the Guarantor and the Lender and their respective successors and assigns, including any subsequent holder or holders of any Guaranteed Obligations, and the term "Lender" shall include any such holder or holders whenever the context permits.   This Guaranty Agreement is intended to take effect as a sealed instrument.

10.   **Counterparts.**   This Guaranty Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of the counterparts shall together constitute one and the same instrument.

11.   **Governing Law; Jurisdiction.**   This Guaranty Agreement shall be

5

construed in accordance with and governed by the laws of the State of New Hampshire. The Guarantor, to the extent that it may lawfully do so, hereby consents to the jurisdiction of the courts of the State of New Hampshire and the United States District Court for the State of New Hampshire, as well as to the jurisdiction of all courts from which an appeal may be taken from such courts, for the purpose of any suit, action or other proceeding arising out of any of its obligations hereunder or with respect to the transactions contemplated hereby, and expressly waives any and all objections it may have as to venue in any such courts.

12. <u>Joint and Several Liability</u>. It is agreed that the Guarantor's liability hereunder is joint and several with and independent of any other guaranties at any time in effect with respect to all or any part of the Guaranteed Obligations to the Lender and that the Guarantor's liability hereunder may be enforced regardless of the existence of any such other guaranties.

13. <u>Gender of Pronouns</u>. The provisions hereof shall apply to the parties according to the context thereof and without regard to the number or gender of words or expressions used.


IN WITNESS WHEREOF, the Guarantor has executed this Guaranty Agreement as a sealed instrument as of the date first above written.

(the "Guarantor")

_____          _____
Witness                                Douglas K. Rau, Individually


COMMONWEALTH OF MASSACHUSETTS
COUNTY OF WORCESTER

The foregoing Guaranty Agreement was acknowledged before me this ___ day of ____ , 2003, by Douglas K. Rau, individually, as his free act and deed.

Notary Public/Justice of the Peace
(Notarial Seal)
My Commission expires: 5/24/2008

6